**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **STEVEN BENTON AUBREY, and** | § | |
| **BRIAN EDWARD VODICKA** | § | |
| *Plaintiffs*, | § | |
| **v.** | § | **CIVIL ACTION NO. 0:18-CV-61117** |
| | § | |
| **D MAGAZINE PARTNERS et al.,** | § | |
| *Defendants*. | § | |

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL
JURISDICTION OVER TEXAS DISTRICT COURT JUDGE ERIC VAUGHN MOYÉ
AND FAILURE TO STATE A CLAIM**

---

# INDEX OF EXHIBITS

**Exhibit 1:**  First Amended Petition filed by Aubrey and Vodicka, January 27, 2017     page 2

**Exhibit 2:**  Order Declaring Steven B. Aubrey a Vexatious litigant, March 1, 2017     page 42

**Exhibit 3:**  Order Dismissing Petition's Claim Against  Judge Moyé March 1, 2017     page 45

**Exhibit 4:**  Final Judgment, March 7, 2017     page 48

**Exhibit 5:**  *Brian E. Vodicka v. Eric Vaughn Moyé,* Case No. 05-17-00728,     page 52
2018 WL 3301592, (Tex. App. -Dallas, July 5, 2018) affirming dismissal
of libel suit against Judge Moyé.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **STEVEN BENTON AUBREY, and** | § | |
| **BRIAN EDWARD VODICKA** | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **CIVIL ACTION NO. 0:18-CV-61117** |
| | § | |
| **D MAGAZINE PARTNERS et al.,** | § | |
| *Defendants.* | § | |

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL**
**JURISDICTION OVER TEXAS DISTRICT COURT JUDGE ERIC VAUGHN MOYÉ**
**AND FAILURE TO STATE A CLAIM**

---

# EXHIBIT 1

First Amended Petition filed by Aubrey and Vodicka
January 27, 2017

FILED
DALLAS COUNTY
6/27/2017 3:50:04 PM
FELICIA PITRE
DISTRICT CLERK

## NO. DC-16-12693

| | | |
|---|---|---|
| **BRIAN E. VODICKA,** and | § | IN THE DISTRICT COURT |
| **STEVEN B. AUBREY,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | 116th JUDICIAL DISTRICT |
| **A. H. BELO CORPORATION,** | § | |
| **ERIC VAUGHN MOYE,** Individually, | § | |
| **ROBERT L. ERMATINGER, JR.,** | § | |
| **SCOTT ROBERT SAYERS**, | § | |
| **STEPHEN CHARLES SCHOETTMER,** and | § | |
| **DEBRA G. TOBOLOWSKY,** Independent | § | DALLAS COUNTY, TEXAS |
| Executor of the Estate of Ira E. Tobolowsky, | | |
| | | |
| *Defendants,* | | |

---

### FIRST AMENDED PETITION

---

COME NOW, Plaintiffs BRIAN E. VODICKA (**"Plaintiff Vodicka"**) and STEVEN B. AUBREY (**"Plaintiff Aubrey"**) (collectively, **"Plaintiffs"**), complaining of A. H. BELO CORPORATION (**"Dallas Morning News"**), ERIC VAUGHN MOYE, Individually (**"Moye"**), ROBERT L. ERMATINGER, JR. (**"Ermatinger"**), SCOTT ROBERT SAYERS (**"Sayers"**), STEPHEN CHARLES SCHOETTMER (**"Schoettmer"**) and DEBRA G. TOBOLOWSKY, Independent Executor of the Estate of Ira E. Tobolowsky, Deceased (**"Defendant Tobolowsky"**) (collectively **"Defendants"**) and files this First Amended Petition for defamation as follows:

### DISCOVERY PLAN

1.      Plaintiffs plead that discovery should be conducted in this case in accordance with Level 2, Rule 190.3 of the TEXAS RULES OF CIVIL Procedure.

**RELIEF SOUGHT**

2.      Plaintiffs seek monetary relief over $1,000,000 for defamatory statements made by Defendants.   Damages sought are within the jurisdictional limits of the court. Plaintiffs demand judgment for all other relief to which they are entitled.

**PARTIES**

3.1      Plaintiff Vodicka is an individual residing in Dallas County, Texas and is before this Court for all purposes.

3.2      Plaintiff Aubrey is an individual residing in Dallas County, Texas and is before this Court for all purposes.

3.3      Defendant Eric Vaughn Moye is an is an individual who may be served with process at his residence,                                        or wherever he may be found.

3.4      Defendant A. H. Belo Corporation (owner and operator of The Dallas Morning News) is a Delaware corporation, registered to conduct business under the laws of the State of Texas, with its principal place of business in Dallas County, Texas and may be served with process by and through its Chairman, President and CEO, James M. Moroney III at                                        or wherever she may be found

3.5      Defendant Debra G. Tobolowsky is an is an individual who may be served with process at her residence,                                        or wherever she may be found.

3.6      Defendant Stephen C. Schoettmer is an individual residing at                                        or wherever he may be found.

3.7      Defendant Robert L. Ermatinger, Jr. is an individual residing at                                        or wherever he may be found.

3.8      Defendant Scott Robert Sayers is an individual residing at                                        or wherever he may be found.

### JURISDICTION and VENUE

4.1     This Court has both subject matter and personal jurisdiction of the parties. Plaintiffs seeks monetary damages within the jurisdictional limits of this Court for defamatory statements originating from, or published by, Dallas Morning News, Moye, Schoettmer and Defendant Tobolowsky regarding Plaintiffs while Plaintiffs resided in Dallas County, Texas. Further, all or substantially all of the acts and actions about which Plaintiffs complain in this Petition occurred in Dallas County, Texas.

4.2     Venue is proper in Dallas County, Texas, pursuant to, *inter alia,* Texas Civil Practice & Remedies Code, Section 15.017, which states, in part, that a suit for damages for libel, slander, or invasion of privacy shall be brought and maintained in the county in which the Plaintiffs resided at the time of the accrual of the cause of action.

### AGENCY / RESPONDEAT SUPERIOR

5.     As used herein, whenever it is alleged in this Petition that Schoettmer performed an act or made a statement, Plaintiffs intend that said act or statement was done or made together with Defendant Tobolowsky, or as an authorized agent of Defendant Tobolowsky, or that Schoettmer did the act or made the statement under the authority of Defendant Tobolowsky via express, implied, apparent and/or some other authority, pursuant to *Respondeat Superior.* *Respondeat Superior* shall be relevant from May 13, 2016 through August 29, 2016, the limited time period Defendant Tobolowsky was the Independent Executrix of the Estate of Ira E. Tobolowsky, Deceased.  During the relevant times herein, Schoettmer worked for Defendant Tobolowsky filing court documents, speaking on her behalf and acting jointly with regard to the actions asserted.

## STEPHEN C. SCHOETTMER

### A.  Coconspirator History

6.      On May 13, 2016, Ira Tobolowsky (**"Tobolowsky"**) died in a tragic fire. Prior to his death, Tobolowsky had a long history of helping out his friend Schoettmer.  Schoettmer struggled as a lawyer and eventually lost his position with a large firm in Dallas, Texas.  For many years, Tobolowsky would create bogus lawsuits for personal profits and he would bring in Schoettmer to act as his lawyer.  Schoettmer, always in need of work, would eagerly accommodate Tobolowsky in return for a small percentage of the judgments in their favor.  The conspiracy between the two lawyers paid a very large dividend to Tobolowsky who, in turn, would give a small share to Schoettmer.

7.      On August 19, 2010, Schoettmer filed, on Tobolowsky's behalf, a bogus defamation action against Tobolowsky's former client Judy Bruaman in Cause No. 10-09803 in the 116th Judicial District Court in Dallas County, Texas, attached as **Exhibit A**.  Schoettmer chased Judy Brauman with this litigation for 2 ½ years.  Schoettmer's petition states:

> **Prior to Defendant Brauman's slanderous and slanderous per se statements, Plaintiff Tobolowsky enjoyed an excellent professional reputation and was held in high esteem by attorneys and others in the Dallas community.**
> (*Id.* Exhibit A at ¶ 14.)

That did not pan out to be true.  While the frivolous lawsuit racked up tens of thousands of dollars in legal fees (charged to Bruaman) the jury determined at the trial that Tobolowsky was defamed but that he did not have a good reputation in the community and his injured reputation was only worth $5.[1]

8.      Tobolowsky created and registered numerous shell companies with the Texas Secretary of State for purposes of engaging in improper judicial judgments and improper

---

[1]  Schoettmer and Tobolowsky would later bring a lawsuit for defamation against the plaintiffs in this instant case.  In Cause No. DC-15-08135 the coconspirators again were suing for damages to Tobolowsky's reputation even though he had already been compensated for its value only a few years prior, $5.

financial transactions.  Some of Tobolowsky's shell companies included: Tobolowsky & Burk PC, IF Title Company Inc., Apartment Maintenance Services Inc., Syndicap LLC, 26-23-25 Freewood LLC, Coastal Restaurants LP, Chauncey's Raiders LLC, 1339 E Levee LLC,  2601 Creswick LLC, Touch Screen Technologies LLC,  Ziosk Financial Services LLC,  Bibny LLC, CM Group LLC and  PST Enterprises LLC.  Tobolowsky would utilize Schoettmer when appropriate and Schoettmer would profit from these same illicit shell companies but to a much lesser degree.

9.      On September 27, 2011, Tobolowsky filed a lawsuit on behalf of his client, The Estate of Wesley T. Smith, in Cause No. DC-11-12708 in the 298th Judicial District Court of Dallas County, Texas against defendant Deluxe Credit Financial Services, LLC ("Deluxe"). Tobolowsky surmised that Deluxe was wealthy enough to pay his client's damages and cover hundreds of thousands of dollars if Tobolowsky would also join as another plaintiff.  On October 26, 2011, Tobolowsky formed his shell company PST Enterprises, LLC for the sole purpose of creating fraudulent debt.  Tobolowsky would swindle Deluxe utilizing his brand new shell company, his connected cousin and Schoettmer.

10.      On December 8, 2011, though no business transacted in Denton County, Texas between the plaintiff or the defendant, Schoettmer filed a lawsuit for phony debt on behalf of the new bogus shell company in Cause No. 2011-71412-431 in the 431st Judicial District of Denton County, Texas.  Schoettmer filed the sham lawsuit in Denton County because Tobolowsky had a cousin, Peggy Tobolowsky, who was well connected to the legal community and judges in Denton County, Texas.  She was able to call in favors in exchange for improper rulings that would benefit Tobolowsky.  On February 3, 2012, judgment was rendered in favor of PST Enterprises, LLC for the sum of **$782,499.75**, debt that Deluxe did not owe, plus court costs.

11.      On June 12, 2012, Schoettmer filed a plea to intervene in Dallas County lawsuit on behalf of PST Enterprises, LLC.  Tobolowsky was both legal counsel for the plaintiff, The Estate of Wesley T. Smith, and a bogus plaintiff himself, through his newly formed shell, PST

Enterprises LLC.

12.     On July 21, 2015, coconspirators Tobolowsky and Schoettmer targeted Plaintiffs, optimistic they were ripe to be fleeced, and filed another defamation lawsuit in Cause No. DC-15-08135 in the 14th Judicial District Court in Dallas County, Texas.   Evidence proves Tobolowsky believed his lawsuit was frivolous and filed for purposes of harassment and judicial abuse.  Only two months prior, on May 11, 2015, in Cause No. PR-14-01486-2 in Probate Court Two in Dallas County, Texas, Tobolowsky filed a motion to hold Plaintiffs in contempt of court in a case that Plaintiffs non-suited nine days prior to his filing.   Tobolowsky's extraordinary 528-page motion requested that both Plaintiffs be confined in jail and requested over $1,000,000.00 in sanctions.   Though the Court ignored the untimely filing, Tobolowksy gave his legal opinion regarding Plaintiff's liability for defamation at the beginning of his motion.   Tobolowsky's motion refers to himself as a Movant and Plaintiffs as Contemnors, stating:

> "Movants complained throughout this lawsuit about the malicious, vicious, and reprehensible defamatory statements made about them by Contemnors in pleadings, motions and documents filed of record in this case as well as in emails and other writings sent to third parties about this case (collectively, "Judicial Communications"). Such Judicial Communications damaged and/or destroyed the reputation of Movants. Unfortunately for the Movants, the **CONTEMNORS ARE INSULATED FROM LIABILITY FOR DEFAMATION** because of the Texas Judicial Communication Privilege. See Birdv. WC. W, 868 S.W.2d 767,771 (Tex. 1994); Leighv. Parker, 740 S.W.2d 101,103 (Tex.App.- Austin 1987, writ den'd); Laub v. Pesikojf, 979 S.W.2d 686 (Civ.App.- Houston [J51 Dist.] 1998); 1998 Tex.App. LEXIS 4909, and cases cited therein." (Emphasis added.)

In the span of only two months, Tobolowsky represented to one Court his legal opinion on Plaintiff's insulation from liability and in another Court, represented the opposite opinion through his co conspirator, Schoettmer.  Schoettmer filed DC-15-08135 for improper purposes.

13.     On April 19, 2016, Kenneth Schwartz filed his lawsuit against Tobolowsky's shell company, Apartment Maintenance Services, Inc. in Cause No. DC-16-04507 in the 68th Judicial

Moye MTD 8

District Court of Dallas County, Texas for mortgage fraud and damages of $638,900.00.  It is not yet known how involved Schoettmer was in this fraudulent shell company and transaction.

14.    Clearly, there is a well-documented history of Schoettmer assisting Tobolowsky with his nefarious legal maneuverings and for many years he was glad to accept Tobolowsky's leftovers.

**B.  Jihad and The Scheme**

15.    On July 21, 2015, Schoettmer filed Cause No. DC-15-08135, the last case he would ever split with Tobolowksy. The case marked the beginning of Schoettmer's scheme to eliminate his friend/nemesis, Tobolowsky.  Also on July 21, 2015, as part of the scheme, Schoettmer began to brand and associate Plaintiffs with "Jihad" and terrorism.  Though it is indisputable there was no connection between Plaintiffs and Tobolowsky and Jihad, Schoettmer launched a peculiar new legal claim filing the original petition with 11 extraordinary references to Plaintiff's "Jihad" against Tobolowsky.   It took almost one year to realize the purpose and strategy behind Schoettmer's fanatical and relentless "Jihad" claims in his pleadings.

**C.  Murder, Finger Pointing and Defamation**

16.    On May 13, 2016, Schoettmer, or somebody hired by Schoettmer, murdered Ira Tobolowsky.  Schoettmer brought to an end the many years of playing second fiddle next to his friend, Ira Tobolowsky.  Schoettmer became desperate when he lost his job and then his wife.  In 2015 and 2016, Schoettmer struggled with drug and alcohol addiction.  He had reached his limit and Schoettmer's despair caused him to do the unthinkable to his friend.

