**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.: 18-CV-61117-BLOOM-VALLE**

STEVEN BENTON AUBREY and
BRIAN EDWARD VODICKA,

    Plaintiffs,

vs.

D MAGAZINE PARTNERS, L.P. d/b/a
D   MAGAZINE;   MAGAZINE   LIMITED
PARTNERS, L.P.; ALLISON MEDIA, INC.;
JAMIE   L.   THOMPSON;   ROBERT   L.
ERMATINGER, JR.; SCOTT ROBERT SAYERS;
STEPHEN   CHARLES   SCHOETTMER;   ERIC
VAUGHN   MOYE;   DALLAS   POLICE
DEPARTMENT; CITY OF DALLAS; MELINDA
CHRISTINE   URBINA;   DALLAS   COUNTY
SHERIFF'S DEPT.; DALLAS COUNTY, TEXAS;
and DOES 1–10, all whose true names are unknown,

    Defendants.

_____/

# CITY DEFENDANTS' MOTION TO DISMISS
# AND INCORPORATED MEMORANDUM OF LAW

   Defendants City of Dallas (the "City"),[1] Scott Sayers, and Robert Ermatinger (collectively,

the "City Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (3), and (6),

hereby move to dismiss Plaintiffs' complaint.

---

[1]  As set forth more fully below, the Dallas Police Department is not an independent legal entity capable of being sued. All references to the City include the City of Dallas and the Dallas Police Department.

**WEISS SEROTA HELFMAN COLE & BIERMAN P.L.**

## INTRODUCTION

This case is about a *Texas* murder investigation, involving defendants from *Texas*, as well as actions and statements made in *Texas*. The crux of the allegations all occurred while the Plaintiffs were *Texas* residents. There is no alleged connection to Florida other than Plaintiffs' decision to move here after every act asserted against the City Defendants occurred. There is no personal jurisdiction in Florida over any City Defendant. Therefore, this action should be dismissed.

Even if there were personal jurisdiction over the City Defendants, Plaintiffs' claims should still be dismissed for improper venue, forum non conveniens, and a failure to state causes of action.

## ARGUMENT

## I.   THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Plaintiffs fail to allege a prima facie case of personal jurisdiction over the City Defendants, and the attached declarations of Ermatinger and Sayers conclusively establish personal jurisdiction is lacking. Once the Court determines that it lacks personal jurisdiction, the Complaint may be dismissed without further inquiry. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (personal jurisdiction question should be determined first).

### A.  Relevant jurisdictional allegations.

The Complaint itself establishes a lack of personal jurisdiction over any of the City Defendants. The *only* allegation asserting the existence of personal jurisdiction appears in paragraph 17. Paragraph 17 alleges broad and conclusory allegations against all 23 defendants:[2]

> 17.     The Court has personal jurisdiction over the Defendants pursuant to Fla. Stat. §48.193(1)(b) as Defendants have entered into the State of Florida with sufficient minimal contacts and committed intentional torts in relation to Plaintiff,

---

[2]        Thirteen defendants are named parties, the remaining ten defendants are identified as "Does 1-10."

or in the alternative, have committed tortious conduct outside the State of Florida with the specific intent and knowledge than an injury would occur in the State of Florida.

ECF No. 1 at p. 3 (¶17). The remaining allegations in the Complaint contradict Paragraph 17.

### 1.   Allegations concerning search warrants.

Plaintiffs allege that Ermatinger and Sayers drafted fraudulent affidavits (in Texas) to support search warrants. ECF No. 1 at pp. 20-21 (¶¶ 119 – 129). These warrants were then executed in Texas on May 19, 2016 and May 25, 2016. *Id.* at pp. 23-27 (¶¶ 137-169) & Ex. E. The Plaintiffs still resided in Texas. *Id.* at pp. 24 and 36 (¶¶ 148 and 226) (alleging Plaintiffs were still residents of Dallas, Texas, on May 19, 2016, and moved to South Florida in November 2016). No event connected to Plaintiffs' claims regarding the search warrants took place outside Texas.

### 2.   Allegations concerning leaks to the media.

Plaintiffs also accuse the City Defendants of making defamatory statements and "leaking" information to the media. ECF No. 1 at pp. 27; 29; 31-35 (¶¶ 170; 187; 200 - 225). Each of these actions is alleged to have occurred in Texas—not Florida. *Id.* Plaintiffs resided in Texas during this period as well. *Id.* at pp. 24 and 36 (¶¶ 148 and 226).

### 3.   Allegations concerning Plaintiffs' move to Florida.

Plaintiffs allege that, after their move to Florida in November 2016, D Magazine published an article containing statements and information allegedly received from the City Defendants. ECF No. 1 at pp. 39-44 (¶¶250 – 253). No allegation, however, claims that any of the City Defendants were involved in publishing D Magazine's article. *Id.* at p. 38 (¶243). No allegation asserts that the statements in the article, which are attributed to Ermatinger, were made anywhere but in Texas. Plaintiffs allege, in conclusory fashion, that all of the Defendants conspired with one another, intending that the article would cause injury in Broward County, Florida, on the one-year anniversary of Ira Tobolowsky's murder. *Id.* at p. 44 (¶¶ 252 and 253). But there is no allegation

3

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

that any of the City Defendants knew (or should have known) that the Plaintiffs had moved to Florida by that time or that an article published by a Dallas based magazine concerning Dallas matters would be published *anywhere* in Florida.

In sum, contrary to the conclusory allegation in paragraph 17 of the Complaint, none of the City Defendants is alleged to have taken any action in Florida, none is alleged to have any relevant contacts with Florida, and none is alleged to have intended or even foreseen an injury in Florida. As discussed below, even if any of the City Defendants could have foreseen a remote possibility of harm in Florida, such an allegation (which has not been made) would still fail to support personal jurisdiction over the City Defendants.

**B.  The declarations of Ermatinger and Sayers.**

Although Plaintiffs fail to sufficiently allege personal jurisdiction, in an abundance of caution Ermatinger and Sayers have signed the declarations attached to this Motion as Exhibits 1 (hereinafter, "*Ermatinger Dec.*") and 2 (hereinafter, "*Sayers Dec.*"). In their declarations, Ermatinger and Sayers affirm they are residents of Texas—not Florida. *Ermatinger Dec.*, at ¶ 3; *Sayers Dec.*, at ¶ 3. They do not conduct business or own property in Florida, and have not even visited Florida (except for vacation) since before the murder of Ira Tobolowsky. *Ermatinger Dec.*, at ¶¶ 4–5; *Sayers Dec.*, at ¶¶ 4–5. Critically, all of the activities Ermatinger and Sayers undertook to conduct the investigation into Mr. Tobolowsky's murder took place in Texas. *Ermatinger Dec.*, at ¶¶ 6–7; *Sayers Dec.*, at ¶¶ 6–7. They never made any contacts with any person or place in the State of Florida in connection with Mr. Tobolowsky's murder investigation. *Ermatinger Dec.*, at ¶ 8; *Sayers Dec.*, at ¶ 8. And they have never contacted any person in Florida, including any Florida police department or individual law enforcement personnel, for any reason or purpose concerning

Messrs. Aubrey or Vodicka. *Ermatinger Dec.*, at ¶ 11; *Sayers Dec.*, at ¶ 10.[3]

**C. Standard of review for a motion based on lack of personal jurisdiction.**

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara*, 916 F.2d at 1514. "The first prong of that analysis requires examination of whether a basis of jurisdiction is provided under the forum state's long arm statute. . . . If that prong is met, the second prong requires consideration of whether there are sufficient minimum contacts to satisfy due process concerns." *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005). A federal court may exercise personal jurisdiction over a nonresident defendant only if both prongs are satisfied. *Id.* Here, Plaintiffs do not satisfy either prong.

**D. The first prong of the jurisdictional inquiry: No general or specific jurisdiction under Florida's long-arm statute.**

The City Defendants can be subject to personal jurisdiction under Florida's long-arm statute in only two ways: (1) general personal jurisdiction, based on section 48.193(2), Florida Statutes, or (2) specific personal jurisdiction, based on the acts enumerated in section 48.193(1)(a), Florida Statutes. In this case, there are no allegations in the Complaint sufficient to establish either general or specific personal jurisdiction over any of the City Defendants.

**1. There is no general personal jurisdiction over the City Defendants.**

A defendant is subject to general personal jurisdiction only if he "is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." § 48.193, Fla. Stat. None of the City Defendants is alleged to be a resident of

---

[3]     With respect to Ermatinger's alleged statements to D Magazine, he affirms that D Magazine interviewed him in February 2017 in connection with an article concerning Mr. Tobolowsky's murder. *Ermatinger Dec.*, at ¶ 9. The interview took place in Texas. *Id.* at ¶ 9. Ermatinger did not know at the time of his interview, and does not know now, whether D Magazine is or ever has been marketed or sold in Florida. *Id.* at ¶ 10.

Florida and none is alleged to have engaged in substantial (or any) activity in Florida. Ermatinger and Sayers have declared they are Texas residents only, and that they do not conduct business or own property in Florida. *Ermatinger Dec.*, at ¶¶ 3–5; *Sayers Dec.*, at ¶¶ 3–5.

**2. There is no specific personal jurisdiction over the City Defendants.**

For the Court to have specific personal jurisdiction, the City Defendants' contacts with Florida "must satisfy three criteria: [1] they 'must be related to the plaintiff's cause of action or give rise to it;' [2] they must involve 'some act by which the defendants purposefully availed themselves of the privilege of conducting activities with the forum;' and [3] they 'must be such that the defendants should reasonably anticipate being haled into court there.'" *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (*quoting McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005)).