17.    Immediately after the murder, Schoettmer was first in line to share his opinions with authorities.  Acting though a friend would have any idea the contents in the garage of another friend, Schoettmer declared that Tobolowsky must have been murdered because his physical condition did not allow him to use strong chemicals and his garage did not have any

such chemicals.[2]  Schoettmer then committed his second crime on that day and violated Penal Code Sec. 42.06 by giving a False Report to authorities to make Plaintiffs the scapegoat for his heinous act.   Schoettmer told authorities that Plaintiff Aubrey threatened Tobolowsky's life with "Jihad" and the threat could be found in Schoettmer's Jihad case, DC-15-08135.  That was a lie. Schoettmer also told authorities that Tobolowsky was a Jew and as such "felt Jihad was an anti-Semitic statement."   HOWEVER, PLAINTIFFS NEVER USED THE TERM "JIHAD" IN THEIR PLEADINGS.  Schoettmer used "Jihad" incessantly.   While Schoettmer may well have been anti-Semitic, Plaintiffs are of gentile decent and found Schoettmer's use of "Jihad" extremely disturbing and considered his use of "Jihad" a direct physical threat to Plaintiffs personally.  On November 16, 2015, ONLY THREE DAYS AFTER 128 PERSONS WERE KILLED BY TERRORISTS IN PARIS, FRANCE, Schoettmer filed his amended petition with radical references to "Jihad" and the addition, and first time use, of the term "Isis."  See Plaintiff Aubrey's letter requesting extra security due to Schoettmer's filing, attached as **Exhibit B**. Schoettmer had the audacity to mislead authorities with multiple lies and claim that his frivolous lawsuit was Plaintiff's motive for murder.  The frivolous lawsuit was, in fact, Schoettmer's motive and device to finally bring to an end what he considered an unfair partnership.

18.     Schoettmer told authorities and the media that Plaintiff Aubrey sent an death threat email, warning: **"I'm going to kill you."**   That was a lie.

19.     Schoettmer told the Dallas Morning News that Ira Tobolowsky **"was universally loved, and this was the only individual that I'm aware of that had any excessive ill will towards him,"** referencing Plaintiff Aubrey.  That too was a lie.  Not only did Schoettmer know about Tobolowsky's many shell companies and how they were used, he was actually part of the schemes that generated hundreds of thousands of dollars in fraudulent judgments and left

---

[2]  Plaintiffs have no idea what is kept in any of their friends' garages but it should be noted that Tobolowsky had a physically able wife and 3 grown athletic boys.  While Plaintiff Aubrey does not know about friends garages as Schoettmer boldly professes, he does know that his mother is single, lives alone and keeps paint, gasoline, pool chemicals, ladders and some lawn equipment in her garage.

dozens of victims in their path. (*Id.* ¶¶ 7-12.)  Tobolowsky had a horrendous reputation in Dallas for improper influence in the courts and for mortgage and bank fraud.

20.     Schoettmer told news teams that Plaintiff Aubrey's **"anger was just unprecedented."**  In reality, he was really speaking of his own unprecedented anger.  Plaintiff Aubrey never exhibited any anger at any time and thought the lawsuit was just a silly waste of time.  However, Schoettmer had several tantrums during the deposition of Steven Aubrey and would only stop yelling when he was told the deposition would be stopped if he could not control himself. Schoettmer's frequent outbursts are recorded for evidence.

21.     Schoettmer told authorities and the media that family members said **"Tobolowksy felt threatened by Steve Aubrey because of a lawsuit."**  That was a lie.  Not only did the family not share that opinion, as much as nine weeks after the murder on June 23, 2016, The Dallas Moring News reported the opposite: **"Though some have said Tobolowsky may have been killed because of his legal work, his sons said Thursday that they don't know if that was likely. Tobolowsky's family has said he didn't express fear or concern in the days leading up to his death."**  Clearly, the Tobolowsky family did not believe Plaintiff Aubrey committed the murder simply because Tobolowsky represented Plaintiff Aubrey's mother.  Tobolowsky son picked up the same representation of the mother immediately after his father's death.

22.     Schoettmer continually told verifiable lies to authorities and the media to shift the blame of the murder onto Plaintiffs.  Schoettmer proves he is a pathological liar many times in his court filings for DC-15-08135.

**D.  Fame, Fortune and Lifestyle**

23.     Schoettmer's lies, some criminal, caused authorities to waste valuable time investigating the wrong persons and Plaintiffs were NEVER considered to be suspects for the murder of Ira Tobolowsky.  Though Schoettmer's lies crippled the investigation, the lies garnered him the spotlight and fame that he craved for so many years.  Schoettmer told

everyone that his Jihad case, DC-15-08135, was a **high-profile** case but in truth it was a waste of judicial resources and nobody had any interest in the case except for Schoettmer. Even a Tobolowsky family member told the Dallas Morning News that he was unaware the case existed. However, after Schoettmer announced to the media that his Jihad case that caused a murder, the fantastical story catapulted the frivolous case into the realm of international recognition. Schoettmer, the guy who had lost his job, lost his family and lived in his friend's shadow for so many years, finally became the one person everyone wanted to interview, record, video and put on all the television news segments. Schoettmer had the audacity to play the victim telling the media that he was **"recovering"** from the loss of his friend (whom he murdered) and that he **"had no sense of fear"** regarding Plaintiff Aubrey.

24. The rewards that came to Schoettmer after the murder were greater than planned. Schoettmer's days of being grateful and accepting whatever Tobolowsky decided to parse to him were over. Schoettmer finally would have everything Tobolowsky had including his law practice and book of business. Shorty after he murdered Tobolowsky, Schoettmer moved out of the makeshift office in his basement right into Tobolowsky's office building. Instantly, Schoettmer had an established law practice, office and building with reception area and conference rooms. Tobolowsky had managed all of his schemes from his office building located at 4305 W. Lovers Lane, Dallas, Texas 75209. After the murder, Schoettmer registered his new address with the State Bar of Texas, 4305 W. Lovers Lane, Dallas, Texas 75209. See **Exhibit C**. Schoettmer's hostile takeover of the businesses Tobolowsky developed was still not enough.

25. Schoettmer's wife left him years before he murdered Ira Tobolowsky. After the murder, Schoettmer further shocked everyone when he testified in a hearing on November 30, 2016, that he was dating a woman who was identified by this Court as Mrs. Tobolowsky. Schoettmer took Tobolowsky's life, his business, his office and now even his wife. It is unknown if the romantic relationship between Schoettmer and Debra Tobolowsky developed before or

after Schoettmer murdered Ira Tobolowsky.  Therefore, it is unknown Schoettmer's motivations for fame, success, the book of business and wealth also included a new love interest for Tobolowsky's wife.

26.    Combining the two families should be challenging.  While Schoettmer's children, are all unemployed like their father, Tobolowsky's boys are gainfully employed like their father. Hopefully the Tobolowsky boys will be inspiration for the Schoettmer boys. The employment/unemployment issues could worsen as one of the three Tobolowsky sons, Michael, may soon be unemployed as well.  Michael Tobolowsky's career as a lawyer will likely be cut short due to an investigation that determined Michael was criminally Possessing And Promoting Child Pornography.  Michael Tobolowsky has also been charged with Indecency With A Child Sexual Contact, though he has not been found guilty yet.[3]  The charge involves an 9-year old boy who lives a few houses down from Michael Tobolowsky's residence on Richmond Ave, Dallas, Texas.  The family of the adolescent victim is discussing with counselors if they should move forward and have the District Attorney prosecute Michael and then withstand what will be a very high-profile trial knowing their 9-yr old son is already traumatized. (Michael Tobolowsky's name and address will not be added to the sex offender registry unless The State is able to convict him.)

27.    Combining two large families has its challenges but if Schoettmer eventually marries Debra Tobolowsky, neither he nor his kids will ever have to work another day. Tobolowsky amassed a small fortune through his 24 plus nefarious companies.  The list of assets is so vast that the Tobolowsky family is trying to circumvent probate court law that requires them to publically list all properties and assets.  See the proposed order, attached as

---

[3] Michael has a condition known as pedophilia.  Pedophilia does not always turn into sexual abuse of children.  Some pedophiles never act on their desires of impulses.  Pedophilia is typically inherited and seems to run in families.  This could imply learned behavior but genetic factors were present and then shaped by environmental factors.  Sexual abuse tends to run in families.  Friends of Michael say they have long known that he has an erotic interest in both underage boys as well as in himself and his own appearance.  Friends frequently say Michael is self-obsessed and narcissistic but that he is also fun and loves to laugh.

**Exhibit D**.  The Tobolowsky family's attempt to avoid public exposure of the wealth they are inheriting is likely so they can avoid potential disaster with the Internal Revenue Service.  Ira Tobolowsky had a history of conspiring to defraud the United States Internal Revenue Service.

**ERIC VAUGHN MOYE**

**A.  <u>Affirmative Action Failure</u>**

28.     Moye exemplifies the benefits of being in the right place at the right time.  Moye's test scores and level of intelligence prohibited him from applying to an institution such as Harvard.  However, at the time Moye was interested in attending a law school, this country was obsessed with affirmative action.  Though Moye's level of ability did not meet the standards of Harvard, the color of his skin mandated the prestigious university meet its quota and accept Moye into their program as if he had qualified.  There was no confusion on Harvard's campus because just like Moye, the entire student body knew the truth.

29.     Affirmative action devalues the accomplishments of people who are chosen based on the color of skin rather than their qualifications, rendering the program a complete disaster.   The affirmative action student should receive a diploma with an asterisk classifying: Affirmative Action Student.  Any person, including Moye, who accomplishes great things without fair competition, is left scarred with an unrelenting inferiority complex around those who win fairly and don't get extra credit for the color of their skin.  Moye will forever know he was not good enough to attend Harvard and that free pass will always leave his confidence and self esteem damaged.  The only thing the affirmative action campaign did for Moye was give him an intolerable "small man's complex."  To compensate and make himself feel significant, Moye bullies everyone who is unlucky enough to land in his court.

**B.  <u>Courtroom Abuse & Games</u>**

30.     Moye does not honor his Court for its intended purpose.  Instead he uses his Court as a vehicle to punish everyone for affirmative action and feed his insatiable ego by

Moye MTD 14

demeaning those who are forced to attend.   Moye is not at all interested in the judicial system and the purpose of his court.  He uses it for political maneuvering,  self-importance, improper financial enrichment and entertainment value.  Moye has a long-standing reputation in the Dallas County legal community for selling his court and his rulings and for being on the take. Plaintiff Aubrey has attended hearings in Moye's court three times and has witnessed the judge's barbaric and ghetto behavior first hand.

31.    Even those parties and lawyers favored by Moye suffer in his presence.  Moye enters the courtroom as though he was the Queen of England.  Even his speech is affected with his own American version of he British posh accent.  All in attendance are minions for Moye's entertainment.  Moye takes pleasure in belittling people and expects them to act as court jesters (fools) for his pleasure.  Plaintiff Aubrey attended a hearing for DC-15-08135 and actually felt sorry for Schoettmer when Moye publically humiliated him.     Plaintiffs, Schoettmer and Tobolowksy were sitting at the tables to be heard and there were approximately 20 other lawyers and guests in attendance waiting for their hearings.   Moye made his grand entrance and without speaking a word, looked at Schoettmer with disapproval and a furrowed brow while making a gesture as though he was straightening his own tie, an indication that Schoettmer did not meet his standards of dress.  Treating Schoettmer like a child in front of others, Moye got the response he expected.  Schoettmer turned beet red in the face and ducked his head down, in a very subservient fashion, while he straightened his tie, making a slight nervous snorting sound as if to say, "Oh gee whiz, I'm a goofball."   Schoettmer acted like a 13 year old boy who had been caught masturbating by his Science teacher.   The exchange between the two was utterly humiliating as Moye completely emasculated Schoettmer in front of the crowd.

32.    At a subsequent hearing for DC-15-08135, Moye determined it was Plaintiff Aubrey's turn to perform and entertain the judge.  Moye is at least smart enough to know that Plaintiff Aubrey has self-respect and would never act like the village idiot for his pleasure. Plaintiff Aubrey has at all times treated the Court with respect and expected the same in return.

Because Plaintiff Aubrey would not act like an idiot, Moye decided to make Plaintiff Aubrey take a test of sorts, knowing there was no possible way for Plaintiff Aubrey to respond and then brand the lack of response as "lying." Moye launched into a line of questions that Plaintiff Aubrey was unable to answer. Moye was aware that Plaintiff Aubrey had moved out of his apartment and asked where he was staying. Plaintiff Aubrey answered he was staying as a guest with a friend. Moye asked who the friend was and Plaintiff Aubrey answered. Moye then asked the address of the friend's home. Plaintiff Aubrey did not know. Moye acted as though he was shocked Plaintiff Aubrey did not know more than just the name of the street. Moye then asked the friend's phone number so he could call him to verify where Plaintiff Aubrey was staying. Plaintiff Aubrey did not know the telephone number. Moye said he thought Plaintiff Aubrey was a liar. Moye then asked for another address of somebody mentioned by Plaintiff Aubrey. Plaintiff Aubrey again answered that he did not know the actual address. Moye again said he found Plaintiff Aubrey to be a liar and putting him in jail for a week might help his memory.

33.     Plaintiff Aubrey, like 97% of the population, does not write hand written letters to friends, address the envelopes and then take the letter to the post office for delivery.   That is something Moye's mother may have done. Plaintiff Aubrey sends his friend's email, texts and calls them simply by clicking on their names in his contact list. While Plaintiff Aubrey obviously knows the names of the streets his brothers live on, he has no idea the actual addresses or their phone numbers. Therefore, Plaintiff Aubrey certainly does not know from memory any of that information for any of his friends. The only addresses and phone numbers Aubrey has ever known from memory are those addresses where he has personally lived and the phone numbers personally assigned to him. Moye may not be smart enough to get into Harvard but he is smart enough to know his line of questioning was ridiculous and designed for failure so that Moye could berate Plaintiff Aubrey, call him a liar in open court and several times threaten to send him to jail. Plaintiff Aubrey is confident that if he knew he would be tested on addresses

and phone numbers, he is capable of memorizing the information and passing a test.  Moye is a classic bully and takes pleasure humiliating others in the one place he cannot be denied, his courtroom.

### D. Coconspirator

34.     Moye has acted as coconspirator with both Tobolowsky and Schoettmer.  It is not known if Moye's improper actions were motivated by monetary payment or political leverage.  Either way, Moye accepted bribes and acted completely outside of his jurisdiction.

35.     On February 18, 2016, Moye improperly signed an ex parte order (previously delivered in some ex parte fashion by Tobolowsky) that charges Plaintiff Aubrey with $500,000.00 in sanctions in DC-15-11685.  Moye conspired with Tobolowsky and the ludicrous ex parte order was kept secret from Plaintiff Aubrey for months.  $250,000.00 of the ex parte order sanctions was based on Plaintiff Aubrey's previous lawsuits, contrary to limits imposed by Civil Practice and Remedies Code Sec. 10.002(c), which states:

> THE COURT MAY AWARD TO A PARTY PREVAILING ON A MOTION UNDER THIS SECTION THE REASONABLE EXPENSES AND ATTORNEY'S **FEES INCURRED IN PRESENTING OR OPPOSING THE MOTION,** AND IF NO DUE DILIGENCE IS SHOWN THE COURT MAY AWARD TO THE PREVAILING PARTY ALL COSTS FOR INCONVENIENCE, HARASSMENT, AND OUT-OF-POCKET EXPENSES **INCURRED OR CAUSED BY THE SUBJECT LITIGATION.**

The coconspirators' ex parte shockingly tacked on an additional $250,000.00 without basis in any law or statute, without any basis of any fact, without even a lame excuse.  Plaintiff Aubrey was just simply order to pay.  Coconspirators Moye and Tobolowsky kept this Order secret from Plaintiff Aubrey, directly contradicting Civil Practice and Remedies Code Sec. 10.003, which states:

> THE COURT SHALL PROVIDE A PARTY WHO IS THE SUBJECT OF A MOTION FOR SANCTIONS UNDER SECTION 10.002 NOTICE OF THE ALLEGATIONS AND A REASONABLE OPPORTUNITY TO RESPOND TO THE ALLEGATIONS.