On the face of the Complaint, there are no qualifying contacts with Florida. Sections 48.193(1)(a)(1)-(9) of Florida's long-arm statute define the actions that subject a defendant to specific personal jurisdiction. Plaintiffs have not alleged that any of the possible actions listed in Section 48.193(1)(a) occurred. *Every* alleged act, including statements allegedly made to D Magazine, occurred in Texas. This is confirmed by the declarations of Ermatinger and Sayers, which conclusively establish that their activities relating to the murder investigation underlying Plaintiffs' Complaint occurred in Texas only, and that Ermatinger and Sayers have never contacted any person in Florida concerning any of the subjects of Plaintiffs' Complaint. *See Ermatinger Dec.*; *Sayers Dec.*

**E. The second prong of the jurisdictional inquiry: No minimum contacts sufficient to satisfy due process concerns.**

Exercising personal jurisdiction over any City Defendant would violate due process requirements. "Where a forum seeks to assert specific personal jurisdiction over a nonresident

defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Madara*, 916 F.2d at 1516. "This fair warning requirement is satisfied if the defendant has purposefully directed his activities at the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotations omitted). "Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Id. (*citing *Burger King,* 471 U.S. at 474*; World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, (1980)).

The City Defendants would not anticipate being haled into court in Florida based on actions taken in connection with a Dallas, Texas, criminal investigation involving suspects who were Texas residents. Even speaking to reporters from D Magazine would not provide them with fair warning of a suit in Florida. *Madara*, 916 F.2d at 1517 (finding insufficient contact with Florida based on an interview given to California publication with national distribution). Plaintiffs fail to allege that any of the City Defendants "purposefully established" contacts with Florida such that they "should reasonably anticipate being haled into court there." *Id.*

Instead, Plaintiffs focus on the burdens imposed by their move to Florida after the alleged conduct giving rise to their claims. *See*, ECF No. 1 at pp. 3-4 (¶¶ 16–20). Fair play and substantial justice is not about the Plaintiffs' convenience. Rather, "[a] 'primary concern' of the 'fairness' test is the burden placed on the *defendant*." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) (emphasis added) (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 294). Plaintiffs' decision to move to Florida in November 2016 and their financial status are irrelevant to the jurisdictional inquiry. Therefore, the Court should not exercise personal jurisdiction over any of the City Defendants and this action against them should be dismissed.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

**F.  There is no need for the Court to engage in a discretionary evidentiary hearing to determine personal jurisdiction.**

The Court does not need to conduct an evidentiary hearing concerning personal jurisdiction. Whether to conduct an evidentiary hearing is within the Court's discretion. *Madara*, 916 F.2d at 1514. "When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish [by their allegations] a prima facie case of personal jurisdiction over a nonresident defendant." *Id.* (citing *Morris v. SSE, Inc.*, 8423 F.2d 492 (11th Cir. 1998)). A prima facie case is established if the plaintiff presents "sufficient evidence to defeat a motion for directed verdict." *Cable/Home Comm'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). In reviewing personal jurisdiction, "a district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514. "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id.*

On the face of the Complaint, personal jurisdiction does not exist. Every alleged transaction or occurrence involving the City Defendants occurred in Texas. ECF No. 1 at pp.19-27; 31- 35 (¶¶114-169; 200-225). None of the City Defendants is a resident of Florida and none is specifically identified as taking any action in connection with this case purposefully directed to Florida. ECF No. 1 at p. 5-6 (¶¶ 27, 28, 31, and 32). The Complaint's allegations provide no basis for any different conclusion. This action should be dismissed against the City Defendants for lack of personal jurisdiction without an evidentiary hearing.

## II.    VENUE IS NOT PROPER IN THE SOUTHERN DISTRICT OF FLORIDA.

Even if there were personal jurisdiction over the City Defendants, venue is not proper in Florida. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. §1391(b). A civil action may be brought in one of

three venues:

> (1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C.A. § 1391. None of the City Defendants resides in Florida, none of the events concerning them, as alleged in the Complaint, occurred in Florida, and an alternative forum in Texas exists as to every defendant in this action. Therefore, Plaintiffs' Complaint should be dismissed on the grounds of improper venue.

## III.   THE SOUTHERN DISTRICT OF FLORIDA IS NOT A CONVENIENT OR PROPER FORUM FOR THIS ACTION.

This action should also be dismissed based upon the doctrine of forum non conveniens. "Under the doctrine of forum non conveniens, when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to [a] plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009). "We review a district court's ruling on a motion to dismiss for forum non conveniens for a clear abuse of discretion only." *Feggestad v. Kerzner Int'l Bahamas Ltd.*, 843 F.3d 915, 918 (11th Cir. 2016) (quoting *Aldana v. Del Monte Fresh Produce N.A.*, 578 F.3d 1283, 1288 (11th Cir. 2009). "As long as the district court considered all relevant factors, and its balancing of the factors was reasonable, we will give

substantial deference to the district court's decision." *Id.*

 A forum non conveniens dismissal is appropriate where:

 1. the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;

 2. the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;

 3. if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and

 4. the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

*Wilson*, 590 F.3d at 1269.

 There exists an adequate alternative forum for Plaintiffs' claims, and it is not the Southern District of Florida. Nearly every alleged transaction or occurrence took place in Texas. Texas courts would have personal jurisdiction over every defendant and, accordingly, the whole case. Plaintiffs' claims of alleged financial hardship, while relevant to the analysis, "is not determinative, and does not affect the adequate alternate forum factor." *Id*. at 1271.

 The relevant factors concerning private interests also favor Texas as an alternative forum. Though not exhaustive, the "[p]rivate factors the district court should consider when analyzing a forum non conveniens claim include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment." *Wilson*, 590 F.3d at 1270. Here, the witnesses, and the places where the events took place are all in Texas. Any judgment rendered in Florida would have to be domesticated in Texas, making the enforceability of a judgment far more convenient there. Even giving deference to Plaintiffs' choice of forum, the balance weighs heavily in favor of Texas as more convenient.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

The public interest factors also favor Texas. "Relevant public interest factors include the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 953 (11th Cir. 1997). Florida's connection to the dispute, if any, is tenuous at best. There is no reason that a Florida court should carry the administrative burdens of this action. Texas is a more appropriate forum as Plaintiffs' claims are governed by Texas and federal law—not Florida law (as explained below).

Finally, there is no basis to believe that Plaintiffs' claims could not be reinstated in Texas without *undue* inconvenience or prejudice. While Texas might be inconvenient to the Plaintiffs at this time, their decision to move to Florida rather than pursue their claims in Texas should not weigh heavily in their favor. The Court should dismiss the City Defendants based on the doctrine of forum non conveniens.

## IV. GROUNDS FOR DISMISSAL APPLICABLE TO ALL CLAIMS AGAINST THE CITY DEFENDANTS.

The Court does not need to go further than the jurisdictional, venue, and forum arguments to be able to dismiss the Complaint. *Unitedhealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV, 2017 WL 1832436, at *4 (S.D. Fla. May 8, 2017) (the court should address personal jurisdiction arguments first). Nevertheless, as required by Rule 12, the City Defendants present their arguments under Rule 12(b)(6), which are generally applicable to all of Plaintiffs' claims, below.

### A. Plaintiffs' claims against the Dallas Police Department ("DPD") should be dismissed because it is not an independent legal entity capable of being sued.

Plaintiffs' claims against the DPD should be dismissed because the DPD is not *sui generis* and does not have the capacity to sue or be sued. The capacity of an entity to be sued is determined

by the law of the forum state. Fed. R. Civ. P. 17(b).

The Court should dismiss the DPD because it does not have an independent legal existence. The City of Dallas is a home-rule municipality. Tex. Loc. Gov't Code Section 5.004; Dallas, Tex., Charter ch. 1, § 1. Texas law grants the City the authority to organize and operate a police force. Tex. Loc. Gov't Code Ann. Section 341.003 (West 2005). The Dallas City Charter states that the City has the power to sue and be sued, but does not grant the same power to the DPD. Dallas, Tex., Charter ch. II, § 1(2). Therefore, Plaintiffs may not bring suit against the DPD, since it has no legal existence. *Darby v. Pasadena Police Department,* 939 F.2d 311, 313 (5th Cir. 1991) (dismissing claim pursuant to Rule 12(b)(6) against the municipal police department for failure to state a claim against a non-jural entity); *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993) (same).

Federal courts sitting in Texas have dismissed the DPD because it is not capable of being sued. *Vardas v. City of Dallas*, 54 F. App'x 592, at *1 (5th Cir. 2002) (unpublished) (affirming conclusion that the "the Dallas Police Department Property Room" is not "capable of being sued in a 42 U.S.C. § 1983 action."); *See also Johnson v. Dallas City Police Dep't*, No. 3:04-CV-1578-B, 2004 WL 2964968 at *2 (N.D. Tex. Dec. 15, 2004), *rec. adopted*, 2005 WL 119467 (N.D. Tex. Jan. 18, 2005) (dismissing the DPD with prejudice because the plaintiff failed to show it "has ever been granted the capacity to sue or be sued").