Not only did Plaintiff Aubrey have NO opportunity to respond to allegations, for several months he never knew the executed ex parte Order existed.  See coconspirators' ex parte order with no basis, attached as **Exhibit E**.  When Moye was pretending to act as a judge he was conveying or permitting another (Tobolowsky) to convey the impression that he was in a special position to influence the judge.

36.    On February 22, 2016, Plaintiffs filed motions for ex parte Moye to recuse himself in DC-15-11685.  The next day, February 23, 2016, Tobolowsky filed a motion to hold Plaintiffs in contempt for filing the motions for recusal, attached as **Exhibit F**.  Tobolowsky's fanatical motion suggests that Plaintiff Aubrey and Plaintiff Vodicka **"be confined in Dallas County jail for a period of time not to exceed 29 days commencing immediately…"** because they filed the motions for recusal.  While this would have been an appropriate time for ex parte Moye to recuse himself, he instead waited for Schoettmer to murder Tobolowsky.

37.    Ex parte Moye was equally comfortable with bribes originating from Schoettmer.  However, Schoettmer did not have Tobolowsky's vast experience with ex parte maneuvering and deal making.   Schoettmer made a novice mistake in his Jihad case, DC-15-08135, and admitted in a court filing that he had been working in secret to get his order signed by ex parte Moye.   See **Exhibit G**.  Schoettmer's March 17, 2016 letter to the clerk admits that he previously "forwarded this proposed Order to Bonnie on last Friday."  Bonnie is ex parte Moye's assistant and "last Friday" translated was 7 days prior on March 11, 2016.   While Bonnie was privileged to get a copy of the Order, Plaintiff's were not so fortunate.  Plaintiffs received a copy of the proposed Order at the same time they received the copy signed by ex parte Moye, violating the same statutes cited above. (*Id.* ¶ 35.)  Coconspirators Moye and Schoettmer surprised Plaintiffs with an ex parte Order, attached as **Exhibit H**, that determined both were in contempt and held them liable for sanctions totaling over $9,000.00.

38.     Ex parte Moye conspired with Schoettmer to charge Plaintiffs improper legal fees for Schoettmer's contract work.  Schoettmer, who worked out of his basement, puts his fees at $450.00 per hour when the average contract lawyer in the United States only commands $60.00 per hour.   This is a reflection of the lawyer over population.  Schoettmer boosts that he has been:

> "licensed to practice law in the State of Texas by the Texas Supreme Court since November, 1980, licensed before all state courts, as well as the Federal courts in the state of Texas, is Board Certified, has been **continuously certified by the State Bar of Texas in Personal Injury Law and in Civil Trial Litigation since 1992**, has handled litigation virtually identical to the instant litigation on multiple occasions, has tried to judgment in the order of seventy (70) cases, probably handled multiple thousands more litigation matters and feels a fair and reasonable rate for the legal services is $450.00 per hour."

Schoettmer claims (though he's a known pathological liar) that he "has been continuously certified by the State Bar of Texas in **Personal Injury Law** and in Civil Trial Litigation since 1992"  and defamation is categorized as a personal injury case.  However, this certified lawyer proves he does not even understand the difference between libel and slander.  (*Id.* Exhibit A.) When he represented Tobolowsky in the frivolous lawsuit against a former client (who most likely has ill feelings towards Tobolowsky), he stated:

> The Defamation **published** by Brauman to third parties **is not only slanderous but is also slanderous per se**. Defendant Brauman has **published these slanderous and slanderous per se statements** about Tobolowsky to third parties numerous times during the preceding year. As late as July, 2010, Brauman **published slanderous and slanderous per se statements** about Tobolowsky to a co-worker of Tobolowsky's son. The **slanderous and slanderous per se statements published** by Brauman about Tobolowsky were published to intentionally embarrass, shame, humiliate and injure Tobolowsky and his reputation. (*Id.* Exhibit A at ¶ 13.)

The only thing that is embarrassing, shameful and humiliating is Schoettmer's lack of knowledge

about defamation.  While he may be certified, Plaintiff Aubrey knew the difference between slander and libel even before starting his pro se career.  Schoettmer does not produce $450.00 per hour work product.  Affirmative Action Moye thinks Schoettmer's work is brilliant and at a hearing, denied Plaintiff's request to speak about the abusive fees charged.

39.     On the other hand, you have Demetri Anastasiadis, one of the team of six lawyers, needed to represent Moye and get him out of the hole he dug for himself in this instant case.  Mr. Anastasiadis reveals his lofty qualifications in his October 31, 2016 response to sanctions as follows:

> "The undersigned has been licensed to practice law since 1978, board certified in civil trial law by the State Bar of Texas, Board of Legal Specialization since 1990 and is licensed to practice law in Texas, Oklahoma and Florida. It is submitted that $100.00 per hour for 3 hours work on this case is a reasonable and modest fee under the circumstances presented."

It is nonsensical that Moye would find Schoettmer's below average work product worthy of $450.00 per hour and retain a lawyer, Mr. Anastasiadis, to save him from a horrible mess and only permit him to charge a meager $100.00 per hour.  Perhaps his value is diminished because his law degree is from 168th ranked Oklahoma City University.  Plaintiff Aubrey admits he had never known that Oklahoma City University had a law school and is hopeful that it will pull up in the ranks.  (Moye himself may have been accepted into Oklahoma City University Law School without playing the affirmative action card.)  Moye is forever up for a good game in his courtroom.

## E.  Criminal Offenses

40.     Moye is no stranger to committing criminal offenses and then using his position as a judge for exemption of the offense, no matter the severity.  In 2009, Moye committed an offense as a judge, when he physically assaulted another judge while a Dallas County sheriff's deputy witnessed the incident.

41.    On May 13, 2016, the same day Schoettmer murdered his friend, Tobolowsky, Moye was driving his Mercedes on the Dallas North Tollway, and he illegally pointed his loaded handgun at a WOMAN driving next to him.  The woman feared Moye was going to shoot her. Moye lied to the media saying he was running scared because he thought Plaintiff Aubrey was going to kill everyone involved in his lawsuit so out of fear he was simply moving his loaded firearm from the glove box to the seat of his car to be on "ready." (Schoettmer did not have a sense of fear.)   Moye's lame excuse was a lie as there was no possible way a woman I another car can look over and see Moye's glove box or the seat of his car.  The frightened woman was not driving an 18-wheeler.  Scared for her life, the woman driver determined the man in the Mercedes was a dangerous criminal so she snapped a picture of Moye's car and posted it on Facebook hoping that someone would identify the Mercedes, license plate and the thug who was driving it while brandishing his firearm.  He was quickly identified as Moye.  The woman did comment that the then unidentified driver's erratic behavior made her believe he was high on some type of drugs.  Moye's criminal offense is a second-degree felony, Aggravated Assault. Like his other offense, when he physically assaulted the other judge, the public also witnessed this.  (*Id.* ¶ 38.)

42.    With his car and description of his offense posted on social media, Moye had a problem that would clearly cost him his upcoming re-election.  Had he properly be arrested, thrown in jail and indicted, his judging days would be over.   Just like Schoettmer, Moye determined his best shot at avoiding spending time in prison was to use Plaintiff Aubrey as his scapegoat and excuse for criminal behavior.  Several days after Moye committed his second-degree felony offense, Aggravated Assault, he publically stated he was recusing himself from DC-15-08135 because he thought Plaintiff Aubrey murdered Tobolowsky.   (No statute exists that permits a judge to recuse himself from a case if he alone thinks a party to a case murdered another party to the case, causing the judge to be scared.)  If it was true that the judge of such case was in danger, then Moye was the biggest coward in the county, because he was simply

transferring his dangerous situation onto the shoulders of a different judge who would be assigned to the case.  It is hardly honorable for Moye to think his life is more valuable than that of now presiding Judge Donald Cosby.  In fact Moye is arguably less valuable because Judge Cosby earned his law degree without using the color of his skin.  In truth, Moye is too arrogant to be a coward.  He is not a coward.  He is a felon.  And judges who commit felonies need really good excuses to exempt them from the criminal laws imposed on everybody else.

## F. Defamation

43.     On May 18, 2016, five days after Moye committed his second-degree felony, Aggravated Assault, with malice and for his own personal gain Moye publically stated Plaintiff Aubrey's name and unambiguously charged Plaintiff Aubrey with the murder.  Dallas Morning News, and many television stations, published Moye's shocking accusation:

> "**Moyé said in court Wednesday that he was voluntarily removing himself from the case because of Aubrey and "his implications in the death of Mr. Tobolowsky.**"  (Emphasis added.)

These are the words the media held onto and published and republished for months to destroy Plaintiffs' reputations.  As of the date this amended petition is filed, no legal authority, news organization or even another person, has made such a statement or claim, as did Moye.

## ROBERT L. ERMATINGER, JR.

44.     After Schoettmer murdered Tobolowksy, he was front and center to begin spinning his campaign to place the blame on Plaintiff Aubrey.  Schoettmer told Ermatinger, a homicide detective, that Plaintiff Aubrey was responsible because of a lawsuit.  On May 18, 2016 Ermatinger signed three (3) sworn Affidavits for Search Warrants verifying "facts" that, in truth, were fabricated. Det. Ermatinger had full knowledge his affidavits were fictitious. He knew there was no possibility any judge would issue search warrants based on the truth and his only option was to perjure himself in his affidavits and lie to the judge.

45.     Ermatinger's first misrepresentation of "probable cause" that he presented as a true and "verified" fact, read: **"Family members advised detectives that complainant Tobolowsky felt threatened by Steve Aubrey because of a lawsuit that complainant Tobolowsky won when he represented the mother of Steven Aubrey."** First, Tobolowsky has NEVER won a lawsuit against me (verifiable).  Second, Tobolowsky family members admitted in the June 23, 2016 Dallas Morning News publication; Family of slain Dallas attorney Ira Tobolowsky offers $20,000 reward for tips;   **"Though some have said Tobolowsky may have been killed because of his legal work, his sons said Thursday that they don't know if that was likely. Tobolowsky's family has said he didn't express fear or concern in the days leading up to his death."** (Verifiable.)  Ermatinger used Schoettmer's false impressions and lied about what the family thought; he lied about the "loss" of a lawsuit and then he fabricated an outrageous lie that undoubtedly tipped the scales so that a judge would order a search warrant.

46.     Ermatinger's most salacious and fictitious misrepresentation of "probable cause," manufactured to alarm any judge and presented as a true and "verified" fact, read: **"Steven Aubrey threatened "Jihad" the same words used to describe the wars brought by terrorists, and <u>against his life</u> which was filed in court document number 15-08135."** (Two of his three affidavits did not include, "against his life.")  The court documents, in DC-15-08135, are readily accessible online. Review of the court document is conclusive proof that not such threat was ever made.   Judges rely on these affidavits to be fact-checked and truthful. Ermatinger was lazy and betting on the fact that the search warrants would result in evidence to hang around Plaintiff Aubrey's neck.  He had embarrassed himself and the Dallas Police Department and he has committed Aggravated Perjury.

47.     Ermatinger's next misrepresentation of "probable cause" presented as a true and "verified" fact, read:   **"Ira Tobolowsky is of Jewish descent and felt Jihad was an anti-Semitic statement."**  While inappropriately directed at Plaintiffs, this statement, in fact, verifies

that Schoettmer is an anti-Semite as he is the only one who consistently used "Jihad."  This statement was manufactured to mislead and trick the district judge and appear as additional motive for Plaintiff Aubrey. This too can be easily verified.

48.    Ermatinger's fraudulent affidavits then launch into a very lengthy description of observations intended to again, trick and mislead the district judge, concluding with:  **"The actions of Steven Aubrey and Brian Vodicka show that they are intentionally avoiding the Detectives."**  The dirty detectives went to the Moye's dirty court and handed out photos of Plaintiff Aubrey telling court personal to be on the lookout, as though Plaintiff Aubrey was on the run.  This was contrived showmanship.  If the detectives really wanted to speak with Plaintiff Aubrey, all they needed to do was to go to his home and knock on the door (the same address listed on his driver's license and the same address the ultimately searched via a fraudulent search warrant).

49.    Another misleading lie to trick the judge stated:  **"A short time later, Detectives were notified that Steven Aubrey's card was used to book a hotel room at the Crowne Plaza Hotel in Dallas, Texas, but the room was booked under the name Alexandria Krot.**" This exemplifies the disgusting and pathetic tricks used by Ermatinger who is too lazy to do his job so he sits and makes up stories to suit the end result he desires.  Clearly, Ermatinger is implying that Plaintiff Aubrey is on the run, staying in hotels under assumed names of women and doing his level best to lie and not do the job he is paid to do.  Plaintiff Aubrey DID book a hotel room on his card for his friend Alexandra Krot and she was later stopped by police officers and identified, before Ermatinger signed his fraudulent affidavits.

50.    Desperate to name Plaintiff Aubrey as a suspect for his murder case, Ermatinger went to great lengths to purposefully deceive the judge with fraudulent representations of Jihad terrorist threats to life, bogus tales of "intentionally avoiding the Detectives" and hiding out in hotels using the fake name of a woman.  When all of the perjury is removed from Ermatinger's fraudulent affidavits, the ONLY thing connecting Plaintiff Aubrey and Tobolowsky is

Schoettmer's pathetic defamation Jihad lawsuit. Without the perjury, Ermatinger's affidavits would have been useless as tools to illegally search and seize Plaintiffs' properties and Plaintiffs personally.

51.     Instead of requesting the magistrate on duty to issue the Search Warrants, Ermatinger drove to Judge Jeanine Howard's residence at night because he assumed her analysis of his fraudulent affidavits would be more permissive. He presented the unsigned and deceptive Search Warrants to Judge Howard, along with the supporting Affidavits for Search Warrants, which all stated, in part:  **"the <u>verified</u> facts stated by affiant in the affidavit…"** However, that was a lie as the facts were not verified.  In truth, they were fictitious facts.  The judge relied on Ermatinger's manufactured facts in the affidavits.  His false statements were "material" as they affected the outcome of the official proceeding by causing the judge to issue three fraudulent Search Warrants that resulted in the illegal search and seizure of Plaintiffs' homes and persons.  Because Ermatinger's false statements were made in connection with an official proceeding; he committed Aggravated Perjury, pursuant to Penal Code Sec. 37.03.  The offense of Aggravated Perjury is a felony of the third degree.

52.     Ermatinger defamed Plaintiffs with manufactured false statements in his affidavits.  To further compound the problem, Ermatinger made his fraudulent affidavits available to Dallas Morning News so his false statements would be read by the masses in the dirty newspaper.  Ermatinger should be suspended from Dallas Police Department, investigated, indicted and permanently removed from his position.  Police departments around the country have lost respect from the public because of bad cops who exhibit bad and illegal behavior, just like Ermatinger.

**SCOTT ROBERT SAYERS**

53.     On May 25, 2016, Sayers, a homicide detective, signed two (2) Affidavits for Search Warrants verifying "facts" that, in truth, were fabricated. Sayers had full knowledge his affidavits were fictitious. He knew that without perjuring himself in the affidavits, there was no possibility any judge would issue legitimate search warrants based on the truth and his only option was to perjure himself in his affidavits and lie to the judge.