Florida law is consistent with Texas law, in that other police departments in the Southern District of Florida have been dismissed because they were not subject to suit. *Post v. City of Fort Lauderdale*, 750 F. Supp. 1131, 1132-33 (S.D. Fla. 1990) (dismissing Fort Lauderdale police department because it does not have the capacity to be sued). *See also Eddy v. City of Miami*, 715 F. Supp. 1553 (S.D. Fla. 1989) (same). Because DPD is not capable of being sued, the Court should dismiss all of Plaintiffs' claims against DPD.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

**B. Texas law applies to Plaintiffs' state-law claims.**

As an initial matter, Texas law applies to Plaintiffs' state-law claims against the City Defendants. "A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). "Florida resolves conflict-of-laws questions according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Id.* "The site of injury is, under most circumstances, the decisive consideration in determining the applicable choice of law." 10 Fla. Jur 2d Conflict of Laws § 32.

The place with the most significant relationship to Plaintiffs' claims is Texas. *See, supra*, pp. 2-4 (Sec. I.A.). Therefore, Texas law applies to Plaintiffs' state-law causes of action.

**C. The Texas Tort Claims Act bars Plaintiffs' state-law claims against the City Defendants.**

Under Texas law, all intentional tort claims against the City Defendants[4] are barred by the Texas Tort Claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code § 101.021 *et seq.* Therefore, Plaintiffs' intentional tort claims against the City Defendants must be dismissed.

**1. Plaintiffs fail to plead a waiver of the City's governmental immunity.**

Plaintiffs' state-law claims against the City must be dismissed because Plaintiffs allege intentional-tort claims against the City but fail to allege a waiver of its sovereign immunity. The City has broad sovereign immunity under the TTCA, which creates a *limited* waiver of sovereign immunity only for certain damages: (1) arising from the operation of a motor-driven vehicle or motor-driven equipment; or (2) caused by a condition or use of tangible personal or real property.

---

[4]     Plaintiffs have alleged state-law tort claims against the City Defendants: defamation (Counts I, XV, XVI), abuse of process (Count XI), invasion of privacy (Counts XII, XIII, XIV), assault and battery (Count XVIII), false imprisonment (Count XIV), foreseeable zone of risk (Count XX, which is not a valid cause of action, as set forth below), intentional infliction of emotional distress (Count XXII), and negligent infliction of emotional distress (Count XXIII). (See ECF No.1 at 46–88).

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

It expressly does not waive immunity for intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057 ("This chapter does not apply to a claim: (2) arising out of assault, battery, false imprisonment, or any other intentional tort….").

The TTCA "is the only, albeit limited, avenue for common-law recovery against the government." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). To state a claim against a governmental unit under the TTCA, Plaintiffs must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *DART v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

Plaintiffs' Complaint does not address the TTCA or plead a waiver. Therefore, the Plaintiffs' claims against the City in Counts I, IV, XI, XII, XIII, XIV, XV, XVI, XVIII, XIV, XX, XXII, XXIII (or any other of Plaintiffs' claims to the extent Plaintiffs claim they are grounded in state law) are barred by the TTCA, and should be dismissed.[5]

## 2. Plaintiffs' state-law claims against Ermatinger and Sayers should be dismissed under the TTCA's election-of-remedies statute.

Because Plaintiffs elected to sue the City, the TTCA bars them from pursuing Ermatinger and Sayers individually:

If a suit is filed under this chapter[6] against both a governmental unit and any of its

---

[5]    A governmental unit sued under the TTCA in Texas state courts properly raises governmental immunity by filing a plea challenging the court's subject-matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637-39 (Tex. 1999) ("Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction."). The governmental unit may bring an interlocutory appeal of the denial of a jurisdictional plea. Tex. Civ. Prac. & Rem. Code §§ 51.014(a)(5) &  (a)(8). Although there is no direct federal analogue to the Texas plea-to-the-jurisdiction practice, the City's TTCA argument may be properly considered a challenge to the Court's subject-matter jurisdiction under 12(b)(1), as well as an argument that Plaintiffs have failed to state a claim under 12(b)(6). *See Catlett v. Duncanville Indep. Sch. Dist.*, No. 3:09cv1245-K, 2010 WL 2217889, at *2 (N.D. Tex. May 27, 2010) (identifying a motion to dismiss under Rule 12(b)(1) as the "closest equivalent to a plea to the jurisdiction vehicle used in Texas motion practice, and allowing the school district to refile their challenge under Rule 12(b)(1)). Under either prong of Rule 12(b), Plaintiffs' claims should be dismissed.

[6]    *All* tort theories alleged against a governmental entity, including intentional torts, and without regard to whether the governmental entity is sued alone or together with its employees, are assumed to be

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

employees, the employees shall immediately be dismissed on the filing of a motion
by the governmental unit.[7]

Tex. Civ. Prac. & Rem. Code § 101.106(e). "Section 101.106 . . . is designed to force a plaintiff to
decide at the outset whether an employee acted independently, and is thus solely liable, or whether
she acted within the general scope of her employment so that the governmental unit is vicariously
liable." *City of Arlington v. Randall*, 301 S.W.3d 896, 903 (Tex. App.—Fort Worth 2009, pet.
denied) (citing *Garcia*, 253 S.W.3d at 657). Section 101.106(e) of the TTCA is unconditional and
mandatory. When a plaintiff sues both the governmental entity and its employees, a court *must
immediately dismiss* the employees upon motion. A Texas governmental entity perfects the
statutory right to dismissal of its employees upon the filing of a motion to dismiss. *Randall*, 301
S.W.3d at 903. A plaintiff cannot alter his election of remedies by amending his complaint. *Id.*

Plaintiffs cannot straddle their choice as they have attempted. Paragraphs 42 – 45 of the
Complaint assert that Ermatinger and Sayers acted as authorized agents of Dallas and DPD, acted
with the authority of Dallas and DPD, acted jointly, and pursuant to *respondeat superior*.[8] These
claims against Ermatinger and Sayers are foreclosed by Texas's election-of-remedies statute.
*Randall*, 301 S.W.3d at 903. Accordingly, all state-law claims against Ermatinger and Sayers
should be dismissed with prejudice.

---

"under" the TTCA for purposes of section 101.106. *See Garcia*, 253 S.W.3d at 656-57 (citing *Newman v.
Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997)).

[7] Per section 101.106(e), Dallas is the proper movant because it is the governmental unit that is or was the
employer of Sayers and Ermatinger.

[8]      Plaintiffs incorporate these allegations into each of their 23 counts.

**D. Plaintiffs' federal-law claims against the City should be dismissed under *Monell* because Plaintiffs do not allege a custom or policy of the City.**

Plaintiffs' § 1983 claims against the City[9] should be dismissed under binding precedent for failure to allege the existence of a custom or policy of the City. To properly state a § 1983 claim against the City, Plaintiffs "must allege a constitutional violation resulting from a municipal custom or policy." *Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161, 165 (5th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–94 (1978)). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'" *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Conclusory allegations of a custom or practice are insufficient to state a claim. *Novak v. Bradshaw*, No. 18-CV-80630, 2018 WL 3586178, at *3 (S.D. Fla. July 26, 2018) (citing cases).

Plaintiffs fail to allege an official policy or custom underlying any of their § 1983 claims. The only (conclusory) allegation is that "[e]ach and all of the acts (or threats of acts) alleged herein were done by defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of the City of Dallas." ECF No. 1, at 6 (¶ 15). This conclusory allegation is insufficient to meet the pleading requirements of *Monell*. *See Novak, supra*; *Evans v. City of Meridian Mississippi*, 630 F. App'x 312, 315 (5th Cir. 2015) (affirming dismissal for failure to allege policy or custom). Therefore, Plaintiff's § 1983 claims against the City should be dismissed.

---

[9]     It appears that Plaintiffs' federal claims are brought under § 1983, even where under some counts Plaintiffs do not cite § 1983. Plaintiffs' federal claims are: Counts II (Unreasonable Searches and Seizures), III (Excessive Force), IV (Private Property Taken for Public Use), V (Deprived of Liberty Without Due Process of Law), VI (Due Process and Equal Protection), VIII (Persons Under Color of Law Liability), IX (Americans with Disabilities Act), X (Conspiracy Against Rights Under Color of Law),

**WEISS SEROTA HELFMAN COLE & BIERMAN P.L.**

**E. Plaintiffs' claims against Ermatinger and Sayers should be dismissed because Ermatinger and Sayers are entitled to qualified immunity.**

To the extent Ermatinger and Sayers are sued in their individual capacities, they are entitled to immunity under Texas and federal law. Under Texas law, "[g]overnment officials are entitled to official immunity from suits arising out of the performance of their (1) discretionary duties (2) in good faith as long as they are (3) acting within the scope of their authority." *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 120 (Tex. Civ. App.—Houston [1st Dist.] 1995, no pet.). Regarding Plaintiff's § 1983 claims, "'[u]nder the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" *Cruz v. Davidson*, 552 F. App'x 865, 867 (11th Cir. 2013) (quoting *Keating*, 598 F.3d at 762).

"'Texas law of official immunity is substantially the same as federal qualified immunity law.'" *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir.1997) (quoting *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 658 (5th Cir. 2004)). Therefore, as to all of Plaintiffs' counts against Ermatinger and Sayers individually (as discussed more fully below), they should be dismissed insofar as they fail to allege liability sufficient to overcome qualified immunity standards.