54.     Sayers' first misrepresentation of "probable cause" presented as a true and "verified" fact, read: **"Family members advised detectives that complainant Tobolowsky felt threatened by Steve Aubrey because of a lawsuit that complainant Tobolowsky won when he represented the mother of Steven Aubrey."**   First, Tobolowsky has NEVER won a lawsuit against me (verifiable). Second, Tobolowsky family members admitted in the June 23, 2016 Dallas Morning News publication; Family of slain Dallas attorney Ira Tobolowsky offers $20,000 reward for tips;     **"Though some have said Tobolowsky may have been killed because of his legal work, his sons said Thursday that they don't know if that was likely. Tobolowsky's family has said he didn't express fear or concern in the days leading up to his death."** (Verifiable.)

55.     Sayers' most salacious and fictitious misrepresentation of "probable cause," manufactured to alarm any judge and presented as a true and "verified" fact, read: **"Steven Aubrey threatened "Jihad" the same words used to describe the wars brought by terrorists, and <u>against his life</u> which was filed in court document number 15-08135."**   The court documents, in DC-15-08135, are readily accessible online. Review of the court document is conclusive proof that not such threat was ever made.   Judges rely on these affidavits to be fact-checked and truthful.   Ermatinger was lazy and betting on the fact that the search warrants would result in evidence to hang around Plaintiff Aubrey's neck.   He had embarrassed himself and the Dallas Police Department and he has committed Aggravated Perjury.

56.    Det. Sayers' next misrepresentation of "probable cause" presented as a true and "verified" fact, read:  **"Ira Tobolowsky is of Jewish descent and felt Jihad was an anti-Semitic statement."**  While inappropriately directed at Plaintiffs, this statement, in fact, verifies that Schoettmer is an anti-Semite as he is the only one who consistently used "Jihad."  This statement was manufactured to mislead and trick the district judge and appear as additional motive for Plaintiff Aubrey. This too can be easily verified.

57.    Sayers Affidavits for Search Warrants, stated, in part:  **"the verified facts stated by affiant in the affidavit…"** However, that was a lie as the facts were not verified.  In truth, they were fictitious facts.  The judge relied on Sayers manufactured facts in the affidavits.  His false statements were "material" as they affected the outcome of the official proceeding by causing the judge to issue two fraudulent Search Warrants that resulted in the illegal search and seizure of Plaintiffs' homes and persons.  Because Sayers false statements were made in connection with an official proceeding; he committed Aggravated Perjury, pursuant to Penal Code Sec. 37.03.  The offense of Aggravated Perjury is a felony of the third degree.

58.    Sayers defamed Plaintiffs with the manufactured false statements in his affidavits.  To further compound the problem, Sayers made his fraudulent affidavits available to Dallas Morning News so his false statements would be read by the masses in the dirty newspaper.  Sayers should be suspended from Dallas Police Department, investigated, indicted and permanently removed from his position.  Police departments around the country have lost respect from the public because of bad cops who exhibit bad and illegal behavior, just like Sayers.

## A. H. BELO CORPORATION

### A. Extraordinary Motivation

59.     The Dallas Morning News has exhibited nothing short of absolute obsession with Plaintiffs and Tobolowsky.   It is possible Dallas Morning News is actually one of the assets owned by the Estate of Ira Tobolowsky, Deceased but the public will never know as the family is resisting listing their assets with the Probate Court.

60.     On May 13, 2016, Schoettmer murdered Ira Tobolowsky.  Dallas Morning News ran their first article about the incident and while the paper's writer did not defame Plaintiff Aubrey, the online version of the article has a thread of comments (edited by Dallas Morning News) that anyone can post and they continue to be added indefinitely if the publisher chooses. Following are the edited comments to that article:

> **Former_Police**
> Steven "Buffalo Bill" Aubrey is on the run with his husband. His photo is on the  news - BOLO Steven Aubrey, considered armed and dangerous.
>
> **Liz_Lawson1**
> It appears we have another Eric Williams on the loose and his name is...Steven Aubrey.
>
> **DallasNewsReader**
> Who did he make mad?

61.     On May 15, 2016 (3 days before he recused himself), Moye began disseminating defamatory and damaging statements to various media.   Dallas Morning News loved the extreme story and published:

> **"Members of Moye's re-election campaign said THE JUDGE WARNED OFFICIALS OF A POSSIBLE CONNECTION BETWEEN TOBOLOWSKY'S DEATH AND LITIGATION being handled by Moye's court."**
> (Emphasis added.)

> **"Sheriff's officers were patrolling at Eric V. Moyé's home because he was presiding over a high-profile civil case that prompted concerns for his safety, sheriff's spokeswoman Melinda Urbina said."**
>
> **"Urbina said bailiffs also had been told to be on alert,…"**

Note it was the judge who warned officials. Moye pounced on the opportunity and blamed his criminal behavior on Plaintiff Aubrey. Dallas Morning News was titillated by Moye's imaginary fear for his life and published articles excusing his criminal offense and blaming Plaintiff Aubrey. (Dallas Morning News did not share with its readers that Moye's committed a second-degree felony.)  With the help of Dallas Morning News, Moye convinced law enforcement, and the public, that as a judge, he is immune and exempt from responsibility for criminal acts. In truth, Moye is the last person who should judge others and he personally should be judged over at the criminal courthouse,

62.    On May 15, 2016, Dallas Morning News published its article about Tobolowsky followed by the thread of comments.  Dallas Moring News publishes tabloid style sensational stories dominated by headlines and photographs.   This blog speaks volumes about how the public was digesting the defamatory stories published by the paper.   Dallas Morning News screens the blog comments and those that are inappropriate are deleted.  This is what Dallas Morning News determined was fair and reasonable for publishing:

> **JerryJones**
> *Is Steven Aubrey out of Country?....Is he gay?...*
>
> **Former_Police**
> *Aubrey and Vodicka are both slimy cowards and they are both in contempt of court with attachment orders to arrest likely to be issued soon. These two Buffalo Bill imitators can run, but they will be caught. They are both persons of interest in a capital murder now.*
>
> **Former_Police**
> *Has Aubrey been brought in for questioning yet? I assume that he will voluntarily agree to take a polygraph.*

**Dax_Richard**
*If the info to Moye's threat was credible, then there is only one set of suspects.  So, no, I do not believe he will be coming in anytime soon for questioning. He will be brought in wearing shackles.*

**Former_Police**
*I just heard that Steven Aubrey may be on the run.*

**Dax_Richard**
*Can't wait until they catch him and his wife.*

*"This comment has been deleted"*

**Former_Police**
*Mr. Aubrey's attorney is also Mr. Aubrey's husband and his lawsuit against his mother makes no sense.*

**texguy@DubiousBrother @Forme r_Police**
*Huh? Mr. Aubrey's atty is Mr. Aubrey's husband?*

**DubiousBrother@FormerPolice**
*According to court documents.*

**Slickrcc**
*Looks like we got our suspect in the big time lawyers arson murder.*

*"This comment has been deleted"*

**Concerned-citizen-in-dallas**
*Exactly, problem is this post will now be flagged and removed\*

**Fancy**
*nice control of the media*


These comments, purported to be posted by random subscribers (Former_Police is clearly an interested party) exhibit one of two things:

1) this is a true random sampling, therefore the public does believe Plaintiff Aubrey is guilty because of the defamatory Dallas Morning News articles; or

2) Dallas Morning News is editing and only publishing the comments to push their agenda to defame Plaintiffs.

63.     On May 18, 2016, with malice and for his own personal gain, Moye publically stated Plaintiff Aubrey's name and unambiguously charged Plaintiff Aubrey with the murder:

> "**Moyé said in court Wednesday that he was voluntarily removing himself from the case because of <u>Aubrey and "his implications in the death of Mr. Tobolowsky</u>."** (Emphasis added.)

Dallas Morning News latched onto this quote from the dirty judge. Ex parte Moye is the only one who ever publically stated Plaintiff Aubrey was responsible for murdering Tobolowsky. The paper printed and reprinted this same quote over and over, week after week and month after month. Yes, Dallas Morning News can attribute the defamatory quote to someone outside of the publication. But when the 18 plus articles all persuade the reader to conclude Plaintiff Aubrey murdered Tobolowsky and law enforcement has never even considered him a suspect, the publication has tremendous defamation liability. Comments posted by readers of Dallas Morning News is all the proof needed to exhibit the public hatred directed at Plaintiffs.

**B.  <u>Defamation Ongoing</u>**

64.     Everyone was frustrated because they relied on the guy who murdered Tobolowsky, Schoettmer, and the criminal judge, Moye. The authorities and the media could not have chosen two more dishonest individuals to give basis to their investigation and media stories. The investigators were so close yet so far. Schoettmer was the fox guarding the hen house. At all times when something as serious as a murder occurs, follow the money or look for emotional jealousy or love interest. Schoettmer checks both boxes and is staring everyone in the face. Schoettmer has realized unimaginable financial gain and he is dating Tobolowsky's widow. Moye had his own agenda and set of problems to deal with and he did just that.

65.     Because the investigation turned up a total goose egg, everyone wanted to take out their frustrations and running around the block a few times was not an option. They decided to entrap Plaintiff Aubrey, making him appear as a prostitute and finally have something ugly to

print to give the months of defamatory articles the perception of validity.  So they did.

66.     Dallas Morning News' has had an uncanny ongoing obsession with Plaintiff Aubrey and Tobolowsky.  Though Plaintiff Aubrey has never been a suspect in the Tobolowsky murder case, the May 27, 2016 Dallas Morning News article features the name Aubrey TWENTY-SIX times.  The second paragraph begins: **"Rarely did anyone have anything bad to say about Ira Tobolowsky."**  Tasha Tsiaperas, the writer taking credit for this gross mischaracterization, must have been hallucinating because the most rare occurrence would be to find anybody that could say something nice about Tobolowsky.  Tobolowsky was a crooked lawyer and fraudulent businessman.  (*Id.* ¶¶ 7-13.)   When dirty cops Ermatinger and Sayers devised a scheme to entrap Plaintiff Aubrey, Dallas Morning News seized the opportunity to further defame him and once again attempt to portray him as the murderer of Tobolowsky.  The Dallas rumor mill has long suspected that Tobolowsky was having an affair with the president and CEO of Dallas Morning News, Jim Moroney.  If true, it would explain why Dallas Morning News is so obviously distraught over the horrible murder.

67.     Jennifer Emily refers to herself as the Justice Reporter for Dallas Morning News. Jennifer might well serve her career as a "justice reporter" and check her facts before allowing them to appear in print for public consumption.   Even the title: **MAN WHOSE HOME SEARCHED AFTER DALLAS LAWYER'S SLAYING ARRESTED ON PROSTITUTION CHARGE** awkwardly attempts to connect the search warrant, that turned up nothing many months prior, to an arrest for prostitution.  After 3 sentences in her October 28, 2016 article, the justice reporter launches into the same ol story reprinted by Dallas Morning News about Tobolowksy, the fire, the lawsuit and Plaintiff Aubrey.  These articles that obsessively talk about Plaintiffs always include: **"Neither Aubrey nor Vodicka has been accused of a crime in relation to Tobolowsky's death. No suspects have been named in the case."**  Dallas Morning News wants to believe this statement releases them from any and all liability.  Before the readers, who post in their comments, make it to this "disclaimer" of sorts, Dallas Morning

News has repeated Plaintiff Aubrey's name dozens of times and the reader has already been convinced Plaintiff Aubrey is guilty of murder.   The comments are proof of the public's opinion.

68.     It is unclear what "court records" this justice reporter appears to be relying on. The justice reporter needs to secure a copy of those court records because either she manufactured false information or the dirty cops, Ermatinger and Sayers, have again manufactured false information and possibly entered it onto some type of court record unknown to Plaintiff Aubrey.  The undeniable lie reads:

**A/P [arrested person] agreed to the sex act of masturbation and <u>deviant sexual intercourse</u> for $300.**

As with any entrapment, the police must have recorded the event and if they did, this statement is a provable outright lie.   Clearly the term deviant sexual intercourse leaves no room for interpretation.   **Deviant** is different from what is considered to be normal or morally correct. Wikipedia: **Sexual intercourse** is principally the insertion and thrusting of the penis, usually when erect, into the vagina for sexual pleasure, reproduction, or both.  This is also known as vaginal intercourse or vaginal sex.  Other forms of penetrative sexual intercourse include anal sex (*penetration of the anus by the penis*)

69.     For reasons unknown, Dallas Morning News wanted their readers to visualize Plaintiff Aubrey's penis, erect and thrusting in a crazy and deviant fashion into the police officer's anus.  Because Plaintiff Aubrey is not an escort, he NEVER bargains or negotiates his erect penis for a police officer's anus or for any other purpose.  When discussing the massage, Plaintiff Aubrey never offers to fuck any clients and if the client (when making the appointment) broaches the subject, Plaintiff Aubrey hangs up on them.  However, Plaintiff Aubrey admits he is somewhat flattered that anyone would think that at age 56, he could work as an escort and command such high prices.  Unfortunately, Dallas Morning News got it all wrong and visions of Plaintiff Aubrey thrusting his erect and large penis into the officer's anus simply DID NOT

HAPPEN.  If Dallas Morning News is able to prove up their source, then this defamatory and disgusting statement will be added to the liability of Ermatinger and Sayers.

## JUDICIAL IMMUNITY AND PRIVILEGE

70.     A judge plays a vital role in society and is endowed with powerful authority to resolve disputes.  However, that power and authority is limited to interpret and apply the law, adjudicate legal disputes, and otherwise administer justice.   Moye's public defamatory statements do not fit into any of the categories of far-reaching authority and is clearly absent of all jurisdiction.

71.     Moye acted ultra-vires, beyond his legal jurisdiction, when he made defamatory statements, known by him to be false when made. To the extent that Moye would contend that such defamatory statements are privileged by way of absolute judicial immunity, Plaintiffs contend that such privilege would not apply because Moye's defamatory statements, alleging Plaintiffs' criminality, were made deliberately, willfully, maliciously and ultra-vires.  Additionally, Plaintiffs contend that absolute judicial immunity would not apply because Moye was negligently making statements about Plaintiff Aubrey's criminal wrongdoing and actions, clearly absent of all jurisdiction.   Moye's defamatory and publicized statements that Plaintiff Aubrey was implicated in death of Ira Tobolowsky were statements Moye made in his individual capacity and for personal gain.  Moye acted under the color of law and judges are stipulated to not make these types of statements.  Moye's statements did not interpret and apply the law, adjudicate legal disputes and/or otherwise administer justice.   Because Moye deliberately made the defamatory statements, his actions did not comply with the laws of this State and therefore render his actions personal and ultra-vires.

72.     Plaintiffs allege that Defendant Moye acted ultra-vires regarding any of his actions related to Plaintiffs from May 13, 2016, to the present; and incorporates Moye's ultra-

vires designation in paragraphs 6-36 herein.  Any use of the term "Defendants" shall include the meaning of Eric Moye, acting individually, clearly outside of his jurisdiction and ultra-vires.