**V.  EACH OF PLAINTIFFS' COUNTS AGAINST THE CITY DEFENDANTS FAILS TO STATE A CLAIM.**

In addition to the previously stated general grounds for dismissing the claims against the City Defendants, each count also fails, independently, to state a claim.[10]

---

[10] Because Plaintiffs' claims against the City so clearly fail due to the City's immunity (as to state-law claims) and due to Plaintiffs' failure to meet pleading requirements under *Monell* (as to the federal-law claims), the ensuing discussion focuses on Plaintiffs' claims as pled against Ermatinger and Sayers.

17

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

**A. Counts I, XV, and XVI—for defamation—are barred by the Texas statute of limitations and otherwise fail to state a claim.**

As is apparent from the face of the Complaint, Plaintiffs' claims for defamation must be dismissed for several reasons. First, they are barred because they were not brought within Texas's one-year limitations period for defamation. Tex. Civ. Prac. & Rem. Code Sect. 16.002. *See Foster v. Savannah Commc'n*, 140 F. App'x 905, 907 (11th Cir. 2005) ("failure to comply with the statute of limitations may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6), when failure to comply with the statute of limitations is plain on the face of the complaint."). Second, the Complaint fails to allege any defamatory statements as a matter of law.

The only published statements that Plaintiffs complain of are those in the D Magazine article attached as Exhibit F to the Complaint. This article is not sufficient to support a defamation claim.

As to Defendant Sayers, the article contains no statements by him about Plaintiffs or the investigation into Ira Tobolowsky's murder. Accordingly, Count I should be dismissed as to Sayers.

As to Defendant Ermatinger, although the article purports to quote him, Plaintiffs do not allege that these statements were made within one year of the commencement of this action. The D Magazine article says it was "Published in D Magazine May 2017," *Ex. F*, at p. 2, but the face of the article does not say *when* in May 2017.[11] Even if it were alleged that the magazine was published within the limitations period, it is obvious that statements in the article attributed to

---

[11]    The version of the article attached to Plaintiff's Complaint as Exhibit F displays "8/1/17" at the bottom of each page, which is most likely the date the article was printed for use as an exhibit—not the date it was published.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

Ermatinger could not have been made *on* the date the magazine was published. In fact, Plaintiffs allege D Magazine interviewed them for the story in *February* 2017. ECF No. 1 at ¶ 235.

In addition to the fact that Plaintiffs' defamation claims are time-barred, they should be dismissed because the statements by Ermatinger in the D Magazine article are not defamatory as a matter of law. At most, the claims allege non-actionable statements of opinion that Plaintiffs are suspects in the murder of Ira Tobolowsky. "An essential element of defamation is that the alleged defamatory statement be a statement of fact rather than opinion." *Oliva v. Davila*, 373 S.W.3d 94, 103 (Tex. App.—San Antonio 2011, pet. denied). "[W]hether the statement in question was merely an expression of opinion or was an actionable assertion of fact . . . is a question of law to be determined by the court." *Id.* Accordingly, the Court may review the statements alleged and dismiss the defamation claim based on the content of the statements alone.

Under these standards, Ermatinger's statements cannot be the basis for a defamation claim. Upon review of the D Magazine article, Ermatinger's statements are, in essence, that Aubrey was and is suspected of murdering Ira Tobolowsky. ECF No. 1, *Ex. E* (at p. 14). Ermatinger also concedes there has never been sufficient evidence to charge Aubrey. *Id.* In a very similar circumstance, a Texas court of appeal ruled that such statements, at most, constitute non-actionable opinions or characterizations about the speaker's suspicions. *Id.* at 103–04 (defendant's statement, that he suspected plaintiff of stealing his property from a house, "is not 'defamatory' in an actionable sense because it is an opinion or characterization of [the defendant's] suspicions based on who had access to the house."); *see also Johnson v. Phillips*, 526 S.W.3d 529, 542 (Tex. App.—Houston [1st Dist.] 2017, pet. filed) (concluding certain statements in a book were non-defamatory that constituted "speculation about whether alcoholism might have motivated [one person] to end his romantic relationship with [another]—a hypothesis a reasonable reader was free to credit or discredit in light of the entire book"). Ermatinger's statements, which were at most an expression

19

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

of opinion regarding Aubrey's suspected involvement in the murder of Ira Tobolowsky, and his concession that there is not enough evidence for a charge, is not defamatory as a matter of law. Counts I, XV, and XVI should be dismissed.

### B.  Count II—Unreasonable Searches and Seizures.

Count II attempts to state a claim for constitutional violations based on searches and seizures of Plaintiffs and their property. It is predicated on a lack of probable cause for the searches and seizures and excessive force in seizing Plaintiffs.[12]

Count II should be dismissed for failure to state a claim against Ermatinger and Sayers for at least three reasons. First, to the extent Count II is predicated on physically searching and seizing them and their property, it must be dismissed against Ermatinger and Sayers because Plaintiffs do not allege they were the arresting officers. Second, Plaintiffs have failed to allege a lack of probable cause because they do not allege a material falsehood or omission in the presumptively valid search warrants used to effect the searches and seizures. Third, Plaintiffs fail to allege facts sufficient to plead excessive force, particularly in the face of Ermatinger's and Sayers's qualified immunity.

### 1.  Plaintiffs fail to allege Ermatinger and Sayers individually seized or searched Plaintiffs or their property.

Plaintiffs broadly assert, and without factual or legal basis, that Ermatinger and Sayers, as well as other unidentified defendants, are liable for constitutional deprivations arising out of searches and seizures. The basis, apparently, is that there was a lack of probable cause and that the seizures involved excessive force. ECF No.1 at ¶¶ 276–678, 287. But Plaintiffs do not allege that Ermatinger or Sayers themselves seized Plaintiffs or searched their property. Count II should be dismissed for this reason alone.

---

[12]       Count II also makes a cursory reference to "due process." To the extent this claim purports to allege a violation of due process, it should be dismissed for the reasons articulated in response to Count V, below.

**2. Plaintiffs fail to allege a lack of probable cause for the searches and seizures.**

Plaintiffs fail to allege a lack of probable cause because they do not allege a material falsehood or omission in the presumptively valid search warrants used to effect the searches and seizures. To state a claim for unconstitutional searches and seizures, Plaintiffs must "allege[] facts that, if true, show that the officers lacked probable cause to seize and/or arrest" them. *Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161, 164 (5th Cir. 2016).[13] Where, as here, the alleged searches and seizures were performed pursuant to warrants, the warrants carry a "presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In the face of such presumptively valid warrants, to state a claim that probable cause was lacking Plaintiffs "must sufficiently allege that the warrant was not facially valid, or that (1) Defendants—as the non-arresting officers— intentionally or recklessly made false statements or omissions in procuring the arrest warrant, and (2) that said false statements or omissions were necessary to the finding of probable cause." *Williams v. Allen*, No. 617CV00242ORL31DCI, 2017 WL 1653744, at *4 (M.D. Fla. May 2, 2017).

Plaintiffs fail to allege material falsehoods or omissions necessary to overcome the warrants' presumptive validity. Specifically, Count II arises out of two alleged sets of search warrants and resulting searches and seizures: (i) warrants dated May 18, 2016, used to search Plaintiffs personally, which are not attached to the Complaint; and (ii) warrants dated May 25, 2016, used to search Plaintiffs' property, which are attached to the Complaint as Exhibit E.

i.    **The first set of warrants, dated May 18, 2016.**

Plaintiffs allege Ermatinger secured an unidentified number of search warrants on May 18,

---

[13]     "'Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Id.*

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

2016, using fraudulent affidavits. ECF No. 1, at 23 (¶ 131). These warrants were allegedly used to search Plaintiffs personally. *Id.* at ¶ 137 (referring to the May 19, 2016, incident, in which they were allegedly seized and then detained for nine hours). Plaintiffs fail to attach these warrants or affidavits to the Complaint and fail to allege a material falsehood or omission in these warrants or Ermatinger's affidavits, or otherwise refer to their contents. Therefore, Plaintiffs have failed to allege a lack of probable cause in connection with the first set of warrants.

### ii.   The second set of warrants, dated May 25, 2016.

Plaintiffs allege Sayers secured search warrants on May 23, 2016, using fraudulent affidavits. ECF 1, at 23 (¶ 133). These warrants were allegedly used to search Plaintiffs' property. They are attached to the Complaint, along with accompanying affidavits, as Exhibit E.[14] Plaintiffs fail to allege a material falsehood or omission in the affidavits used to secure these warrants.

In a failed attempt to allege a lack of probable cause for these latter warrants, Plaintiffs allege two statements in Sayers's affidavits are false. The first allegedly false statement is that "[f]amily members advised detectives that complainant Tobolowsky felt threatened by Steve Aubrey." *Complt.* ¶¶ 124–126. Plaintiffs expressly premise this accusation of falsity on a later news article that reported the following: "Though some have said Tobolowsky may have been killed because of his legal work, his sons said Thursday that they don't know if that was likely. Tobolowsky's family has said he didn't express fear or concern in the days leading up to his death." *Id.* ¶ 125. There is no contradiction. Tobolowsky may well have generally felt threatened by Steve Aubrey, yet not have expressed fear or concern in the days leading up to his death. Moreover, even if there were a contradiction, it does not follow that the statement in the affidavit is materially false. The family members who provided this information are not identified. Finally, the statement

---

[14]     The two warrants and accompanying affidavits attached to the Complaint as Exhibit E are actually dated May 25, 2016. *Id.* at Ex. E.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

in the news article was, by Plaintiffs' own allegations, made *after* the warrant, so it cannot sustain an allegation that Sayers knew the alleged statements in the affidavit were false.