73.     The privilege granted to publication by a newspaper has limits and Dallas Morning News ignored those limits.    A newspaper is required to publish **"a fair, true, and impartial account of a judicial proceeding."**  Dallas Morning News publications have been abusive and not privileged.  Their repeated and malicious publications far exceed other media, some which would not name Plaintiffs because they were never suspects.  However, Dallas Morning News exploited Plaintiffs' names and in their May 18, 2016 article, they repeated the names "Aubrey" and "Vodicka" **seventeen (17) times.**  In the May 27, 2106 Dallas Morning News article they repeated names "Aubrey" and "Vodicka" **thirty-nine (39) times**.  Again, other news organizations covered the same fanciful story promulgated by Schoettmer and Moye, but they would not use Plaintiffs names because of liability regarding an action such as this instant one.  Dallas Morning News would add the complimentary statement; "Aubrey has not been accused of a crime" as though that gave them the rights to expose Plaintiffs to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation, which all have occurred.

74.     Clearly, Dallas Morning News published comments that did not represent a fair, true and impartial account of a judicial proceeding.  Some of the comments included:

> a) **"I just heard Steven Aubrey may be on the run;"**
>
> b) **"Looks like we got our suspect in the big time lawyers arson murder;"**
>
> c) **"He will be brought in wearing shackle;" and**
>
> d) **"Oh Steven Aubrey, where art though? Get ready for free room and board in East TX, air conditioning not included. Something tells me that your mama won't come to visit you."**

This privilege does not extend to the republication of a matter if it is proved that the matter was republished with actual malice after it had ceased to be of public concern.  Because Dallas

Morning News was infatuated with Moye's defamatory statement alleging Plaintiff Aubrey murdered Ira Tobolowsky, they reprinted it four (4) times over a period of thirteen (13) weeks. Dallas Morning News will be required to prove that the public was still hungry for the opinions of a judge turned felon.

75.     Finally, Dallas Morning News fabricated statements for their stories and would falsely credit the statement to someone who did not make it.  On May 27, 2016, Dallas Morning News published an article attempting to convince their readers that Plaintiff Aubrey was the only possible candidate to have murdered "universally loved" Ira Tobolowsky when they manufactured the following:

> **"He said that Tobolowsky 'was universally loved, and this was the only individual that I'm aware of that had any excessive ill will towards him,' Schoettmer said this week, referring to Aubrey."**

On September 12, 2016, Schoettmer gave sworn testimony in a hearing for Cause No. DC-15-08135 in the 14th Judicial District of Dallas County, Texas.  When he was asked specifically about the above Dallas Morning News article and statement (in quotation marks), he testified that he DID NOT make the statement.  (Schoettmer's *Respondeat Superior* relationship with Defendant Tobolowsky had previously terminated on August 29, 2016; therefore, Schoettmer's testimony is only attributable to him.)

## CAUSE OF ACTION

76.     Defendants' defamatory statements undeniably injured Plaintiffs' reputations and exposed them to public hatred, contempt, ridicule and financial injury.  Defendants' statements also impeached Plaintiffs' honesty, integrity, virtue and reputations. Defendants had knowledge their damaging statements would be aired on public television, printed in newspapers and viewed online.  Defendants were pursuing an intentional and hostile course of action to harass, intimidate, embarrass and humiliate Plaintiffs.  The publication of Defendants' statements completely destroyed Plaintiff Vodicka's relationships with his lifelong friends, business

associates, his entire family and even his physicians.  The publication of Defendants'
statements completely destroyed Plaintiff Aubrey's relationships with his lifelong friends,
business associates, his entire family and even caused Plaintiff Aubrey to be evicted from his
apartment.  Defendants' caustic defamatory statements directed at Plaintiffs, caused Plaintiffs'
neighbors to be frightened in their presence.  Defendants' accusation that Plaintiff Aubrey
threatened Ira Tobolowsky's life with Jihad caused multiple illegal search warrants against
Plaintiffs, their home and their property.  While authorities have never considered either plaintiff
a suspect of any crime, Moye committed his May 13, 2016 second-degree felony offense in
public and Schoettmer's May 13, 2016 false report offense is evidenced in public records.

77.    On May 13, 2016, Defendants commenced a course of unethical and illegal
behavior against Plaintiffs consisting of, *inter alia,* intentional lies, fraud, defamatory statements,
and "dirty tricks," in an effort to intimidate, harass, embarrass, discredit Plaintiffs and ultimately
divert attention away from Moye's second-degree felony criminal act and Schoettmer's criminal
false report.  When acting as judge, Moye is expected to be the "trier of fact," deciding whether
the evidence is credible and oversee court proceedings to ensure that they are fair and follow
the law.  His duties do not include physical assaults and making public allegations that Plaintiff
Aubrey is guilty of homicide.  Moye exhibited gross negligence when he committed these acts.
The malicious, intentional, and willful defamatory statements attacked Plaintiffs' reputations,
honesty, morals, integrity, and humanity.

78.    The intentional statements made by Defendants were defamatory, injured
Plaintiffs' reputation, and exposed Plaintiffs to public hatred, contempt, ridicule, and financial
injury. Further, Defendants' defamatory statements attacked Plaintiffs' integrity, honesty and
morality.  Defendants' defamatory statements suggest Plaintiffs' dishonesty, and criminal
culpability and such statements constitute defamation *per se.*  Further, Defendants' defamatory
statements are so obviously hateful and hurtful to Plaintiffs' reputations that such statements
constitute defamation *per se.*  Defendants' statements unambiguously charge Plaintiffs with a

crime (murder or manslaughter), dishonesty, fraud, rascality and general depravity so that the law presumes the statements are defamation per se. Defendants' statements connecting Plaintiffs to a criminal offense is so obviously hurtful to the aggrieved Plaintiffs that no proof of its injurious character is required to make it actionable.

79.    In addition to presumed damages, Plaintiffs have suffered damages, including the loss of reputation and mental anguish, far in excess of the minimum jurisdictional requirements of this Court, for all of which damages, Plaintiffs sue Defendants.

80.    Because of the magnitude of Defendants' defamatory statements and/or because of the seriousness of the accusations against Plaintiffs by Defendants, Plaintiffs contend that such actions by Defendants disallow Defendants from claiming, or attempting to claim, absolute judicial immunity and/or privilege. Plaintiffs therefore allege that each of the defamatory statements made by Defendants alleging criminal behavior, are not immune and/or privileged or should not be immune and/or privileged under Texas law. In support of withholding the application of absolute judicial immunity and/or privilege, Plaintiffs would show that Defendants' statements have purposefully exploited and abused any immunity and/or privilege because of Defendants' ulterior motives. Defendants' unlawful behavior cannot be excused simply because they alleged this case was motive for murder.

81.    Additionally, in support of withholding the application of absolute judicial immunity and/or privilege, Plaintiffs would show that Defendants deliberately made willful and malicious defamatory statements against Plaintiffs, to third parties, who job is to republish defamatory statements in an effort to cause severe harm to Plaintiffs, which severe harm Plaintiffs did in fact suffer. Defendants' defamatory statements were not about this litigation in furtherance of the process of this proceeding. The context of their use of this litigation in their statements was that the litigation was an excuse for their wrongdoing.

82.     Additionally, Plaintiffs would show that Defendants should not be allowed to exploit the absolute judicial immunity and/or privilege when Defendants had ulterior, malicious and willful motives.

83.     Plaintiffs would show that as a direct and proximate result of the deliberate, willful, and malicious defamatory statements made by Defendants, Plaintiffs' reputation has been severely damaged, and will continue to be severely damaged in the future because of both the attention given to the willful defamatory statements as well as the very nature and content of the willful and malicious defamatory statements.   As a direct and proximate result of Defendants' tortious and defamatory statements, Plaintiffs have suffered, and continue to suffer, presumed damages, but also extreme mental anguish, public humiliation and embarrassment, and other damages, for all of which damages Plaintiffs hereby sue Defendants.

84.     Because the acts and actions of Defendants, and each of them, were intentional, willful, and malicious, and because Defendants, and each of them, have acted with specific intent to cause injury to Plaintiffs and to damage and destroy Plaintiffs' welfare and reputations, Plaintiffs hereby seek to recover against Defendants, punitive damages in the maximum amount permitted by law.

85.     Plaintiffs hereby request each Defendant to make Disclosures as required by the Texas Rules of Civil Procedure.

86.     Plaintiffs hereby demand trial by jury.

## DAMAGES

87.     Plaintiffs seek recovery of the following damages against Defendants, jointly and severally, including court costs, attorneys' fees, and all other expenses related to bringing this action including:

    a. Judgment against Defendants for Defendants 's actual damages in an amount within the jurisdictional limits of this Court and proven at time of trial;

    b. Judgment against Defendants resulting from his illegal and unlawful conspiracy and proven at time of trial;

c.  Judgment for exemplary damages against Defendants in a sum
determined by the trier of fact and as allowed by law;

f.  Judgment against Defendants for presumed damages;

g.  Prejudgment and post judgment interest as allowed by law;

h.  Reasonable and necessary attorney fees as part of punitive damages;

i.  Costs of suit; and

j.  such other and further relief, at law or in equity, to which Plaintiffs  may be
justly entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Brian E. Vodicka and Steven B.

Aubrey request that Defendants be required to appear and answer herein and that upon trial

hereof, Plaintiffs Vodicka and Aubrey have judgment, jointly and severally, against Defendant

Schoettmer, Defendant Moye, Defendant Tobolowsky and Defendant Dallas Morning News.

Respectfully submitted,

By:  */s/ Brian E. Vodicka*_____
Brian E. Vodicka, Pro Se
State Bar No. 20598250

Telephone:

By:  */s/ Steven B. Aubrey*_____
Steven B. Aubrey, Pro Se

**Certificate Of Service**

I hereby certify that on the 27th day of January 2016, a true and correct copy of the foregoing document has been electronically served in accordance with TEX. R. CIV. P. 21 to all counsel of record as follows:

**Via Email**
Paul C. Watler

**Via Email**
Demetri Anastasiadis

**Via Email**
Michael Tobolowsky

/s/ *Steven B. Aubrey*
Steven B. Aubrey

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **STEVEN BENTON AUBREY, and** | § | |
| **BRIAN EDWARD VODICKA** | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **CIVIL ACTION NO. 0:18-CV-61117** |
| | § | |
| **D MAGAZINE PARTNERS et al.,** | § | |
| *Defendants.* | § | |

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL
JURISDICTION OVER TEXAS DISTRICT COURT JUDGE ERIC VAUGHN MOYÉ
AND FAILURE TO STATE A CLAIM**

---

# EXHIBIT 2

Order Declaring Steven B. Aubrey a Vexatious Litigant
March 1, 2017

CAUSE NO. DC-16-12693

| | | |
|---|---|---|
| **STEVEN B. AUBREY and** | § | **IN THE DISTRICT COURT OF** |
| **BRIAN E. VODICKA,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **A.H. BELO CORPORATION,** | § | **DALLAS COUNTY, TEXAS** |
| **ERIC VAUGHN MOYÉ, individually,** | § | |
| **STEPHEN C. SCHOETTMER, and** | § | |
| **DEBRA G. TOBOLOWSKY,** | § | |
| **Independent Executor of the Estate of** | § | |
| **Ira E. Tobolowsky,** | § | |
| *Defendants.* | § | **116TH JUDICIAL DISTRICT** |

**ORDER DECLARING STEVEN B. AUBREY A VEXATIOUS LITIGANT**
**&**
**PREFILING ORDER**

On February 1, 2017

~~Before the Court~~ came to be heard Defendants Judge Eric V. Moyé, Debra G. Tobolowsky

and A.H. Belo Corporation's motions to declare Steven B. Aubrey a vexatious litigant, filed

pursuant to Chapter 11 of the Texas Civil Practice & Remedies Code. The Court, having carefully

considered the evidence, arguments of the parties and relevant authority, concludes that Steven B.

Aubrey meets the criteria for finding that a plaintiff is a vexatious litigant, as set forth in Texas

Civil Practice & Remedies Code § 11.054. As set forth is Defendants' motions, the Court finds (1)

that "there is not a reasonable probability that the plaintiff will prevail in the litigation against the

defendant[s];" and (2) in the seven-year period immediately preceding Defendants' motions,

Plaintiff has commenced, prosecuted or maintained at least five *pro se* litigations, other than

litigation in small claims court, which have been finally determined adversely to him. This Court

therefore DECLARES Steven B. Aubrey to be a VEXATIOUS LITIGANT.

584

Pursuant to Texas Civil Practice & Remedies Code § 11.055, the Court ORDERS that Steven B. Aubrey furnish $25,000.00 in order to proceed in this matter. Such security shall be paid to the District Clerk on or before March 1, 2017, to assure payment of reasonable attorney's fees, court costs and expenses incurred in connection with defense of this litigation.

Pursuant to Texas Civil Practice & Remedies Code § 11.101, the Court ORDERS that Steven B. Aubrey is prohibited from filing, *pro se*, any new litigation in a district or statutory county court without permission of the appropriate local administrative judge of such district or statutory county court, as set forth in Texas Civil Practice & Remedies Code § 11.102.

Pursuant to Texas Civil Practice & Remedies Code § 11.103, except as provided in § 11.103(d), the Court ORDERS that a clerk of court may not file a litigation, original proceeding, appeal, or other claim presented, *pro se*, by Steven B. Aubrey in a district or statutory county court unless he first obtains an order from the appropriate local administrative judge, as set forth in Texas Civil Practice & Remedies Code § 11.102.

Pursuant to Texas Civil Practice & Remedies Code § 11.104(a), the Court ORDERS the Clerk to forward a copy of this Order to the Office of Court Administration of the Texas Judicial System no later than the 30th day after entry.

IT IS SO ORDERED this _____2nd_____ day of February, 2017.

**PRESIDING DISTRICT JUDGE**

Order Declaring Steven B. Aubrey a Vexatious Litigant & Prefiling Order

Page 2 of 2

Moye MTD 44

585

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **STEVEN BENTON AUBREY, and** | § | |
| **BRIAN EDWARD VODICKA** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 0:18-CV-61117** |
| | § | |
| **D MAGAZINE PARTNERS et al.,** | § | |
| *Defendants*. | § | |

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL
JURISDICTION OVER TEXAS DISTRICT COURT JUDGE ERIC VAUGHN MOYÉ
AND FAILURE TO STATE A CLAIM**

---

# EXHIBIT 3

Order Dismissing Petition's Claim Against Judge Moyé
March 1, 2017

CAUSE NO. DC-16-12693

| | | |
|---|---|---|
| BRIAN E. VODICKA and<br>STEVEN B. AUBREY,<br>    Plaintiffs,<br><br>v.<br><br>A.H. BELO CORPORATION,<br>ERIC VAUGHN MOYÉ, individually,<br>STEPHEN C. SCHOETTMER, and<br>DEBRA G. TOBOLOWSKY,<br>Independent Executor of the Estate of<br>IRA E. TOBOLOWSKY,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br>116th JUDICIAL DISTRICT<br><br><br><br><br>DALLAS COUNTY, TEXAS |

### ORDER DISMISSING PETITION'S CLAIM AGAINSTDISTRICT JUDGE ERIC V. MOYÉ AND AWARDING SANCTIONS IN THE AMOUNT OF $1000.00.

Before this Court this 1st day of March 2017, came to be considered defendant District Judge Eric V. Moyé's Motion to Dismiss the Petition filed against him in the above styled cause and Motion for Sanctions.   Judge Moyé moves to dismiss this suit pursuant to Rule 91a, Tex. R. Civ. Proc. The Court has reviewed the Petition filed against Judge Moyé in this case, the Motion to Dismiss, applicable authority, permitted Petitioners a reasonable opportunity to respond and considered all submissions and arguments. The Court finds that the allegations in Petition, as to Judge Moyé do not set forth sufficient facts to defeat a judge's judicial immunity.  The Court finds that all claims made against Judge Moyé allege conduct taken within his jurisdiction and judicial capacity and barred judicial immunity. The Court concludes Defendant's Motion should be and is GRANTED.   The Court further concludes that sanctions should be awarded against Plaintiffs in the amount of $1,000.00.  The Court finds that the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of Tex. R. Civ. Proc., Rule 13.