Plaintiffs allege another statement in Sayers's affidavits are false: that "[i]t was alleged in the lawsuit that Steven Aubrey threatened 'Jihad' the same words used to describe the wars brought by terrorists, and against his life which was filed in court document number 15-08135." ECF No. 1 at ¶¶ 124–126. Plaintiff misconstrues this statement, and does not adequately allege it is false. The statement only reports what was *alleged* in Tobolowsky's lawsuit. A Texas court of appeals has specifically found the statement concerning "jihad" "accurately states allegations in Tobolowsky's lawsuit." *Vodicka v. A.H. Belo Corp.*, No. 05-17-00728-CV, 2018 WL 3301592, at *4 (Tex. App.—Dallas, July 5, 2018). Therefore, Plaintiffs have failed to allege a lack of probable cause in connection with the second set of warrants.

Plaintiffs' allegations have failed to overcome the presumptive validity of the search warrants, and consequently fail to allege a lack of probable cause. *Holland v. City of Auburn, Alabama*, 657 F. App'x 899, 903 (11th Cir. 2016) (affirming dismissal of § 1983 claims where Plaintiff failed to meet his pleading burden, in that he claimed omissions in a warrant were "deliberate" and "with a 'reckless disregard of the law and of the legal rights of Plaintiff,' but where "Plaintiff has never stated the omission"); *Taylor v. Pekerol*, No. 5:14-CV-96-RH-GRJ, 2016 WL 5172829, at *11 (N.D. Fla. Aug. 12, 2016*), report and recommendation adopted,* No. 5:14CV96-RH/GRJ, 2016 WL 4618895 (N.D. Fla. Sept. 6, 2016) (concluding a plaintiff has not stated a valid Fourth Amendment claim where "Plaintiff does not allege or suggest how the false representations were material to the issuance of the search warrant," and noting that "[t]he fact an affidavit in support of a search warrant contains some false information does not by itself give rise to a Fourth Amendment claim."); *cf. Cruz v. Davidson*, 552 F. App'x 865, 868 (11th Cir. 2013) (reversing denial of qualified immunity, concluding that overnight detention reasonable where

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

officer "had probable cause to believe that [the plaintiff] violated the seatbelt law."). Therefore, Count II for unconstitutional searches and seizures should be dismissed.

### 3. Plaintiffs fail to allege excessive force.

Count II should also be dismissed because Plaintiffs fail to allege facts sufficient to support a claim of excessive force under § 1983. At most, Plaintiffs allege non-actionable, de minimis force in connection with their seizure.

"Whether police officers have violated the Fourth Amendment during an investigatory stop or arrest depends on the resolution of two issues: (1) In using force, did officials 'seize' the suspect within the meaning of the Fourth Amendment?; *and*, if so, (2) Was the force objectively unreasonable?" *Section 1983 Litigation Second Edition*, 2008 WL 6983697 (emphasis added). "[T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (U.S. 1989). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989). Even assuming an arrestee is "totally compliant," the arresting officer is "allowed to use some force in effecting her arrest." *Horn v. Barron*, 720 F. App'x 557, 564 (11th Cir. 2018).

Critically, "'the application of de minimis force, without more, will not support an excessive force claim' and 'will not defeat an officer's qualified immunity.'" *Horn v. Barron*, 720 F. App'x 557, 563 (11th Cir. 2018) (quoting *Nolin v. Isbell*, 207 F.3d 1253, 1257–58 (11th Cir. 2000)). In *Horn*, for example, the court concluded as a matter of law that "even if the force applied by [an arresting officer] in effecting [the arrest of the plaintiff]—a soft hands, straight arm bar takedown technique, by which he gained control of her by taking hold of her left arm, putting his

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

right arm over her left arm, and using gravity and his own weight to bring her to the ground—was unnecessary, it was not unlawful," and could not overcome the officer's qualified immunity. *Id.*

Plaintiffs do not allege they were harmed in any way during their seizure on May 19, 2016. Instead, they take artistic license, describing the event in dramatic fashion, imagining the officers were poised to shoot them. ECF No. 1, at ¶ 283. Ultimately what they allege is that they were placed on the ground, held at gunpoint, handcuffed, and then taken away. The allegations relating to being placed on the ground and handcuffed describe de minimis uses of force at most, which cannot sustain a claim for excessive force. *Horn*, 720 F. App'x at 563. Plaintiffs remaining allegations concerning the incident do not allege physical touching at all, and therefore cannot form the basis of an excessive force claim. *Johnson v. White*, 725 F. App'x 868, 877 (11th Cir. 2018) (concluding defendants were "entitled to qualified immunity as to excessive force" because "no evidence shows that [the defendants] physically touched" the plaintiff); *Baker v. Welker*, No. 09-60169-CIV, 2009 WL 10675097, at *5 (S.D. Fla. Mar. 18, 2009) (dismissing excessive force claim where the plaintiff "does not allege that either [defendant] ever physically touched him. . . . Therefore, the force applied by [the defendants] in attempting to detain [the plaintiff] was not only *de minim[i]s*, it was entirely absent. [The plaintiff] has failed to identify any case law which holds an excessive force claim may be maintained where there was no physical contact between the officer and the alleged victim.").

Qualified immunity also applies to these claims. To overcome qualified immunity, the Plaintiffs not only have to allege that no reasonable officer would have used the alleged force, they must also identify some precedent placing the officers involved on notice that their actions are unconstitutional. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). Plaintiffs' allegations fail to meet these standards. Accordingly, Count II should be dismissed to the extent it is based on a claim of excessive force.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

**C.  Count III—Excessive Force.**

Count III attempts to allege a § 1983 claim for excessive force arising out of the May 19, 2016, seizure, which was also the subject of Plaintiffs' Count II. Count III should be dismissed for the same reasons raised to dismiss Count II, above.

**D.  Count IV—Private Property Taken for Public Use.**

Count IV fails to sufficiently allege a takings claim under the Fifth Amendment[15] because Plaintiffs have failed to allege they have sought just compensation through state procedures, or that such procedures are inadequate. ECF No.1 ¶ 301.

"In *Williamson* [*County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985)], the Supreme Court held that property owners who allege a takings claim under the Fifth Amendment must first seek just compensation through the procedures available under state law before bringing suit in federal court." *Persaud Properties FL Investments, LLC v. Town of Fort Myers Beach*, No. 2:17-CV-227-FTM-99CM, 2017 WL 4868908, at *3 (M.D. Fla. Oct. 26, 2017).

Plaintiffs do not allege they have instituted a Texas proceeding for the alleged takings, or that Texas proceedings are unavailable to them or inadequate. Therefore, Plaintiffs fail to allege a takings claim. *Korndorffer v. City of Galveston*, No. G-02-144, 2002 WL 34185626, at *7 (S.D. Tex. July 8, 2002). As a result, Count IV should be dismissed for failure to state a cause of action.[16]

---

[15]      To the extent this claim can be read to attack the constitutionality of the searches and seizures of Plaintiffs' property under the Fourth Amendment, it has already been addressed, and should be dismissed for the same reasons argued in response to Count II, above. *See also* footnote 17, below.

[16]      Alternatively, Count IV may be dismissed as unripe, as was held in the *Korndorffer* decision, because Plaintiffs have not alleged the prerequisite of seeking just compensation through state regulatory procedures. *Id.*

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

### E. Count V—Deprived of Liberty without Due Process of Law.[17]

Count V must be dismissed because Plaintiffs are barred from basing a due-process claim on unlawful searches and seizures. Such claims are validly brought only as Fourth Amendment Claims.

Count V is expressly predicated on the same alleged "unlawful searches and seizures" (ECF No. 1 at ¶ 309) that are the subject of Plaintiffs' Fourth Amendment claims (in Counts II–IV, above). Plaintiffs' claims based on these searches and seizures, if any, can be brought only under the Fourth Amendment. *U.S. Steel, LLC, v. Tieco, Inc.*, 261 F.3d 1275, 1290 (11th Cir. 2001) (claims arising out of allegedly unconstitutional searches and seizures "must rely on the Fourth Amendment, the explicit constitutional text that protects citizens from searches and seizures"); *Jauch v. Choctaw Cty.*, 874 F.3d 425, 429 (5th Cir. 2017) ("where a claim of unlawful detention was accompanied by allegations that the initial arrest was not supported by valid probable case, we held that analysis was proper 'under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause.'"). Therefore, Count V should be dismissed.

### F. Count VI—Due Process and Equal Protection.[18]

Plaintiffs fail to state a claim for an Equal Protection violation because they fail to allege such a claim's essential elements, i.e. that the plaintiff "was similarly situated with others who

---

[17]     Plaintiffs cite only the Fifth Amendment in support of this Count, which could not apply directly to the City Defendants—all state actors. *Riley v. Camp*, 130 F.3d 958, 972 (11th Cir. 1997) (observing "[t]he Fifth Amendment obviously does not apply" where "the acts complained of were committed by state rather than federal officials."). Count V could be dismissed on this basis alone. Nevertheless, in an abundance of caution, the City Defendants assume for the sake of argument that Plaintiffs intended to bring this claim under § 1983.