Accordingly, the Court GRANTS Judge Moyé's Motion to Dismiss the Petition, enters a take nothing DISMISSAL judgment against Plaintiffs in favor of Judge District Judge Eric V. Moyé and assesses all costs of suit against Plaintiffs.  Sanctions in the amount of $1000.00 is assessed against Plaintiffs jointly and severally and orders that this sum be paid to:

Texas Attorney General
P.O. Box 12548
Austin, TX 78711-2548

This suit is DISMISSED WITH PREJUDICE. It is so ORDERED this 1st day of March 2017.

_____
DON COSBY
PRESIDING JUDGE
67TH JUDICIAL DISTRICT
SITTING BY ASSIGNMENT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **STEVEN BENTON AUBREY, and** | § | |
| **BRIAN EDWARD VODICKA** | § | |
| *Plaintiffs*, | § | |
| **v.** | § | **CIVIL ACTION NO. 0:18-CV-61117** |
| | § | |
| **D MAGAZINE PARTNERS et al.,** | § | |
| *Defendants*. | § | |

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL**
**JURISDICTION OVER TEXAS DISTRICT COURT JUDGE ERIC VAUGHN MOYÉ**
**AND FAILURE TO STATE A CLAIM**

---

# Exhibit 4

Final Judgment
March 7, 2017

CAUSE NO. DC-16-12693

| | | |
|---|---|---|
| **BRIAN E. VODICKA and**<br>**STEVEN AUBREY,**<br>*Plaintiffs*<br><br>v.<br><br>**A.H. BELO CORPORATION,**<br>**ERIC VAUGHN MOYÉ, Individually,**<br>**STEPHEN C. SCHOETTMER, and**<br>**DEBRA G. TOBOLOWSKY, Independent**<br>Executor of the Estate of Ira E. Tobolowsky,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **IN THE DISTRICT COURT OF**<br><br><br>**116TH JUDICIAL DISTRICT**<br><br><br><br>**DALLAS COUNTY, TEXAS** |

## FINAL JUDGMENT

On March 1, 2017, the Court heard Judge Eric V. Moyé's ("Judge Moyé") Motion to Dismiss the Petition and Motion for Sanctions and A.H. Belo Corporation's ("Belo") Motion to Dismiss Under Chapter 27 of the Texas Civil Practice & Remedies Code (together, the "Motions"). At the hearing, the Court recognized that Plaintiffs' Brian E. Vodicka and Steven B. Aubrey ("Plaintiffs") filed a Notice of Nonsuit ("Nonsuit"), pursuant to which they notified the Court and the Parties that "they are taking a nonsuit of their entire case" against Belo, Judge Moyé, Robert L. Ermatinger, Jr., Scott Robert Sayers, Stephen Charles Schoettmer, and Debra G. Tobolowsky. The Court also takes judicial notice that Plaintiffs did not effect service of citation and petition in this matter as to Defendant Stephen C. Schoetmer.

The Court, having considered the Motions, Nonsuit, other pleadings, filings, and evidence, to the extent timely submitted, and hearing the arguments of counsel, finds that the Motions should be, and hereby are, GRANTED in their entirety.

FINAL JUDGMENT
17911946V.3

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all causes of action asserted by Plaintiffs against Belo and Judge Moyé herein are hereby DISMISSED with prejudice such that Plaintiffs shall take nothing from Belo or Judge Moyé in this action.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all causes of action asserted by Plaintiffs against Robert L. Ermatinger, Jr., Scott Robert Sayers, Stephen Charles Schoettmer, and Debra G. Tobolowsky are hereby DISMISSED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Belo is entitled to recover its attorneys' fees from Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code in the amount of **$93,623.00**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Belo is entitled to recover its attorneys' fees from Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code, if this case is appealed to the Court of Appeals, in the amount of **$45,000.00**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Belo is entitled to recover its attorneys' fees from Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code if Plaintiffs file a petition for review that is not granted by the Texas Supreme Court in the amount of **$25,000.00**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Belo is entitled to recover its attorneys' fees from Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, pursuant to Chapter 27 of the Texas Civil Practice & Remedies Code if Plaintiffs file a petition for review that is granted but ultimately unsuccessful in the Texas Supreme Court in the amount of **$25,000.00**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Belo is entitled to have and recover from Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, expenses in the amount of **$925.12**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, shall pay to Belo sanctions in the amount of **$25,000.00**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, shall pay to Belo all monetary amounts awarded herein not later than March 31, 2017, as provided in the order signed March 1, 2017.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally, shall pay to Judge Moyé sanctions in the amount of **$1,000.00** pursuant to Tex. R. Civ. Proc. 13.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court's Order Declaring Steven B. Aubrey a Vexatious Litigant & Prefiling Order, dated February 2, 2017, in its entirety, is included herein by reference and shall be considered a part of this Final Judgment, remaining in full force and effect indefinitely.

All court costs shall be taxed against Plaintiffs Brian E. Vodicka and Steven Aubrey, jointly and severally.

All relief not expressly granted is denied.  This judgment is final and disposes of all parties and all claims and causes of action asserted in this matter and is appealable.

SIGNED THIS _7__ day of March, 2017.

_____
JUDGE PRESIDING

**FINAL JUDGMENT**
17911946V.3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **STEVEN BENTON AUBREY, and** | § | |
| **BRIAN EDWARD VODICKA** | § | |
| *Plaintiffs*, | § | |
| **v.** | § | **CIVIL ACTION NO. 0:18-CV-61117** |
| | § | |
| **D MAGAZINE PARTNERS et al.,** | § | |
| *Defendants*. | § | |

---

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL**
**JURISDICTION OVER TEXAS DISTRICT COURT JUDGE ERIC VAUGHN MOYÉ**
**AND FAILURE TO STATE A CLAIM**

---

# EXHIBIT 5

*Brian E. Vodicka v. Eric Vaughn Moyé*
Case No. 05-17-00728 (Tex. App. -Dallas, July 5, 2018)
affirming dismissal of libel suit against Judge Moyé

AFFIRM; and Opinion Filed July 5, 2018.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00728-CV

### BRIAN E. VODICKA, Appellant

### V.

### A.H. BELO CORPORATION AND
### ERIC VAUGHN MOYÉ, INDIVIDUALLY, Appellees

### On Appeal from the 116th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-16-12693

## MEMORANDUM OPINION
Before Justices Lang-Miers, Myers, and Boatright
Opinion by Justice Lang-Miers

This appeal arises from a lawsuit claiming defamation filed by appellant Brian E. Vodicka and Steven B. Aubrey.[1] In four issues appellant Vodicka argues that the trial court erred in granting appellee A.H. Belo Corporation's motion to dismiss with prejudice under the Texas Citizen Participation Act, granting appellee Judge Eric V. Moyé's motion to dismiss with prejudice under rule of civil procedure 91a, denying Vodicka's motion to recuse the trial court judge, and declaring that Aubrey was a vexatious litigant. We affirm.

---

[1] Aubrey is not before this Court on appeal.

**BACKGROUND**

Appellant Vodicka and Aubrey filed a lawsuit seeking damages for claimed defamation against Belo and Judge Moyé and other defendants.  Vodicka and Aubrey based their claims on articles published in the *Dallas Morning News* and statements made during a court hearing by appellee Judge Moyé relating to the alleged arson murder of Dallas attorney Ira Tobolowsky.

Judge Moyé filed a motion to dismiss under rule of civil procedure 91a.  *See* TEX. R. CIV. P. 91a.  Belo filed a motion to dismiss under the Texas Citizen Participation Act (TCPA) codified at chapter 27 of the civil practice and remedies code.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (West 2015).  Aubrey—but not Vodicka—filed a response to Belo's motion to dismiss under the TCPA.  Judge Moyé also filed a motion asking the court to declare Aubrey a vexatious litigant under section 11.054 of the civil practice and remedies code, in which Belo also joined. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.054 (West 2002).  Vodicka and Aubrey subsequently filed a notice of nonsuit "of their entire case against" Belo, Judge Moyé, and other defendants that was "effective immediately" and "without prejudice to refiling."  The trial court then issued an order declaring that Aubrey was a vexatious litigant.  Vodicka filed a motion to recuse the trial court judge, which was denied.[2]

After a hearing, the court granted Judge Moyé's motion to dismiss with prejudice under rule 91a.  The court found "that the allegations in [the] Petition, as to Judge Moyé do not set forth sufficient facts to defeat a judge's judicial immunity" and "that all claims made against Judge Moy[é] allege conduct taken within his jurisdiction and judicial capacity and [are] barred [by] judicial immunity."  The court also concluded that "the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of" rule of civil procedure 13 and awarded sanctions of $1,000 against Vodicka and Aubrey jointly and severally.

---

[2] Aubrey also filed a separate motion to disqualify or recuse the trial court judge, which was also denied.

The court also granted Belo's motion to dismiss with prejudice under the TCPA and awarded Belo attorney's fees, expenses, and a sanction against Vodicka and Aubrey jointly and severally.

The court subsequently issued a final judgment in favor of Belo and Judge Moyé that stated that the trial court "recognized" that Vodicka and Aubrey filed a notice of nonsuit "pursuant to which they notified the Court and the Parties that 'they are taking a nonsuit of their entire case' against Belo, Judge Moy[é]," and other defendants. In the final judgment, the court found that Judge Moyé's motion to dismiss under rule 91a and motion for sanctions under rule 13 and Belo's motion to dismiss under the TCPA should be granted and that "all causes of action asserted by" Vodicka and Aubrey against Belo and Judge Moyé were dismissed with prejudice so that Vodicka and Aubrey "shall take nothing from Belo and [Judge] Moyé in this action."[3]

The final judgment awarded Belo attorney's fees, expenses, and a $25,000 sanction against Vodicka and Aubrey, jointly and severally. The final judgment also awarded Judge Moyé $1,000 in sanctions against Vodicka and Aubrey, jointly and severally, pursuant to rule of civil procedure 13. In addition, the final judgment ordered that the trial court's "Order Declaring Steven B. Aubrey a Vexatious Litigant" "in its entirety, is included herein by reference and shall be considered a part of this Final Judgment, remaining in full force and effect indefinitely." Vodicka—but not Aubrey—filed a notice of appeal.

## BELO'S MOTION TO DISMISS

In his first issue, Vodicka argues that the trial court erred in granting Belo's motion to dismiss with prejudice under the Texas Citizen Participation Act. A TCPA motion to dismiss seeks dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). If the trial court

---

[3] The final judgment also ordered that all causes of action asserted against other defendants were also dismissed.

dismisses an action under the TCPA, the statute states that the court shall award to the movant reasonable attorney's fees, court costs, other expenses, and sanctions.  *Id.* § 27.009(a).

Vodicka filed a nonsuit of his "entire case" against Belo.  Generally, a plaintiff may dismiss a case or take a nonsuit at any time before it introduces all of its evidence, excluding rebuttal evidence.  Tex. R. Civ. P. 162.  But dismissal by nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief[.]"  *Id.*  "And a defendant's TCPA motion to dismiss is a claim for affirmative relief."  *Duchouquette v. Prestigious Pets, LLC*, No. 05-16-01163, 2017 WL 5109341, at *3 (Tex. App.—Dallas Nov. 6, 2017, no pet.) (mem. op.); *see Rauhauser v. McGibney*, 508 S.W.3d 377, 382 (Tex. App.—Fort Worth 2014, no pet.) (per curiam), *overruled on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting that motion to dismiss under the TCPA may afford more relief than a nonsuit, including dismissal with prejudice, sanctions, and attorney's fees).

In his third amended brief, Vodicka argues (1) that the trial court erred in granting Belo's motion to dismiss under the TCPA because Belo relied on "**unlawfully and illegally obtained sealed records to support its publications defaming**" Vodicka and Aubrey and (2) that the evidence that Vodicka presented constituted a prima facie case for the elements of his claim.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) (providing a "court may not dismiss a legal action under" the TCPA "if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question").

### Sealed Documents

In his third amended brief, Vodicka argues that Belo relied upon unlawfully and illegally obtained sealed court documents to "support its defamatory publications" and "Belo's right to free speech does not extend to use of illegally obtained information."  Belo denies the allegations. Importantly, however, only Aubrey—and not Vodicka—filed a response to Belo's TCPA motion

to dismiss. And although Vodicka states that "Belo has the audacity to tell this Court that Vodicka never responded to its motion to dismiss[,]" Vodicka then cites to the record of Aubrey's response to Belo's motion to dismiss. The "Sealing Orders" and arguments concerning the sealed documents do not appear in the record before this Court except as submitted by Aubrey, a non-party to this appeal, in his response and attachments to his response. As a result, Vodicka did not present to the trial court this complaint regarding Belo unlawfully using sealed records as evidence supporting its motion to dismiss and this complaint is not before us on appeal.[4] *See Norris v. Tenet Houston Health Sys.*, No. 14-04-01029-CV, 2006 WL 1459958, at *8 n.14 (Tex. App.—Houston [14th Dist.] May 30, 2006, no pet.) (mem. op.) (party waived argument on appeal that trial court erred in disregarding her response to motion to dismiss where she did not identify the location of her response in the record or provide argument or evidence of the contents of her response and record did not include response to motion to dismiss).

### Prima Facie Case

We review de novo the trial court's determination concerning whether Vodicka met his burden to present clear and specific evidence to establish a prima facie case for each element of his claim. *See Watson v. Hardman*, 497 S.W.3d 601, 605 (Tex. App—Dallas 2016, no pet.). To recover for defamation, a plaintiff must prove that the defendant (1) published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) while acting with negligence, if the plaintiff was a private individual, and (4) which caused damages, unless the defamatory statements were defamatory per se. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *Campbell v. Clark*, 471 S.W.3d 615, 624 (Tex. App—Dallas 2015, no pet.).

---

[4] Likewise, Vodicka's discussion of other arguments that Aubrey stated in his response to Belo's motion to dismiss in his brief are not before us on appeal.

Among other arguments, Belo contends that Vodicka did not establish the element that Belo published a false statement of fact. "Truth is a defense to all defamation suits" for "there is no defamation liability if the gist" of the publication "is substantially true." *Neely v. Wilson*, 418 S.W.3d 52, 56 (Tex. 2013). "[T]he substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). "We determine a" publication's "gist or meaning by examining how a person of ordinary intelligence would view it." *Neely*, 418 S.W.3d at 64; *see McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990) ("The test used in deciding whether the broadcast is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been."). In addition, a publication "can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all of the story's individual statements considered in isolation were literally true or non-defamatory." *Neely*, 418 S.W.3d at 64 (quoting *Turner*, 38 S.W.3d at 114). "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Neely*, 418 S.W.3d at 62.