[18]     This count references § 1981, which is inapplicable because the claim is not based on race or alienage. (See response to Count VIII, below). To the extent it is a due process claim, it is duplicative of Count V and should be dismissed for the same reasons raised against Count V, above.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

received more favorable treatment, and (2) that his discriminatory treatment was based on a constitutionally protected interest such as race." *Mack v. City of High Springs*, 486 F. App'x 3, 7 (11th Cir. 2012). The Complaint does not allege others were similarly situated to Plaintiffs but treated differently. Plaintiffs also fail to allege their disparate treatment was based on a constitutionally protected interest. *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 818 (11th Cir. 2004) (homosexuality not a constitutionally protected interest for equal-protection purposes).[19] Therefore, Count VI should be dismissed.

### G.  Count VII—Presumption of Innocence.

Count VII fails to allege a recognizable cause of action and should therefore be dismissed. There is no such claim under Texas or federal law. *Cf. Grave v. Wells Fargo Bank, N.A.*, No. 14-60975-CV, 2014 WL 11776961, at *9 (S.D. Fla. July 11, 2014) (dismissing a claim for "negligent processing of a loan" where no such claim existed under Florida law); *Groover v. Israel*, No. 15-61902-CIV-BLOOM, 2015 WL 13310464, at *5 (S.D. Fla. Sept. 14, 2015) ("Although district courts must liberally construe pro se pleadings, they are not required to rewrite complaints to create a viable cause of action where one does not otherwise exist."), *report and recommendation adopted sub nom. Groover v. Broward Cty. Sheriff*, No. 15-CIV-61902, 2015 WL 13310896 (S.D. Fla. Oct. 8, 2015), *aff'd sub nom. Groover v. Israel*, 684 F. App'x 782 (11th Cir. 2017).

Moreover, Plaintiffs' presumption of innocence has no application in this civil action, where Plaintiffs do not allege they were ever subjected to a criminal trial. *See United States v. Nichols*, 841 F.2d 1485, 1500 (10th Cir. 1988) ("the presumption of innocence has no application to the determination of the rights of a defendant before trial. . . The doctrine serves only to allocate

---

[19]     To the extent Count VI is predicated on Mr. Vodicka's alleged disability, the claim should be dismissed for the additional reason that Plaintiffs fail to allege any discriminatory treatment was *based on* his alleged disabilities, as more fully set forth in response to Count IX, below.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

the burden of proof at trial and to admonish the jury to decide guilt or innocence solely on the basis of the evidence produced at trial."). Therefore, Count VII should be dismissed.

## H. Count VIII—Persons Under Color of Law Liability.

Count VIII similarly does not allege a recognized cause of action, and should be dismissed. Even assuming Count VIII could somehow be construed to allege a recognized cause of action, it should nevertheless be dismissed because it is expressly predicated on § 42 U.S.C. 1981(c), which is limited to race-or alienage-based discrimination. *See Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) ("Although s 1981 strikes at many forms of racial discrimination, no court has held that allegations of gender based discrimination fall within its purview. Courts at every level of the federal judiciary have considered the question and reached the opposite result."). *See also Davies v. Polyscience, Inc.*, 126 F. Supp. 2d 391, 393 (E.D. Pa. 2001) ("§ 1981 liability does not extend to discrimination based on disability."). Plaintiffs do not allege race- or alienage-based discrimination, and Count VIII should therefore be dismissed.

## I. Count IX—Americans with Disabilities Act

Count IX should be dismissed because Plaintiffs do not allege Aubrey is an individual with a disability under the ADA, and because Plaintiffs fail to allege facts sufficient to state a claim for disability-based discrimination against Vodicka. To state a Title II ADA claim, a plaintiff must allege three elements:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). As to Aubrey, Plaintiffs fail to allege the first element because they do not allege Aubrey is a qualified individual with a disability.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

As to Vodicka, Plaintiffs fail to sufficiently allege the third element. Although Plaintiffs allege Vodicka has AIDS, depression, and bipolar disorder (ECF No. 1 ¶ 54 & n. 2), they do not sufficiently allege that the alleged discrimination against Vodicka (i.e. the searches and seizures) was *because* of his alleged disabilities. Rather, the Complaint's allegations respecting the City Defendants' knowledge of Vodicka's disability and that they took action against him *because* of his disability are wholly conclusory. As such, they are insufficient to allege an ADA violation. *See Soto*, 2017 WL 4685301, at *13 (allegations that plaintiff was arrested and imprisoned "solely because he had a disability, when any other non-disabled witness to a shooting would have been allowed to choose whether to provide a statement and leave," failed to state a claim under the ADA for being wholly conclusory). Therefore, Count IX under the ADA should be dismissed.

### J.   Count X—Conspiracy Against Rights Under Color of Law.

Count X for conspiracy should be dismissed because Plaintiffs' naked allegations, unsupported by any facts, that the defendants conspired to violate Plaintiffs' civil rights fail to allege an actionable conspiracy. To establish a claim of conspiracy under § 1983, "'a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy.'" *Wilk v. St. Lucie Cty. Fla. Sheriff Office*, No. 17-13610, 2018 WL 3213743, at *4 (11th Cir. July 2, 2018) (quoting *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992)). "The complaint must inform the defendants 'of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed.'" *Id.* (quoting *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)). "In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Id.*

Plaintiffs fail to sufficiently allege a conspiracy between or among any of the defendants identified in Count X. They do not allege the nature of the conspiracy, who was involved, *which*

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

defendants reached *what* understanding, or any factual matter sufficient to support allegations of a conspiracy. Therefore, Count X should be dismissed. *Id.* (affirming dismissal of conspiracy claim under § 1983 where the plaintiff "alleged no facts that the officers 'reached an[y] understanding'" to infringe his civil rights); *see also Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 310 (11th Cir. 2005) (affirming dismissal of § 1983 conspiracy claim where plaintiff alleged "only that he is 'an apparent victim of shakedown racket operated by [the defendants]' and that [the defendants] 'participated in a civil conspiracy to regularly engage in depriving ... truckers of their property, due process of law, and the equal protection of the law;" such "conclusory allegations, with no factual support, are insufficient to state a claim.").

**K.  Count XI—Abuse of Process.**

Construing Count XI as a state-law claim against Ermatinger and Sayers for abuse of process,[20] it should be dismissed because Plaintiffs do not allege "[t]he critical aspect of this tort"—"the improper use of the process *after* it has been issued." *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 133 (Tex. App.—Houston [14th Dist.] 1997, rev. denied) (emphasis added).

In support of Count XI, Plaintiffs assert that Ermatinger and Sayers falsified affidavits for the warrants used to arrest Plaintiffs. ECF NO. 1 at ¶¶ 357–358. Under Texas law, this cannot constitute abuse of process because "[m]erely issuing or procuring process, even if accompanied by malicious intent or without probable cause is not actionable." *Id.* at 134. *See, e.g., Hunt v. Baldwin*, 68 S.W.3d 117, 130 (Tex. App. 2001) (allegedly false affidavit cannot sustain an abuse-

---

[20]     Count XI is brought as an apparent state-law claim, and "also [as] a violation under 42 U.S.C. § 1981, equal rights under the law." As explained in response to Count VIII, above, § 1981 has no application to Plaintiffs' claims because they do not allege race- or alienage-based discrimination.

of-process claim). Therefore, Count XI must be dismissed.

**L. Count XII—Invasion of Privacy – Misappropriation.**

Plaintiffs fail to allege misappropriation-based invasion of privacy[21] because Plaintiffs fail to allege their names or likenesses possessed any value or that any of the City Defendants misappropriated them for their own use or benefit. Under Texas law, a claim for misappropriation is a particular type of invasion-of-privacy claim that applies only when one *appropriates* the name or likeness of another *for his use or benefit*. There are three elements to this claim: "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). Thus "[f]or liability to arise, 'the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness.'" *Cardiovascular Provider Res. Inc. v. Gottlich*, No. 05-13-01763-CV, 2015 WL 4914725, at *3 (Tex. App.—Dallas Aug. 18, 2015, rev. denied) (quoting *Moore v. Big Picture Co.*, 828 F.2d 270, 275 (5th Cir.1987)).

Plaintiffs do not allege any of these elements. Rather than alleging their names or likenesses possessed any value, or that the City Defendants misappropriated them for their use or benefit, Plaintiffs simply allege Defendants committed misappropriation and that it was "for purposes of harassment." ECF No. 1 at ¶ 369. Having failed to plead the elements of a misappropriation-based claim for invasion of privacy under Texas law, Count XII should be dismissed.

---

[21]    "'Texas recognizes three distinct injuries under the tort of invasion of privacy: (1) intrusion on seclusion, (2) public disclosure on private facts, and (3) appropriation of name or likeness.'" *DeVore v. Lyons*, No. 3:16-CV-1083-BN, 2017 WL 1231484, at *5 (N.D. Tex. Apr. 4, 2017) (quoting *James v. Dallas Police Dep't*, No. 3:12-cv-457-N-BN, 2013 WL 607154, at *4 (N.D. Tex. Feb. 4, 2013)).

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

## M. Count XIII—Invasion of Privacy—Public Disclosure.

Count XIII should be dismissed because, at most, Plaintiffs allege that Defendants shared information that was public information or a matter of public concern, which is not actionable under Texas law. "A cause of action for public disclosure of private facts exists when a person gives publicity to matters concerning a plaintiff's personal life that would be highly offensive to a reasonable person of ordinary sensibilities and the matter publicized is not of legitimate concern to the public." *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001).