Vodicka argues both that Belo "ma[de] false statements" and that Belo "juxtaposed statements that implicated" Vodicka and Aubrey in "Tobolowsky's death."[5] Vodicka states that "[n]either Vodicka nor Aubrey have ever been convicted, indicted, arrested, charged with, or even named as suspects in, the ongoing homicide investigation of Tobolowsky." He argues that the gist "of Belo's publications without question gave a 'person of reasonable intelligence' the impression that" Vodicka and Aubrey "were connected to the murder of Tobolowsky" and states that "Belo

---

[5] Vodicka interweaves his arguments that the statements published by Belo were false with his argument that the statements were defamatory. Because our disposition concerns whether Vodicka presented prima facie proof of the defamation element that the statements were false, it is not necessary for us to discuss Vodicka's arguments that the statements were defamatory. *See Bentley v. Bunton*, 94 S.W.3d 561, 587 (Tex. 2002) ("That a statement is defamatory—that is, injurious to reputation—does not mean that it is false, and vice versa.").

convinced its readers that" Vodicka and Aubrey "were criminals guilty of capital murder."

In his brief, Vodicka quotes excerpts from five *Dallas Morning News* articles from May 13, May 15, May 18, and May 27, 2016. [6]  Two of these articles are not in the record and, as a result, are not before us on appeal. [7]  Of the statements that he identifies from the articles that are

---

[6] Vodicka quotes three statements from a May 15, 2016 article, *Dallas judge given extra security after attorney's death in suspicious fire*:

- Sheriff's officers were patrolling at Eric V. Moyé's home because he was presiding over a high-profile civil case that prompted concerns for his safety, sheriff's spokeswoman Melinda Urbina said.  [Judge] Moyé does not preside over criminal cases.

- Investigators are looking into whether any of his clients may have wanted revenge.

- Members of [Judge] Moyé's re-election campaign said the judge warned officials of a possible connection between Tobolowsky's death and litigation being handled by [Judge] Moyé's court.

Vodicka also identifies statements from an article published May 18, 2016, *Judge steps down from civil case after Dallas lawyer's suspicious death*:

- A district judge on Wednesday removed himself from overseeing a civil suit involving a Dallas lawyer found dead last week in a suspicious house fire.

- Aubrey and his partner, Brian Vodicka, were both named in the lawsuit filed by Tobolowsky.  Vodicka, a lawyer, and Aubrey were representing themselves in the case.

- Judge Eric V. Moyé had presided over a lawsuit between attorney Ira Tobolowsky and Steven Aubrey, an Austin resident.  Tobolowsky was found dead[.]

- [Judge] Moyé said in court Wednesday that he was voluntarily removing himself from the case because of Aubrey and "his implications in the death of Mr. Tobolowsky."

- During this time, he "pursued a hostile course of action to harass, intimidate and embarrass them," according to a defamation lawsuit Tobolowsky filed against Aubrey and Vodicka.  Both men could not be reached for comment this week.

- The lawsuit claims Aubrey openly called his fight with his brother and mother "jihad."

- . . . the family has not decided whether to go forward with the lawsuit against Aubrey and Vodicka.

Vodicka quotes statements from a May 27, 2016 article, *Prominent Dallas lawyer's nasty lawsuit gets attention in his death*:

- Last year, Tobolowsky filed a defamation suit in Dallas County against Steven Aubrey and his partner, Brian Vodicka.  The men could not be reached for comment by phone or at their home.

- Dallas police detectives and a marked crime scene vehicle were at the apartment where Vodicka lives on Glen America Drive on Wednesday morning.

- Vodicka and his brother, Gary, made headlines during a four-year legal battle with Southern Methodist University.  Gary Vodicka sued SMU when the school bought condo units to make way for the George W. Bush Presidential Center.

- The brothers were involved in their own legal fight then over who owned the condos in question.  Gary Vodicka and the school eventually reached a settlement.

Vodicka also argues that this "one article" published on May 27 referenced Aubrey twenty-six times and Vodicka fifteen times, totaling forty-one times "in one article about the arson murder of Tobolowsky."

[7] Vodicka points to statements in two articles published on May 13, 2016 and May 27, 2016 that are not in the record.  Vodicka attaches these articles to his brief.  "Documents attached to a brief that are not formally included in the record are not properly before the court of appeals and may not be considered by this Court."  *Petterson v. JGMS Invs. LLC*, No. 05-15-01286-CV, 2016 WL 6124134, at *2 (Tex. App.—Dallas Oct. 20, 2016, no pet.) (mem. op.).

in the record, he does not indicate which of these statements he contends are false or that he presented a prima facie case concerning their falsity.

In addition, Vodicka argues that the statement in one article that the defamation lawsuit was "an extraordinarily 'nasty lawsuit'" and the statement in another article that it was "high-profile" were not accurate. He notes that Tobolowsky's brother-in-law stated that "we might have known there was a big case going on, but I didn't know much of the details[.]" But whether a lawsuit was "nasty" or "high-profile" is "not verifiable as false" and, as a result, cannot form the basis of a defamation claim. *See Neely*, 418 S.W.3d at 62; *see also Dallas Morning News, Inc. v. Tatum*, No. 16-0098, 2018 WL 2182625, at *16 (Tex. May 11, 2018) ("[S]tatements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions.").[8]

In his reply brief, Vodicka identifies fourteen statements that "are false." Nine of these are statements from articles in the record.[9]

- Judge "Moyé said in court Wednesday that he was voluntarily removing himself from the case because of Aubrey and "his implications in the death of Mr. Tobolowsky." The record reflects that Judge Moyé made this statement.

- "Tobolowsky's lawyer in the case, Steve Schoettmer, said Wednesday that [Judge] Moyé was appropriately concerned for his safety." Vodicka does not argue that Schoettmer did not make this statement, but rather that Schoettmer "had absolutely no basis to make that statement."

- "The lawsuit claims Aubrey openly called his fight with his brother and mother 'jihad'." The record reflects that this statement accurately reflects what the lawsuit claimed.

- "Dallas police detectives and a marked crime scene vehicle were at the apartment where Vodicka lives on Glen America Drive on Wednesday morning. But it was not clear whether investigators spoke with Aubrey or Vodicka." Vodicka states "[t]his was a true statement."

---

[8] Vodicka also states that one year after Tobolowsky's death, *D Magazine* revealed that the authorities had a list of "persons of interest" that included "many names" but that "Belo exclusively and selectively chose" Vodicka and Aubrey "in prosecuting their 'trial by media.'" But the *D Magazine* article that Vodicka cites is not in the record before us on appeal. *See Patterson*, 2016 WL 6124134, at *2 (stating documents attached to a brief that are not formally included in the record are not properly before the court of appeals and cannot be considered by the court).

[9] Three of the statements are comments posted by readers to the articles, discussed below, and one is from an article not in the record.

- "Police officials would not comment on whether detectives have interviewed either man in connection with Tobolowsky's death." Vodicka argues conclusively that "[p]olice never once said the names of Plaintiffs or anybody else, in connection with the murder of Mr. Tobolowsky." He does not provide any evidence supporting his argument.

- "He said that Tobolowsky 'was universally loved, and this was the only individual that I'm aware of that had any excessive ill will towards him,' Schoettmer said this week, referring to Aubrey." Vodicka argues in his brief—without further argument or evidence—that "Tobolowsky was NOT universally loved."

- "In Tobolowsky's lawsuit against Aubrey and Vodicka, he alleges that Aubrey referred to his fight with his family as 'jihad' and later used the same term to describe his battle with Tobolowsky." On appeal, Vodicka argues that "Aubrey never referred to his fight as anything" and that Schoettmer "made up this ridiculous assertion." The record reflects that this statement accurately states allegations in Tobolowsky's lawsuit.

- "Tobolowsky's lawsuit argues that Aubrey used 'intentional lies, fraud, defamatory statements, and 'dirty tricks'" to get the lawyer to stop representing Aubrey's mother. Vodicka argues that Tobolowsky never represented his mother, but instead represented his brother. The record reflects that this statement accurately states arguments in Tobolowsky's lawsuit.

- "In court filings in the defamation case, Aubrey and Vodicka fired back at Tobolowsky, comparing him to 'ISIS radicals.'" "Like an ISIS butcher, Tobolowsky butchers the truth causing mayhem amongst the halls of justice[.]" These court filings are not in the record, and Vodicka does not present any argument that this statement does not accurately reflect the contents of court documents.

We conclude that Vodicka has not established by clear and specific evidence that any of these statements are false.

Vodicka also argues that the "gist" of the articles was false because the "publications without question gave a 'person of reasonable intelligence' the impression that" Vodicka and Aubrey "were connected to the murder of Tobolowsky" and "**The 'Gist' is Plaintiffs are murderers[**.]" *See Dallas Morning News, Inc.*, 2018 WL 2182625, at *14 ("In a gist case, the court must 'construe the publication "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.""" (quoting *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017))). Vodicka contends that "Belo cannot continually publish articles that feature Plaintiffs and the Tobolowsky murder and claim the article

is not defamatory because there is not an untrue statement." He contends that "Belo falsely convinced it [sic] general public readers that" Vodicka and Aubrey "were the only persons of interest, exhibiting Belo's malice."

We disagree. Construing the articles "as a whole in light of the surrounding circumstances" and "based upon how a person of ordinary intelligence would perceive it," *id.*, the gist of the articles was that Ira Tobolowsky died under suspicious circumstances, law enforcement were investigating his death, Vodicka and Aubrey were being investigated but that they had not been charged with a crime and the investigation was broad-ranging, and Tobolowsky, Aubrey, and Vodicka had made various allegations against each other in filings in court cases during the years leading up to Tobolowsky's death. Of the articles that Vodicka relies upon and that are in the record, only the May 18, 2016 and May 27, 2016 articles mention Vodicka and Aubrey.

In the May 18, 2016 article, *Judge steps down from civil case after Dallas lawyer's suspicious death*, the article discussed Judge Moyé recusing himself from the case between Tobolowsky and Aubrey and his statement that he did so because of "Aubrey and 'his implications in the death of Mr. Tobolowsky.'" It also discussed Tobolowsky's death and a Dallas Fire-Rescue official's comments that the fire involved in Tobolowsky's death was "'suspicious in nature' but" they had "not determined arson was the cause[,]" that the Dallas County medical examiner's office had "not ruled on Tobolowsky's cause of death[,]" and that police officials had "not said whether it is being investigated as a homicide." The article discussed the lawsuit filed by Tobolowsky against Aubrey and Vodicka, the previous lawsuit that Tobolowsky filed as attorney for Aubrey's brother and mother against Aubrey, and related statements in court filings. It also stated that a sheriff's department spokeswoman "did not say which case prompted" security concerns and extra security measures that Judge Moyé received and stated that Tobolowky's attorney Schoettmer "would not comment on whether he believed Aubrey was a threat and did not say whether he

thought the man was involved in Tobolowsky's death."  The article also stated that "Aubrey has

not been accused of a crime" and that "[b]oth men could not be reached for comment this week."

The May 27, 2016 article that is in the record, *Prominent Dallas lawyer's nasty lawsuit*

*gets attention in his death*, discussed the "grief and unanswered questions" surrounding

Tobolowsky's death and stated:

> Authorities have yet to rule on either the cause of Tobolowsky's death or
> the fire, other than to label it as "suspicious."  Despite the lack of a medical
> examiner's ruling, Dallas police have assigned a homicide detective to the case,
> though no suspects have been named.
>
> "Our investigation is wide-ranging in regards to whether or not anybody's
> a suspect," said Dallas [P]olice Assistant Chief Randy Blankenbaker, who oversees
> investigations.  Tobolowsky has "been a pillar in the legal community for a long
> time, so there's a broad spectrum of investigative follow-up."
>
> Many of those close to Tobolowsky can't help but wonder if the diminutive
> lawyer's legal cases had anything to do with his gruesome demise, and some of his
> friends have publicly said they believe he was killed.  But the Tobolowsky family
> hasn't gone that far yet.  They just want answers.

The article discussed Tobolowsky as an accomplished attorney, and then discussed the defamation

suit that he filed against Aubrey and Vodicka and stated "[t]he men could not be reached for

comment by phone or at their home."  The article also stated, "Neither Aubrey nor Vodicka, a

lawyer, has been accused of a crime."  It then stated that police detectives and a crime scene vehicle

were at Vodicka's apartment and that it was unclear if investigators spoke with Aubrey or Vodicka

or whether police had interviewed them.  The article then discussed the court cases and statements

in filings in the cases involving Aubrey, Vodicka, and Tobolowsky, and prior legal fights involving

Vodicka and his relatives.  The article also stated that Tobolowsky's friend and attorney

Schoettmer said "that Tobolowsky 'was universally loved, and this was the only individual that

I'm aware of that had any excessive ill will towards him,' . . . referring to Aubrey."  It also stated

that Judge Moyé had recused himself and had referred to "Aubrey's implication in the death of

Mr. Tobolowsky."

In addition, Vodicka quotes numerous comments that readers posted to the five articles that he relies upon "as an ideal sampling of persons with reasonable intelligence as proof Belo achieved its desired purpose, convincing its readers" that Vodicka and Aubrey "were guilty of capital murder." Vodicka does not state any basis for his claim that the readers who posted comments represented "an ideal sampling of persons with reasonable intelligence[.]" In addition, the comments often did not concern the contents of the articles but instead provided additional and separate information. As a result, we conclude that Vodicka has not established that the comments indicate how "a person of ordinary intelligence would view" the alleged defamatory statements in the articles. *See Neely*, 418 S.W.3d at 64.[10]

We conclude that the "gist" of the articles—which concern Tobolowsky's death, investigations that were proceeding concerning his death, court cases involving Tobolowsky, Aubrey, and Vodicka and the tenor of those cases, and Judge Moyé's recusal and statements at a hearing—is not false. Although the articles discussed Aubrey and Vodicka's contentious legal history with Tobolowsky and indicate that police had investigated them after (but not necessarily in connection with) Tobolowsky's death, the articles stated that neither had been accused of a crime, and included the police statement that the "investigation is wide-ranging in regards to whether or not anybody's a suspect" and stated that "[a]uthorities have yet to rule on either the cause of Tobolowsky's death or the fire, other than to label it as 'suspicious.'" Construing the articles as a whole, we disagree with Vodicka's argument that the gist of the articles is that Vodicka and Aubrey are murderers and disagree that Belo "falsely convinced it[s] general public readers that" Aubrey and Vodicka "were the only persons of interest[.]"[11]

---

[10] In his reply brief, Vodicka also argues that three of the comments are "false." He does not cite to any authority for the proposition that Belo should be held liable for the comments that third parties posted to its online articles.

[11] Vodicka alleges that "Belo spoliated all of the blog comments associated with the articles." Because he includes no argument or citations to authority, Vodicka has presented nothing for us to review concerning his spoliation contention. *See* TEX. R. APP. P. 38.1(i). In addition, in his reply brief, Vodicka first raises constitutional arguments and arguments regarding "public concern" under the TCPA. "[W]e do not consider arguments raised for the first time in a reply brief." *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 803 n.5 (Tex. App.—Dallas 2011, no pet.).

We conclude that Vodicka did not establish by clear and specific evidence a prima facie case for the essential element of his defamation claim that Belo published a false statement of fact. As a result, we conclude that the trial court did not err in granting Belo's motion to dismiss under the TCPA.  We overrule Vodicka's first issue.