If the information allegedly disclosed was "public information," such as information disclosed during a court proceeding, it cannot form the basis for actionable invasion of privacy. *Crumrine v. Harte-Hanks Television, Inc.*, 37 S.W.3d 124, 127 (Tex. App.—San Antonio 2001, rev. denied); *Green v. CBS Inc.*, 286 F.3d 281, 285 (5th Cir. 2002) ("The publication of facts which are matters of public record, no matter how objectionable, does not constitute invasion of privacy.").

So, too, if the information is a matter of public *concern*, it cannot form the basis of actionable invasion of privacy. *Mobile Video Tapes*, 43 S.W.3d at 48. Whether a publicized matter is of legitimate public concern is a determination to be made as a matter of law. *Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 250 (5th Cir. 2007). "The possible commission of a crime and the resulting consequences are events of legitimate public concern," and therefore cannot form the basis of actionable invasion of privacy. *Mobile Video Tapes*, 43 S.W.3d at 48 (citing *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, (1975)). As a Texas court of appeals stated:

> Regarding arrests, the press and the public are entitled to know the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of the weather, a detailed description of the offense in

**WEISS SEROTA HELFMAN COLE & BIERMAN P.L.**

question, the names of the investigating officers, . . . and the arrestee's name, alias, social security number, race, sex, age, occupation, address, police department identification number, and physical condition, Tex. Att'y Gen. ORD–394 (1983). Additionally, the Supreme Court has determined that the State's publication of an arrest does not violate an individual's right to privacy guaranteed by the U.S. Constitution.

*Hogan v. Hearst Corp.*, 945 S.W.2d 246, 250–51 (Tex. App.—San Antonio 1997, no pet.).

While the Complaint's allegations do not make entirely clear what information Ermatinger and Sayers are accused of disclosing, the only information Plaintiffs allege with any factual support concerned their arrest and involvement in the criminal investigation into the high-profile murder of Ira Tobolowsky. Such information constitutes information that was either public record or a matter of public concern as a matter of law.

In an attempt to avoid this conclusion, Plaintiffs claim that Ermatinger and Sayers leaked information that was sealed by court order. *See, e.g.,* ECF No. 1-2 at 23 (¶¶ 358, 369). Aside from being factually unsupported, Plaintiffs' allegation about sealed records cannot sustain a claim for invasion of privacy. The court in *Lowe* specifically rejected such an argument: "Even accepting [the plaintiff's] allegation that [the defendant] obtained the information in the article in violation of the court order, there can be no liability for invasion of privacy if the information is a matter of public concern. [The plaintiff] is free to seek a contempt charge." *Id.* at 251–52.

Because the only information Plaintiffs allege as being disclosed was public record or matters of public concern, Plaintiffs have failed to state a claim for disclosure-based invasion of privacy. Count XIII should therefore be dismissed.

**N.  Count XIV - Invasion of Privacy – Intrusion.**

Count XIV should be dismissed for the same reasons argued against Count XIII, above. Although Count XIV is captioned "Intrusion," it alleges only "intrusion and publication of Plaintiffs' *private affairs*," ¶ 379 (emphasis added)—i.e. the same alleged harm alleged in Count

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

XIII.[22]

Although Count XIV is not pled as an invasion upon solitude, the City Defendants suspect that Plaintiffs might contend it is based on the alleged physical intrusion of seizing them and searching their persons and property. If so, Count XIV must nevertheless be dismissed. To be actionable, the "intrusion" that is the subject of an invasion-of-privacy claim must have been "unreasonable, unjustified, or unwarranted." *Mobile Video Tapes*, 43 S.W.3d at 48. As set forth in response to Count II, above, Plaintiffs have failed to overcome the presumptive validity of the warrants used to effect the alleged searches and seizures. Therefore, they cannot state a claim for invasion of privacy, even if it were based on a physical intrusion.[23] Count XIV should therefore be dismissed.

### O.  Count XVII—False Arrest.

Count XVII should be dismissed because, for reasons already explained in response to Count II, above, Plaintiffs have failed to allege a lack of probable cause by pointing to material falsehoods or omissions that could overcome the presumptive validity of the warrants used to effect the alleged seizures.

"False arrest is an intentional tort which consists of: 1) willful detention of the plaintiff; 2) without [the plaintiff's] consent; and 3) without authority of law." *Cantu v. Botello*, 910 S.W.2d 65, 66 (Tex. App.—Corpus Christi 1995, no pet.). "If an arrest or detention is executed under

---

[22]    "The elements of invasion of privacy by intrusion are: (1) intentionally intruding (2) upon the solitude of another *or his private affairs* (3) which is highly offensive to a reasonable person." *Mobile Video Tapes*, 43 S.W.3d at 48 (emphasis added). Plaintiffs do not claim invasion upon solitude.

[23]    Count XIV also claims to be a cause of action under 42 U.S.C. § 1985(3). But § 1985(3) is inapplicable to this state-law claim. As a civil rights statute, § 1985 "serves only as a vehicle for vindicating specific *federal* rights and privileges which have been defined elsewhere." *Cox v. Mills*, 465 F. App'x 885, 887 (11th Cir. 2012). Count XIV is in name and substance an attempted state-law claim. It alleges no federal rights, and so cannot be sustained as a § 1985 cause of action.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

process which is legally sufficient in form and duly issued by a court of competent jurisdiction, an action for false imprisonment will not lie." *James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982) (affirming decision that a plaintiff "failed to state a claim" for false arrest where the plaintiff's "detention was effected by a valid arrest warrant signed by the probate judge.").

As already set forth in the response to Count II, above, Plaintiffs fail to allege a material falsehood or omission in the warrants used to effect the alleged seizures. Therefore, their claims cannot overcome the law in Texas that "[a] valid warrant is an absolute bar to a claim of false arrest." *Cantu*, 910 S.W.2d at 66.

Finally, although Plaintiffs allege the warrant affidavits were false, such allegations are insufficient to sustain a false arrest claim unless "the officers charged with false arrest were responsible for securing the warrant." *Clayton v. Garland Police Dep't*, No. 3:09-CV-2048-D ECF, 2011 WL 2600640, at *5 (N.D. Tex. June 1, 2011), *report and recommendation adopted*, No. 3:09-CV-2048-D, 2011 WL 2600901 (N.D. Tex. June 29, 2011). As already set forth above, Plaintiffs do not actually (or sufficiently) claim Ermatinger and Sayers, who secured the warrants, were the officers who physically seized Plaintiffs. Count XVII should therefore be dismissed.

**P.  Count XVIII—Assault and Battery.**

Plaintiffs' claim for assault and battery should be dismissed because Plaintiffs do not allege Ermatinger or Sayers were among the officers who physically seized Plaintiffs on May 19, 2016, or otherwise ever made physical contact with Plaintiffs.

Under Texas law, "[i]n an assault and battery case, if the defendant establishes the lack of physical contact, then he successfully eliminates an essential element of the cause of action, thereby making it impossible for the plaintiff to prevail at trial." *Preble v. Young*, 999 S.W.2d 153, 156 (Tex. App.—Houston [14th Dist.] 1999); *see also Prothro v. City of Garland*, 234 F.3d 706 (5th Cir. 2000) (concluding the trial court erred in denying immunity to three officers where the

plaintiff did not allege they "made inappropriate physical contact."). Because Plaintiffs do not allege physical contact with Ermatinger or Sayers, they cannot sustain a claim for assault or battery. *Preble*, 999 S.W.2d at 156.

**Q. Count XIX—False Imprisonment.**[24]

Count XIX should be dismissed for the same reasons argued above in response to Count XVII (false arrest). Under Texas law, where "the justness of the resulting imprisonment depends on whether the officers had probable cause to effect an arrest" in the first place, the cause of action must be regarded as one for false arrest. *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 753–54 (Tex. App.—Corpus Christi 1998, rev. denied); *see also Happel v. Logan*, No. 01-92-00562-CV, 1993 WL 368899, at *2 (Tex. App.—Houston [1st Dist.] Sept. 23, 1993, rev. denied) ("A cause of action for false imprisonment requires proof of the identical elements" of false arrest). Plaintiffs' false-imprisonment claim is predicated on the May 19, 2016, incident, which Plaintiffs allege was unconstitutional due to a lack of probable cause. Therefore, Texas law requires Plaintiffs' false imprisonment claim be regarded as a false-arrest claim. It should be dismissed for the same reasons argued in response to Count XVIII, above.

**R. Count XX—Foreseeable Zone of Risk.**[25]

Count XX should be dismissed as an unrecognizable cause of action, not fairly placing Defendants on notice of what claim it purports to bring, including its elements. *Cf. Grave*, 2014 WL 11776961, at *9; *Groover*, 2015 WL 13310464, at *5 ("Although district courts must liberally construe pro se pleadings, they are not required to rewrite complaints to create a viable cause of

---

[24]    This count also purports to be brought under § 1981, which is inapplicable to Plaintiffs' claims because they do not allege race- or alienage-based discrimination as § 1981 requires.

[25]    Count XX also references the Americans with Disabilities Act. *Complt.* ¶ 457. To the extent Count XX purports to be a claim under the ADA, it should be dismissed for the reasons argued in response to Count IX above.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

action where one does not otherwise exist.").