### JUDGE MOYÉ'S MOTION TO DISMISS

In his second issue, Vodicka argues that the trial court erred in dismissing with prejudice claims against Judge Moyé under rule 91a of the rules of civil procedure.  *See* TEX. R. CIV. P. 91a. Vodicka and Aubrey's first amended petition states a claim of defamation against Judge Moyé:

> [Judge] Moy[é] publically stated Plaintiff Aubrey's name and unambiguously charged Plaintiff Aubrey with the murder.  Dallas Morning News, and many television stations, published [Judge] Moy[é]'s shocking accusation:
>
> **"[Judge] Moyé stated in court Wednesday that he was voluntarily removing himself from the case because of <u>Aubrey and "his implications in the death of Mr. Tobolowsky."</u>** (Emphasis added.)
>
> These are the words the media held onto and published and republished for months to destroy Plaintiffs' reputations.  As of the date this amended petition is filed, no legal authority, news organization or even another person, has made such a statement or claim, as did [Judge] Moy[é].

Judge Moyé made the statements at issue during a hearing in this case on May 18, 2016.  Judge Moyé stated:

> The record will reflect that I've conferred with Mary Murphy, who is the Regional Presiding Judge in this matter.
>
> There have been three Motions for Recusal which have been filed in this case.  I think in two of them this Court has declined to recuse itself and has had that declination affirmed by the Presiding Judge.
>
> I think at this point with the allegations which have been made related to Mr. Aubrey and his implication in the death of Mr. Tobolowsky and related issues, I don't think that it is unreasonable for a judge other than myself to hear this case. And so I've conferred with Judge Murphy, and we have agreed that a voluntary recusal is appropriate at this time.

The first amended petition recognizes that the allegedly defamatory statements concerned Aubrey: Judge "Moy[é] publically stated Plaintiff Aubrey's name and unambiguously charged Plaintiff Aubrey with the murder."  Vodicka, who filed this appeal, does not argue that Judge Moyé defamed him personally but he maintains that he had standing to contest the motion to dismiss the defamation claim.  Standing is a component of subject-matter jurisdiction.  *Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 497 (Tex. App.—Dallas 2014, no pet.).  "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Id.*  "A plaintiff must affirmatively show, through pleadings and other evidence pertinent to the jurisdictional inquiry, a distinct interest in the asserted conflict, such that the defendant's actions have caused the plaintiff some particular injury." *Id.*

Vodicka argues that he has standing to bring this claim because he was not a third party, but a co-party and Aubrey's spouse.  As authority, he cites *Obergefell v. Hodges*, 135 S.Ct. 2584, 2604 (2015).  *Obergefell* held that "couples of the same-sex may not be deprived" of the fundamental constitutional right to marry, *id.*, but *Obergefell* did not concern standing of a spouse in claims for injuries suffered by their spouse.  And Vodicka does not provide any authority for his contention that a "punitive court designation of a party aligned in the same interest prejudices the other parties."  Rather, a "defamatory statement must be directed at the plaintiff as an ascertainable person to be actionable." *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Newspapers Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960)).  "A family member does not have a cause of action based on the defamation of another family member." *Id.* (citing *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 250 (Tex. 1942)); *see id.* at 14 (holding that wife and daughter of one plaintiff did not have standing to bring defamation claims when defamatory statements concerned the plaintiff).

Vodicka also argues that "the Trial Court's Judgment held Vodicka 'jointly' liable for $1,000 Sanctions, based, in part, on Plaintiffs' challenge of the 'vexatious' claim" and Judge "Moyé cannot now argue that Vodicka was not adversely prejudiced." The trial court's order granting Judge Moyé's motion to dismiss under rule 91a and awarding sanctions under rule 13 stated, "The Court further concludes that sanctions should be awarded against Plaintiffs in the amount of $1,000. The Court finds that the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of" rule of civil procedure 13. The court assessed the $1,000 sanction jointly and severally against Aubrey and Vodicka. But a sanction under rule 13 does not implicate standing, but rather results when a court concludes that an attorney or party violated rule 13 by signing a document that was "groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. The court can sanction "the person who signed it, a represented party, or both." *Id.* Both Aubrey and Vodicka signed their petition. We conclude that the $1,000 sanction resulted from their signing a petition that the court concluded was "brought in bad faith, is groundless and brought for the purpose of harassment" and did not implicate standing.

Vodicka also argues that he "brought his own claims for his own injuries[,]" and he refers to Belo's publication of his name, apartment, and personal history in an article. But Vodicka does not describe or provide legal authority for his contention that his own claims for separate injuries give him standing in a claim that statements defamed Aubrey. He also references the release of statements by Judge Moyé's office to NBC's The Today Show and by Judge Moyé's re-election campaign, some of which he claims Belo reported. He argues that "[t]hese statements directly involved Vodicka, who is not some random person seeking to piggy-back off of a tort claim for personal injury for loss of consortium, derived from somebody else." Vodicka contends that he "has suffered as a direct result from statements [Judge] Moy[é] surreptitiously released to the

media."  But Vodicka does not explain how his claim that these "statements directly involved" him establishes a basis for his standing in the claim that Judge Moyé defamed Aubrey.

Vodicka also states the additional arguments that "loss of consortium concerns the intangible elements of the union[,]" "[i]f someone publically accused [Judge] Moy[é] of murder, certainly his wife would suffer" and he "sought general damages, independent from Aubrey, specifically for mental anguish."  But he does not provide authority or argument to establish how these arguments provide a basis for his standing in the defamation claim against Judge Moyé.

We conclude that Vodicka lacks standing to appeal the grant of Judge Moyé's motion to dismiss under rule 91a of the rules of civil procedure.[12]  We resolve Vodicka's second issue against him.

**MOTION TO RECUSE**

In his third issue, Vodicka argues that the trial court erred in denying his motion to recuse the trial court judge.  Vodicka filed a motion to recuse "complaining of Judge Donald Cosby pursuant to Rule 18 of the Texas Rules of Civil Procedure[.]"  Judge Stephen B. Ables[13] issued an order denying Vodicka's motion to recuse, finding "that the Motion does not comply with Rule 18a."  The order stated:

> The undersigned finds that each matter of noncompliance set out below is independently sufficient for Summary Denial for Noncompliance.  The nature of the noncompliance is as follows:
>
> 1. The Motion does not state with detail and particularity facts that if proven would be sufficient to justify recusal.  See Rule 18a (a) (4); and
> 2. The Motion is based solely on the Judge's rulings in the case.  See Rule 18a (a) (3).
> 3. The Motion is not verified as required by Rule 18(a).

---

[12] Because of our conclusion that Vodicka lacks standing, it is not necessary for us to address the arguments of Vodicka and Judge Moyé concerning judicial immunity.

[13] Judge Ables was assigned to hear the motion by the Chief Justice of the Supreme Court of Texas.  *See* Tex. R. Civ. P. 18a(f), (g), (i).

We review a denial of a motion to recuse for abuse of discretion.  TEX. R. CIV. P. 18a(j) (an order denying a motion to recuse is reviewable for abuse of discretion on appeal from final judgment); *Rammah v. Abdeljaber*, 235 S.W.3d 269, 274 (Tex. App.—Dallas 2007, no pet.).  A court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles.  *Rammah*, 235 S.W.3d at 274.

In order to recuse a judge, a party must comply with the procedural requirements of rule of civil procedure 18a.  *Id.*  That rule requires that the motion to recuse be verified, must not be based solely on the judge's rulings in the case, and must state with detail and particularity facts that, if proven, would be sufficient to justify recusal.  TEX. R. CIV. P. 18a(a); *see Rammah*, 235 S.W.3d at 274.  "Texas courts have consistently held that the procedural requirements of rule 18a are mandatory."  *Rammah*, 235 S.W.3d at 274; *see Carson v. Serrano*, 96 S.W.3d 697, 698 (Tex. App.—Texarkana 2003, pet. denied) (stating party "may not complain about the judge's failure to recuse himself because" the party "did not follow the procedure prescribed by Rule 18a"); *Gill v. Tex. Dep't of Criminal Justice*, 3 S.W.3d 576, 579 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("If a party does not comply with the mandatory requirements of Rule 18a, he waives his right to complain of a judge's refusal to recuse himself.").

With respect to the third "matter of noncompliance" listed in the order, Vodicka argues on appeal that he "filed a verified Motion for Recusal" but does not provide further argument concerning the verification of his motion.  He attached a declaration to his motion for recusal that stated his name, date of birth, and address and described events in 2017 that he described as "harassment caused by the Tobolowsky family" and their agents.  In the declaration, after stating his personal information and before describing the events in 2017, he stated, "I declare under penalty of perjury that the foregoing and the following statements are true and correct."  He signed the declaration and the motion to recuse.  But the record reflects that Vodicka did not verify the

statements about Judge Cosby that are the basis for the motion to recuse. *See In re K.M.L.*, 443 S.W.3d 101, 109 (Tex. 2014) (applying Black's Law Dictionary's definition of "verification" as "(1) [a] formal declaration made in the presence of an authorized officer, such as a notary public . . .; whereby one swears to the truth of the statements in the document [or]; (2) [a]n oath or affirmation that an authorized officer administers to an affiant or deponent" and definition of "verify" as "(1) [t]o prove to be true; to confirm or establish the truth or truthfulness of; to authenticate; [or] (2) [t]o confirm or substantiate by oath or affidavit; to swear to the truth of" (quoting BLACK'S LAW DICTIONARY 1793 (10th ed. 2009)).

Because we conclude that Vodicka's motion to recuse did not comply with the requirement under rule 18a that a motion to recuse be verified, it is not necessary for us to address the other two "matters of noncompliance" described in the order denying Vodicka's motion to recuse.[14]  We resolve Vodicka's third issue against him.

### DECLARATION OF AUBREY AS VEXATIOUS LITIGANT

In his fourth issue, Vodicka argues that the trial court erred in declaring Aubrey to be a vexatious litigant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.054.  In its order declaring Aubrey a vexatious litigant, the trial court concluded that Aubrey met "the criteria for finding that a plaintiff is a vexatious litigant" as set forth in section 11.054 of the civil practice and remedies code.  *Id.*  The trial court ordered Aubrey to "furnish $25,000 in order to proceed" with this case by paying that security to the district clerk, ordered that Aubrey was "prohibited from filing, *pro se*, any new litigation in a district or statutory county court without permission of the appropriate local administrative judge of such district or statutory county court," and ordered that "a clerk of court may not file a litigation, original proceeding, appeal, or other claim presented, *pro se*," by

---

[14] In the section of his third amended brief concerning the motion to recuse, Vodicka contends (1) that he had a right to a telephonic hearing and (2) that phone calls between attorneys for the Tobolowskys and the trial court reflects Judge Cosby's "bias and prejudice."  Because Vodicka's motion did not comply with the requirements of rule 18a, it is not necessary for us to address these arguments.  *See Rammah*, 235 S.W.3d at 274; *Gill*, 3 S.W.3d at 579.

Aubrey "in a district or statutory county court unless he first obtains an order from the appropriate local administrative judge[.]"

Belo and Judge Moyé argue that Vodicka does not have standing to appeal the order declaring Aubrey to be a vexatious litigant.  Vodicka argues that he has standing because he "had a stake in the case as a party with similar interests."  He states many of the same arguments that he made regarding his standing to appeal the trial court's grant of Judge Moyé's motion to dismiss under rule 91a.  Citing *Obergefell*, 135 S.Ct. at 2604, Vodicka argues that he has standing to bring this claim because he was not a third party as Judge Moyé contends, but a co-party and Aubrey's spouse.  As discussed above, *Obergefell* held that "couples of the same-sex may not be deprived" of the fundamental constitutional right to marry; *id.*, it did not concern standing of a spouse in claims for injuries suffered by their spouse.  And Vodicka does not provide any authority for his contention that a "punitive court designation of a party aligned in the same interest prejudices the other parties."

Vodicka argues that Belo incorrectly argues that he lacks standing because he cannot show that "his interest has been prejudiced by the adverse ruling[.]"  He contends that "Belo forgets the Trial Court's Judgment held Vodicka 'jointly' liable for [Judge] Moyé's sanctions of $1,000.00, based in part, on Plaintiffs' challenge of the 'Vexatious' issue when Vodicka demonstrated for the Trial Court that this exact issue was being litigated for the third time."[15]  The trial court assessed sanctions of $1,000 jointly and severally against Vodicka and Aubrey under rule 13.  As discussed above, the order stated, "The Court further concludes that sanctions should be awarded against Plaintiffs in the amount of $1,000.  The Court finds that the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of" rule of civil

---

[15] Vodicka also states that the trial court "was aware that [Judge] Moy[é] actually issued the second Order (when Aubrey could not be present to defend the action)" and contends "Belo forgets the Trial Court held Vodicka jointly liable for $25,000.00 Sanctions, in part due to this adverse issue."  But Vodicka does not further argue or provide citations to the record or authority to establish how these statements provide a basis for his standing to challenge on appeal the order declaring Aubrey to be a vexatious litigant.

procedure 13.  The final judgment likewise ordered Vodicka and Aubrey, jointly and severally, to pay Judge Moyé $1,000 pursuant to rule 13 of the rules of civil procedure.  Neither the order nor the final judgment relate the $1,000 sanction to the '"Vexatious' issue[.]"  In addition, as stated above, a sanction under rule 13 does not concern standing, but rather results when a court concludes that an attorney or party violated rule 13 by signing a document that was "groundless and brought in bad faith or groundless and brought for the purpose of harassment."  TEX. R. CIV. P. 13.[16]

"Only the party whose primary legal right has been breached may seek redress for the injury." *Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).  Vodicka has not shown that his "primary legal right has been breached" by the declaration of Aubrey as a vexatious litigant.  *See Guardianship of L.S.*, No. 14-15-00494-CV, 2017 WL 1416190, at *5 n.11 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, pet. denied) (mem. op.) (concluding party who was "the person the probate court declared a vexatious litigant" had standing to appeal that declaration).  We conclude that Vodicka does not have standing to appeal the order declaring Aubrey to be a vexatious litigant.  We resolve Vodicka's fourth issue against him.

### BELO'S REQUEST FOR DAMAGES UNDER RULE 45

Belo requests "just damages" under rule 45 of the rules of civil procedure arguing that Vodicka's appeal is "objectively frivolous and has caused Belo to incur damages in the form of fees and costs associated with filing this brief."  After considering the record, briefs, and other papers filed in this Court, we may award just damages to each prevailing party if we determine that an appeal is frivolous.  TEX. R. APP. P. 45; *Archer v. Tunnell*, No. 05-15-00459-CV, 2016 WL 519632, at *4 (Tex. App.—Dallas Feb. 9, 2016, no pet.) (mem. op.).  Recovery is authorized if an

---

[16] As noted above, both Aubrey and Vodicka signed their petition.

appeal is objectively frivolous and injures an appellee. *Solares v. Solares*, 232 S.W.3d 873, 883 (Tex. App.—Dallas 2007, no pet.). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed. *Archer*, 2016 WL 519632, at *4. The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with caution and prudence and only after careful deliberation. *Id.* Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *Id.* After considering the record, briefs, and other papers filed, we decline to impose appellate sanctions against Vodicka. We deny Belo's request for damages for a frivolous appeal.

### CONCLUSION

We resolve Vodicka's four issues against him. We affirm the trial court's judgment. We deny Belo's motion for damages for a frivolous appeal.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

170728F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRIAN E. VODICKA, Appellant

No. 05-17-00728-CV          V.

A.H. BELO CORPORATION AND ERIC
VAUGHN MOYÉ, INDIVIDUALLY,
Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-12693.
Opinion delivered by Justice Lang-Miers,
Justices Myers and Boatright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee A.H. BELO CORPORATION AND ERIC VAUGHN
MOYÉ, INDIVIDUALLY recover their costs of this appeal from appellant BRIAN E.
VODICKA.

Judgment entered this 5th day of July, 2018.