Plaintiffs may intend Count XX to constitute some sort of negligence claim, in that it alleges a "legal duty to protect Plaintiffs." *Complt.* 457. If so, the claim fails. As to the City Defendants, Count XX fails to allege facts showing a valid waiver of governmental immunity under the TTCA, or  the elements of negligence: "(1) a duty owed to the plaintiff, (2) a breach of that duty, and (3) damages proximately caused by the breach." *First Assembly of God, Inc. v. Texas Utilities Elec. Co.*, 52 S.W.3d 482, 491 (Tex. App.—Dallas 2001). Moreover, the count in substance clearly does not allege a negligence claim in that it alleges *intentional*  conduct, accusing the City Defendants of "orchestrat[ing] the brutal felony aggravated assault and battery against Plaintiffs," ECF No. 1 at  ¶ 461, i.e. their seizure on May 19, 2016.

As a claim for an intentional tort in substance, arising out of the May 19, 2016, seizure, it is not only barred by the TTCA, but should be dismissed for the reasons previously discussed in response to Plaintiffs' other state-law counts directed to this incident, *supra*.

### S.  Count XXI—Conspiracy Liability.

Count XXI is a conspiracy count expressly predicated on § 1983, *Complt.* § 474,[26] and is therefore duplicative of Count X. For the same reasons Count X should be dismissed, as set forth above, so too should count XXI be dismissed.

### T.  Count XXII—Emotional Distress, Intentional Infliction.

Count XXII should be dismissed because it is directed to conduct already covered by

---

[26]    Count XXI also purports to be based on "violations of 42 U.S.C. § 421 and 18 U.S.C. § 242." *Complt.* ¶ 474. 42 U.S.C § 421, concerning disability determinations by state agencies under Title 42, Chapter 7 (Social Security), has no applicability to Plaintiffs' claims. 18 U.S.C. § 242, similarly has no applicability to this action. It is a criminal statute prohibiting constitutional deprivations or "different punishments, pains, or penalties, on account of such person being an alien, or *by reason of his color, or race*." (emphasis added).

Plaintiffs' other causes of action. Under Texas law "[i]ntentional infliction of emotional distress is a 'gap-filler tort', judicially created to allow recovery in rare instances where severe emotional distress is inflicted in such an unusual manner *there are no other recognized theories of redress*." *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 441 (Tex. App.—Dallas 2014, no pet.) (emphasis added). The rule is such that, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Vaughn v. Drennon*, 372 S.W.3d 726, 732 (Tex. App.—Tyler2012) (concluding the tort of intentional infliction of emotional distress was not available under Texas law where it was based on conduct that was otherwise actionable under theories of nuisance or assault).

Count XXII should be dismissed because it is directed to conduct that is otherwise actionable under other theories of recovery. Count XXII is expressly predicated on "the emotional shock suffered by Plaintiffs resulting from the impact of Applicable Defendants' extreme and intentional aggravated assault on May 19, 2016." ECF No. 1 at ¶ 480. *See Vaughn*, 372 S.W.3d at 733 ("Any intentional interference with property, property rights, personal rights, or personal liberties causing injury without just cause or excuse is an actionable tort."). Plaintiffs have in fact attempted to pursue those very other theories in their other counts in this action. Therefore, under Texas law the cause of action for intentional infliction of emotional distress in unavailable to them, and Count XXII should be dismissed.

Count XXII should also be dismissed for the independent reason that Plaintiffs fail to allege Ermatinger and Sayers individually seized Plaintiffs, or otherwise participated in the May 19 event. Moreover, in an intentional infliction claim, "[t]he defendant's conduct must exceed all possible bounds of decency and be utterly intolerable in a civilized community." *Id.* at 732. Plaintiffs have alleged no fact sufficient to sustain that element given the de minimis uses of force actually alleged in connection with the May 19 seizure. Therefore, Count XXII should be dismissed.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

**U. Count XXIII—Negligent Infliction of Emotional Distress.**

Count XXIII should be dismissed because "no cause of action for negligent infliction of emotional distress exists in Texas." *Twyman v. Twyman*, 855 S.W.2d 619, 620 (Tex. 1993).

## VI.   ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

As an alternative argument, assuming any of Plaintiffs' claims survive jurisdictional and other arguments set forth above, Plaintiffs should nevertheless be required to replead a more definite statement under Rule 12(e).

First, Plaintiffs should be required to replead because their Complaint is a classic shotgun pleading, in that it "'incorporate[s] every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.'" *Muhammad v. Muhammad*, 654 F. App'x 455, 457 (11th Cir. 2016) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)). "As a result, it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). "The proper remedy for a shotgun pleading is for the court to order repleading for a more definite statement of the claim." *Id.*

Second, even aside from being a shotgun pleading, Plaintiffs' claims are unclear as to which of the City Defendants are alleged to have committed which wrongs—particularly with respect to whether Defendants Ermatinger and Sayers are alleged to have personally participated in the searches and seizures of Plaintiffs, and which information underlying Plaintiffs' invasion-of-privacy counts the City Defendants are alleged to have disclosed. If any of Plaintiffs' claims otherwise survive this Motion to Dismiss, Plaintiffs should nevertheless be required to replead a more definite statement.

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

**CONCLUSION**

All of the City Defendants' alleged conduct of which Plaintiffs complain took place in Texas: the alleged searches and seizures, defamatory statements, invasions of privacy—all of it. The Complaint fails to make prima facie allegations that any of the City Defendants have contacts with Florida, be they general contacts or any arising out of Plaintiffs' claims. The attached declarations of Ermatinger and Sayers conclusively establish no such contacts exist. As a result, the Court needs to look no further into the merits of Plaintiffs' claims, because they should all be dismissed on the grounds of no personal jurisdiction over the City Defendants—or, alternatively, improper venue or forum non conveniens.

If the Court does look into the substance of Plaintiffs' 23 counts, it will find they each fail to state a claim. In the first place the state-law claims are barred under Texas law, and the federal claims against the City (including its police department) are not stated under *Monell*. Whatever is left fails to adequately state claims against any of the City Defendants.

WHEREFORE, Defendants the City of Dallas (including its police department), Scott Sayers, and Robert Ermatinger, respectfully move that the Court dismiss Plaintiffs' Complaint against the City of Dallas (including its police department), Scott Sayers, and Robert Ermatinger and grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

WEISS SEROTA HELFMAN COLE &
BIERMAN, P.L.
*Attorneys for the City*
2525 Ponce de Leon Blvd., Suite 700
Coral Gables, Florida 33134
Telephone:     (305) 854-0800
Facsimile:     (305) 854-2323

By:     */s/ Eric P. Hockman*

41
WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

JOSEPH H. SEROTA
Florida Bar No. 259111
Primary: jserota@wsh-law.com
Secondary: lmartinez@wsh-law.com

ERIC P. HOCKMAN
Florida Bar No. 064879
Primary: ehockman@wsh-law.com
Secondary: szavala@wsh-law.com

RICHARD B. ROSENGARTEN
Florida Bar No. 0106169
Primary: rrosengarten@wsh-law.com
Secondary: szavala@wsh-law.com

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.

## Certificate of Service

I certify that on September 10, 2018, this document was electronically filed with the Clerk of Court using CM/ECF, and is also being served by U.S. Mail upon all pro se plaintiffs and defendants identified on the below service list.

By: ___*/s/ Eric P. Hockman*___

## Service List

| | |
|---|---|
| **Steven B. Aubrey**<br>2601 NW 3rd Ave<br>Wilton Manors, FL 33311<br>(512) 666-8004<br>defamationperse@gmail.com<br>*Plaintiff Pro Se* | **Brian E. Vodicka**<br>2601 NW 3rd Ave<br>Wilton Manors, FL 33311<br>(954) 716-9375<br>defamationperse@gmail.com<br>*Plaintiff Pro Se* |
| **Stephen Charles Schoettmer, Esq.**<br>4305 W. Lovers Lane<br>Dallas, TX 75209<br>(214) 228-8792<br>Steve.schoettmer1@gmail.com<br>*Defendant* | **Demetri Anastasiadis**<br>Assistant Attorney General of Texas<br>Law Enforcement Defense Division<br>Office of the Attorney General<br>P.O. Box 12548<br>Austin, Texas 78711<br>(512) 463-2080 |
| **Peter L. Harlan, Assistant District Attorney**<br>133 N. Riverfront Blvd. 1319<br>Dallas, Texas 75207<br>(512) 653-3690<br>*Attorney for Defendants Melinda C. Urbina, Dallas County Sheriff Department and Dallas County, Texas* | **Tiernan Cole, Esq.**<br>Assistant Attorney General<br>Office of Attorney General of Florida<br>110 SE 6th Street, FL 10<br>Fort Lauderdale, FL 33301<br>(954) 712-4600<br>Tiernan.cole@myfloridalegal.com<br>Gwendolyn.hinton@myfloridalegal.com;<br>Martine.legagneur@myfloridalegal.com<br>*Attorney for Defendant Judge Eric Vaughn Moye* |

*Continued next page*

**WEISS SEROTA HELFMAN COLE & BIERMAN P.L.**

| **Dana J. McElroy, Esq.**<br>Thomas & Locicero PL<br>915 Middle River Drive, Suite 309<br>Fort Lauderdale, FL 33304<br>(954) 703-3416<br>dmcelroy@tlolawfirm.com<br><br>**Jason P. Bloom, Esq.**<br>2323 Victory Avenue, Suite 700<br>Dallas, Texas 75219<br>(214) 651-5000<br><br>*Attorneys For D Magazine*<br>*Partners, L.P. D/B/A*<br>*D Magazine; Magazine Limited*<br>*Partners, L.P.; Allison Media, Inc.;*<br>*and Jamie L. Thompson* | |

WEISS SEROTA HELFMAN COLE & BIERMAN P.L.