**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| STEVEN BENTON AUBREY and<br>BRIAN EDWARD VODICKA,<br><br>Plaintiffs,<br><br>v.<br><br>D MAGAZINE PARTNERS, L.P.<br>d/b/a D MAGAZINE, MAGAZINE<br>LIMITED PARTNERS, L.P.,<br>ALLISON MEDIA, INC.,<br>JAMIE L. THOMPSON,<br>ROBERT L. ERMATINGER, JR.,<br>SCOTT ROBERT SAYERS,<br>STEPHEN CHARLES SCHOETTMER,<br>ERIC VAUGHN MOYE,<br>DALLAS POLICE DEPARTMENT,<br>CITY OF DALLAS,<br>MELINDA CHRISTINE URBINA,<br>DALLAS COUNTY SHERIFF'S DEPT.,<br>DALLAS COUNTY, TEXAS, and<br>DOES 1-10,<br>all of whose true names are unknown<br><br>Defendants. | Case No. 18-cv-61117-BLOOM-VALLE |

---

**DALLAS COUNTY DEFENDANTS' MOTION TO DISMISS**
**UNDER FED. R. CIV. P. 12(b)(1), (2), (3) AND (6) AND**
**INCORPORATED MEMORANDUM OF LAW**

---

**Dana J. McElroy**
**Florida Bar No.: 845906**
dmcelroy@tlolawfirm.com
**Thomas & LoCicero**
**915 Middle River Dr., Suite 309**
**Ft. Lauderdale, FL 33304**
**(954) 703-3416 (Telephone)**
**(954) 400-5415 (Facsimile)**

**ATTORNEYS FOR DEFENDANTS**
**Dallas County Texas, Dallas County Sheriff's**
**Dept., and Melinda Christine Urbina**

**Peter L. Harlan**
**Assistant District Attorney**
pharlan@dallascounty.org
**Dallas County District Attorney's Office**
**Texas Bar. No. 09011300**
**133 N. Riverfront Blvd., LB 19**
**Dallas, Texas 75207-4399**
**(214) 653-3691 (Telephone)**
**(214) 653-2899 (Facsimile)**

**ATTORNEY FOR DEFENDANTS**
**Dallas County Texas, Dallas County Sheriff's**
**Dept., and Melinda Christine Urbina**
**Attorney Pro Hac Vice (Application Pending)**

## MOTION TO DISMISS

Defendants Dallas County, Texas ("Dallas County"), Dallas County Sheriff's Department ("DCSD"), and Melinda Christine Urbina ("Urbina") -- collectively "Dallas County Defendants" -- move pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3) and (6) to dismiss the complaint [ECF No. 1] and state:

### *INTRODUCTION*

At issue is a 90-page, 23-count *pro se* complaint.  The gist of it is that while living in Texas, Plaintiffs allegedly became the targets of a campaign by members of the Texas government, Texas judicial system, and Texas media, to destroy their reputations by portraying them as having murdered their adversary in a case pending before Dallas County District Judge Moye.

This motion is brought by three of the Defendants -- Dallas County, DCSD, and DCSD's spokesperson Urbina.   As alleged in ¶¶ 187-192 of the complaint, their role was limited.  Specifically, Urbina -- who was acting in her official spokesperson capacity (*see* Compl. ¶¶ 45-46) -- was allegedly quoted in the *Dallas Morning News* on May 15, 2016, in an article entitled *Dallas Judge Given Extra Security after Attorney's Death in Suspicious Fire*" as having said:

> Sheriff's officers were patrolling at [Judge] Moye's home because he was presiding over a high-profile civil case that prompted concerns for his safety…. Moye does not preside over criminal cases.  Urbina said bailiffs also had been told to be on alert…

(*Id.* ¶ 189)  Though Plaintiffs were not identified in those alleged remarks, Plaintiffs nevertheless blame these Defendants for failing to provide the press with additional details.  (*Id.* ¶¶ 190-192)  Based on that alleged misconduct, Plaintiffs have named them in 14 counts of their complaint, asserting theories of defamation, invasion of privacy, conspiracy, constitutional violations, federal statutory violations, and infliction of emotional distress.  In addition, Plaintiffs have named Dallas County and DCSD in 8 other counts based on their alleged participation with the City of Dallas

Police in unlawfully searching their home and arresting them -- which also occurred in Dallas County.

Before addressing the merits, this Court should be aware that Plaintiffs' efforts to draw this Court into their Texas controversy is blatant forum-shopping. They have already litigated this alleged smear campaign against Judge Moye and the *Dallas Morning News* in Texas. Not only did they lose all the way through appeal, but Plaintiff Aubrey was expressly declared to be a "vexatious litigator." (*See* Exh. A, *Vodicka v. A.H. Belo Corp.*, 2018 WL 3301592 (Tex. Ct. App. July 5, 2018)) Having lost in Texas, Plaintiffs now want a second round here in Florida, where they currently reside. To that end, they have merely repackaged their same basic conspiracy theory, added a bunch of new Texas defendants, and loaded it up with 90 pages of mostly self-serving commentary. As discussed below, not only are the legal claims against the Dallas County Defendants legally unsustainable, but Plaintiffs also have no right to litigate any of this here.

### *SUMMARY OF ARGUMENT*

All claims against the Dallas County Defendants must be dismissed based on the threshold issues of personal jurisdiction. As alleged, the very statements upon which Plaintiffs have based their claims allegedly were spoken by a Texas governmental employee, authorized by Texas governmental entities, and made to a Texas daily newspaper while Plaintiffs were living in Texas. (*See, e.g.*, Compl. ¶¶ 33-35, 45-46, 187-192, 226) And all of the alleged misconduct by law enforcement occurred in Dallas County where Plaintiffs resided at the time. This scenario fails to satisfy Florida's long-arm statute, as confirmed by the attached declarations (*see* Exhs. B, C). Nor can Plaintiffs satisfy their burden to establish compliance with due process because, as the declarations show, the required nexus between these Defendants and Florida is completely absent. Alternatively, the case must be dismissed for lack of proper venue under the governing statute. Finally, even if this Court were to reach the merits of the claims asserted, Plaintiffs still lose because

there are fundamental flaws that render every single count unsustainable as a matter of law.

### *STANDARD FOR DISMISSAL*

In the context of ruling on a motion to dismiss for failure to state a cause of action, courts typically limit their analysis to the allegations of the complaint and view those allegations and plausible inferences thereon in favor of the plaintiff. *See, e.g.*, *Navia v. Nationstar Mortg. LLC*, No. 16-cv-62451-BLOOM-Valle, 2017 WL 5239895, at *2 (S.D. Fla. Mar. 3, 2017) (dismissing *pro se* case with prejudice for failure to state valid cause of action), *aff'd*, 708 F. App'x 629 (11th Cir. 2018). But even in that context, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Novak v. Bradshaw,* No. 18-cv-80630-BLOOM/Reinhart, 2018 WL 3586178, at *2 (S.D. Fla. July 26, 2018) (internal citation omitted).

The analytical paradigm is different as to lack of personal jurisdiction and improper venue. For those issues, the plaintiff bears the affirmative burden to make specific showings on both points in order to avoid dismissal. *See, e.g.*, *Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-cv-61317-BLOOM/Valle, 2017 WL 6547899, at *6 (S.D. Fla. Dec. 21, 2017). As explained below, Plaintiffs have failed in their evidentiary burden to demonstrate a valid basis for personal jurisdiction and proper venue, thereby requiring dismissal.

### *ARGUMENT NO. 1*

### ALL CLAIMS AGAINST DALLAS COUNTY DEFENDANTS MUST BE DISMISSED FOR LACK OF PERSONAL JURISIDICTION

This Court has specifically held that a plaintiff must not only make a *prima facie* showing of personal jurisdiction in the complaint itself, but must also refute any affidavits submitted by a defendant by producing evidence supporting jurisdiction. In this Court's own words:

> A plaintiff seeking to establish personal jurisdiction over a
> nonresident defendant bears the initial burden of alleging in the

> complaint sufficient facts to make out a prima facie case of jurisdiction. If a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the plaintiff then bears the burden of producing evidence supporting jurisdiction.

*Honus*, *supra*, at *6 (citations omitted).

As to the analytical framework for resolving personal jurisdiction, this Court has also been precise about what is expected of a plaintiff.  In dismissing and closing a recent case for lack of personal jurisdiction, this Court in *Honus* explained the applicable two-prong analysis as follows:

> A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements.  Thus, to determine whether the Court may exercise personal jurisdiction over a defendant, the Court engages in a two part inquiry.   *First*, the Court must determine whether Florida's long-arm statute [§ 48.193, Fla. Stat.] is satisfied because the defendant committed one of its enumerated acts that subject a party to jurisdiction within Florida.   *Second*, the Court must determine whether such exercise comports with due process.

*Honus*, *supra*, at *7 (emphasis added) (citations omitted).  The second prong thereof is, in turn, subject to its own three-part analysis, which is particularly stringent given its constitutional underpinnings.  As this Court has explained:

> The Eleventh Circuit has distilled the due process analysis into a three-part test: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* at *9 (internal quotations omitted); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-21 (11th Cir. 2009).  *Honus* expressly states that it is the *plaintiff's* burden to establish the first two parts of that due process test.  *Id.*  Plaintiffs fail at every step.

**A.**     _No Long-Arm Jurisdiction Exists_

In a disingenuous attempt to sue these Texas Defendants in this state, Plaintiffs simply conclude that "Defendants have entered into the State of Florida with sufficient minimal contacts and committed intentional torts in relation to Plaintiffs, or in the alternative, have committed tortious conduct outside of the State of Florida with the specific intent and knowledge that an injury would occur in the State of Florida."[1] (Compl. ¶ 17) This lone conclusory allegation is insufficient. By failing to allege any underlying factual support, Plaintiffs have not made the required _prima facie_ showing at all. Moreover, Plaintiffs have not and cannot satisfy their evidentiary burden to refute the accompanying declarations in which each Defendant expressly denies engaging in _any_ of the enumerated acts in § 48.193(1)(a) that would subject them to personal jurisdiction here. (_See_ Exh. B, Decl. of Urbina ¶¶ 16-21; Exh. C, Decl. of Brown ¶¶ 15-20) This deficiency alone warrants dismissal of all claims against these Defendants.

**B.**     _Violation of Due Process_

In addition, none of the three required showings for due process under _Honus_ can be satisfied. Each is separately discussed.

**1.**     _"Arise out of or Relate to" Element Missing_

This first requirement for due process is clearly missing. As the declarations reflect, these Defendants had no contacts with Florida in the context of this dispute, and Plaintiffs have no good-faith basis to claim otherwise. (_See_ Exh. B ¶¶ 4, 12, 16-21; Exh. C ¶¶ 10, 15-20) Because such contacts are non-existent, any claims against these Defendants could not possibly have

---

[1]     It is unclear why Plaintiffs have cited § 48.193(1)(b) in paragraph 17 of their complaint since that provision neither confers personal jurisdiction nor has any relevance to this case. That statute merely provides that "[n]otwithstanding any other provision of this subsection, an order issued, or a penalty or fine imposed, by an agency of another state is not enforceable against any person or entity incorporated or having its principal place of business in this state if the other state does not provide a mandatory right of review of the agency decision in a state court of competent jurisdiction."

"arisen out of or relate to" their contacts with Florida.

### 2.    *"Purposeful Availment" Missing*

This second requirement for due process requires that the "defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws." *Honus*, *supra*, at *9.  The accompanying declarations are clear that this is missing because Defendants conducted *no* activities within this state and thus did not "purposefully avail" themselves of any privilege or benefit of Florida law.  (*See* Exh. B ¶¶ 4, 12, 16-21; Exh. C ¶¶ 10, 15-20)  Moreover, Plaintiffs have no good-faith basis to claim otherwise, particularly given this Court's own recognized principles on the topic. In *Honus*, for example, this Court engaged in a detailed analysis of what "purposeful availment" encompasses.  Relying on the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) -- which "clarified the constrains that constitutional due process places on the exercise of personal jurisdiction," *Honus*, *supra*, at *11 -- this Court explained that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Id.* (citing *Walden*, 571 U.S. at 284).

To that end, this Court made several key observations based on *Walden* that are fatal to any notion that this essential component of due process can be satisfied in this case.[2] First, "the plaintiff cannot be the only link between the defendant and the forum." *Honus*, *supra*, at *11 (citing *Walden*, 571 U.S. at 285).  Second, "the relationship must arise out of contacts that the defendant himself creates with the forum state since due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant -- not the convenience of plaintiffs or third parties." *Id.* (internal quotations omitted) (corrections incorporated).  Third, "[d]ue process

---

[2]    As *Honus* makes clear, all of these basic principles from *Walden* apply across the board, even to intentional torts which are "expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Honus*, *supra*, at *12; *see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 880 (11th Cir. 2018).

requires that a defendant be haled into court in a forum State based on *his own affiliation* with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* (internal quotations omitted) (emphasis added). And fourth, "purposeful availment" cannot be based merely on the fact that a defendant's "infringing conduct caused harm to Plaintiff" in this state. *Id.* at *12; *see Walden*, 571 U.S. at 278 ("mere injury to a forum resident is not a sufficient connection to the forum" for due process purposes); *see also Saleh v. Fla.*, No. 3:17–CV–1465–J–34PDB, 2018 WL 2976049, at *8 (M.D. Fla. May 23, 2018), *adopted*, 2018 WL 2971045 (M.D. Fla. June 13, 2018) (dismissing complaint alleging conspiracy, unlawful arrest, and defamation where *pro se* plaintiff failed to allege that Nevada governmental defendants directed actions toward Florida). Given the contents of the complaint and the attached declarations, the exercise of personal jurisdiction here cannot survive *any* of these basic principles regarding "purposeful availment," much less all of them as required.

### 3. *"Fair Play and Substantial Justice" Missing*

As *Honus* reflects, this prong of the due process analysis focuses in large part on the burden to the defendant and the forum's interest in adjudicating the dispute. *Honus*, *supra*, at *13. Here, it is inconceivable that the citizens of Florida would have *any* interest in devoting substantial judicial resources to a case that involves an alleged conspiracy of Texas law enforcement, the Texas judiciary, and the Texas media, and that involves events that all took place in Texas. Moreover, since the vast majority of witnesses and evidence are located in Texas, the Defendants' burden in having to litigate in this jurisdiction would be particularly significant, and there is no reason to believe that these Defendants could have reasonably anticipated being haled into a Florida court on this matter. These points alone defeat any notion of "fair play and substantial justice" by forcing Defendants to litigate this matter here.

As a final point, the mere fact that Plaintiffs now reside in this jurisdiction is immaterial.

Indeed, in *Honus* this Court rejected the very notion that the plaintiff's residence in Florida was sufficient to satisfy the "fair play" prong -- particularly where the case "may be more appropriately heard in other jurisdictions more connected with the facts of this case." *Honus*, *supra*, at *13. The very same thing could be said here, with Texas being the more appropriate jurisdiction. (*See also* note 4 *infra*). Accordingly, Plaintiffs have not *and cannot* justify this Court exercising personal jurisdiction over the Dallas County Defendants, thereby necessitating dismissal.

### *ARGUMENT NO. 2*

### ALL CLAIMS AGAINST DALLAS COUNTY DEFENDANTS MUST BE DISMISSED BASED ON IMPROPER VENUE

This Court has specifically held that "the plaintiff has the burden of showing that venue in the forum is proper," and in so ruling the court may "consider matters outside the pleadings if presented in proper form by the parties." *See, e.g.*, *Crenshaw v. Specialized Loan Servicing, LLC*, No. 16-cv-81215-BLOOM, 2016 WL 4440511, at *1 (S.D. Fla. Aug. 23, 2016).

The applicable statute (28 U.S.C. § 1391(b)) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As such, there are three -- *and only three* -- possible options for proper venue. For the following reasons, not a single one of these three options has been or can be established here.

> ➢ ***28 U.S.C. § 1391(b)(1).*** This first option for venue is defeated by Plaintiffs' own allegations that *all* Defendants reside in Texas, not Florida. (Compl. ¶¶ 23-35) The attached

declarations confirm that.  (*See* Exh. B ¶ 3; Exh. C ¶¶ 4-5)[3]

➢      **_28 U.S.C. § 1391(b)(2)_.**  This second option likewise fails.  As reflected by the complaint and declarations, *all* of the alleged misconduct by these Defendants occurred solely in Texas, not Florida.  Indeed, there is simply no reasonable way to read the complaint's allegations and conclude that *anything* substantial occurred in Florida.  After all, as the complaint alleges, Urbina's statements were made in Texas to the *Dallas Morning News*, and the alleged misconduct of law enforcement occurred at or around Plaintiffs' home in Texas.  *See, e.g.*, *Brunner v. Tex. A&M Univ. 12th Man Found.*, 2015 WL 13650035, at *5 (S.D. Fla. June 23, 2015) (rejecting plaintiff's venue argument that minor events that occurred or will occur in Florida rose to the required level of a "substantial part" of events giving rise to claim).

➢      **_28 U.S.C. § 1391(b)(3)_.**  This third *and final* option for venue is defeated by the very fact that there is another venue in which this case may be brought: Texas.  Plaintiffs already know this because they spent years litigating (and ultimately losing) claims based on the same essential conspiracy theory that forms the basis for their 90-page complaint here. This is simply their second round. If they want to continue litigating this matter, they must do it in Texas where it belongs.[4]  There is simply no good-faith basis for them to be clogging up the judicial

---

[3]      While that point alone defeats venue under the first option, it is worth noting that Plaintiffs did not live in Florida either when the alleged misconduct occurred.  As alleged, Urbina made her statements to the press and the police arrested Plaintiffs in May of 2016 -- which was six months *before* Plaintiffs allegedly moved from Texas to Florida. (*See, e.g.*, Compl. ¶¶ 145, 189, 226) In any event, Plaintiffs' residence has no bearing on proper venue.  *See, e.g.*, *Doe v. Office of Kan. Sec. Comm'r*, 2017 WL 6557431, at *1–2 (S.D. Fla. Nov. 28, 2017) (dismissing case involving Kansas search warrant for "lack of venue" despite plaintiff's residence in Florida).

[4]      The fact that Plaintiff Aubrey is subject to a "vexatious litigator" order in Texas is no excuse for Plaintiffs to go forum-shopping here.  By its very terms, that order does not bar future litigation in Texas. (*See* Exh. A at *10) Rather, it merely places a condition on Plaintiff Aubrey's filing of new litigation there (*i.e.*, obtaining prior judicial permission), and it does not name Plaintiff Vodicka at all. *See id.*; *see generally Macleod v. Scott*, 2014 WL 5454382 (M.D. Fla. Oct. 27, 2014) (entry of a prefiling order which merely places conditions on further filings by *pro*

9

docket in this jurisdiction, which is recognized as having one of the busiest dockets in the country. *See, e.g., La Fontaine v. Signature Research, Inc.,* 2016 WL 880527, at *8 (S.D. Fla. Mar. 8, 2016).[5]  For these reasons, the case must be dismissed for improper venue. *See Brunner, supra,* at *5-6 (dismissing case where plaintiff failed to satisfy venue criteria in 28 U.S.C. § 1391); *see also* 28 U.S.C. § 1406(a) (authorizing dismissal or transfer where case is filed in wrong district).

### *ARGUMENT NO. 3*

### ALL FEDERAL CLAIMS AGAINST DALLAS COUNTY DEFENDANTS MUST BE DISMISSED ON THE MERITS

In Counts II-X and XXI,[6]  Plaintiffs pursue relief under 42 U.S.C. §§ 1981, 1983 and 1985 and the Americans-With-Disabilities Act ("ADA").  As shown below, none are legally sustainable.

**A.**      ***DCSD Not Subject to Suit***

As a threshold matter, Defendant DCSD is not a separate legal entity with the capacity to sue or be sued in its own name.  It must therefore be dismissed from this suit as a matter of law. *See Magnett v. Dallas Cty. Sheriff's Dep't,* 1998 WL 51355, at *1 (N.D. Tex. Jan. 20, 1998) (dismissing claims under 42 U.S.C. § 1983 because Dallas County Sheriff's Department [DCSD] is not entity subject to suit); *accord Keck v. Seminole Cty. Sheriff's Office,* 2010 WL 2822011, at *2 (M.D. Fla. July 16, 2010) (dismissing complaint because "Sheriff's Office is not *sui juris* and

---

*se* vexatious litigator does not bar that plaintiff from pursuing worthy legal challenges and does not render the forum inadequate; chronicling cases from other jurisdictions to same effect).

[5]      In paragraph 18 of their complaint, Plaintiffs attempt to justify venue because they believe that they cannot get a fair trial in Texas due to adverse publicity there.  That is irrelevant to a proper venue analysis.  Nothing in the venue statute (quoted in text above) gives any plaintiff the right to dictate venue based upon his or her personal belief that a fair trial cannot be had elsewhere.

[6]      Counts XVII to XIX, by their very nature, also seem implicitly grounded in 42 U.S.C. § 1983.  If so, they fail for the reasons set forth in this section. If not, they fail for the reasons set forth in Argument No. 4 below.  Either way, those claims cannot survive.

cannot be sued"); *see also Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1360 (S.D. Fla. 2016).

**B.**     *No Valid Claim Under 42 U.S.C. § 1981*

It is well settled that 42 U.S.C. § 1983 "contains the *sole* cause of action against state actors for violations of Section 1981." *See Butts v. Cty. of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) (emphasis added). Because the Dallas County Defendants are clearly state actors, the proper vehicle for recovery is *not* 42 U.S.C. § 1981, but rather is § 1983. *See also Bowe v. City of Hallandale Beach*, 2017 WL 5643311, at *4 (S.D. Fla. Jan. 24, 2017). As the next section explains, Plaintiffs have failed to state a valid cause of action under § 1983.

**C.**     *No Valid Claim under 42 U.S.C. § 1983*

The complaint blatantly ignores the strict limitations on local government liability under 42 U.S.C. § 1983. *See Whitaker v. Miami-Dade Cty.,* 126 F. Supp. 3d 1313, 1319 (S.D. Fla. 2015) (dismissing § 1983 claims against county for alleged excessive force by police and chronicling Supreme Court and Eleventh Circuit precedent as to limitations of such claims).[7] One such limitation is that such liability cannot be based on the doctrine of respondeat superior. *Id.*; *see also Novak*, *supra*, at *2. To that end, a county can only be held liable when the county's *own* official policy or custom has allegedly violated a plaintiff's federal rights. *Whitaker*, 126 F. Supp. 3d at 1319. On that point, a plaintiff is required to "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.* When a plaintiff pursues the latter route (which is the only conceivable option here since there was no official written policy), the plaintiff must show that the county had such a "widespread practice" that it was "so permanent and well settled as to

---

[7]     The *Whitaker* decision provides a very instructive and succinct summary of the basic § 1983 principles found in the watershed Supreme Court case *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), as well as *Monell*'s progeny in the Eleventh Circuit, including *Grech v. Clayton Cty.*, 335 F.3d 1326 (11th Cir. 2003), *Brown, infra*, and many others.

constitute a custom or usage with the force of law."  *Id.* at 1320 (citing *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)); *see also Kraus v. Martin Cty. Sheriff's Office*, 2018 WL 4201201, at *5 (11th Cir. Sept. 4, 2018) (ruling that § 1983 claim failed as a matter of law for lack of "policy or custom" at Martin County Sheriff's Office; defining "custom" as "a practice that is so settled and permanent that it takes on the force of law").  In addition, plaintiff must allege that the county has authority and responsibility for that policy/practice *and* must identify the specific county officials who have final policymaking authority thereof. *Whitaker*, *supra*, at 1320.

*None of those requirements -- much less all of them -- appear anywhere in the complaint.* Indeed, there is nothing alleged about any countywide policy.  There is nothing alleged about any county-wide custom.  And there is nothing alleged about any widespread practice.  Nor does the complaint identify any county official who possessed final policymaking authority.   The allegations are instead focused exclusively on isolated events involving Plaintiffs -- and only Plaintiffs.  That alone defeats any § 1983 claim as a matter of law, and all such claims must be dismissed.  *See Whitaker*, *supra*, at 1321 ("isolated incidents are insufficient to establish a custom or policy" under 42 U.S.C. § 1983); *see also Novak*, *supra*, at *3 (dismissing § 1983 claim against Palm Beach County Sheriff where plaintiff failed to allege "any other instances/occurrences" of alleged policy being applied); *Abrams-Jackson v. Avossa*, 2017 WL 1153895, at *3-4 (S.D. Fla. Mar. 28, 2017) (dismissing § 1983 claims for failure to identify specific widespread practice/custom); *Bowe*, *supra*, at *4-6 (dismissing §§ 1981/1983 claim against municipal police officers based on lack of allegations as to "widespread custom or practice").

In addition, as to Urbina specifically, she is merely alleged to have made certain incomplete statements to the press in her role as DCSD's spokesperson.  But there is no allegation tying that act to any violation of Plaintiffs' rights under the federal constitution or federal law, nor could there be.  Without that, there can be no § 1983 claim against her.  *See, e.g.*, *Doe v. Moore*, 410

F.3d 1337, 1342 (11th Cir. 2005) (affirming dismissal and observing that "[i]n order to succeed on a 42 U.S.C. § 1983 claim, [Plaintiffs] must show, among other things, that there was a violation of a right secured by the Constitution or federal law").

**D.** *No Valid Claim under 42 U.S.C. § 1985*

Plaintiffs have not identified which subsection of 42 U.S.C. § 1985 was allegedly violated, but based on the allegations made, it appears that they are pursuing subsection (3).

> To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010).   Additionally, a plaintiff must allege that the conspirators were "motivated by . . . racial or other class-based discriminatory animus."  *See Smith v. Belle*, 321 F. App'x 838, 845-46 (11th Cir. 2009) (affirming dismissal of claim under § 1985); *Kearson v. S. Bell Tel. & Telegraph Co.*, 763 F.2d 405, 407 (11th Cir. 1985) (same).

Any alleged § 1985(3) claim here fails at its very core.  The complaint does not even allege the threshold requirement of a conspiracy involving any Dallas County Defendants, much less provide any underlying factual allegations about it.  Nor does the complaint allege the required class-based discriminatory intent.  Dismissal is thus required.  *See, e.g.*, *Prescott v. Jefferson,* 2018 WL 3937045, at *2 (11th Cir. May 31, 2018) (finding that § 1985 claim was properly dismissed because "complaint made only naked assertions of conspiracy without any factual support"); *Abrams-Jackson, supra*, at *6 (S.D. Fla. Mar. 28, 2017) (observing that § 1985 claim was deficiently pled because plaintiff "must make particularized allegations that a conspiracy existed").

E.       *No Valid Claim Under ADA*

Plaintiffs have not asserted any valid ADA claim either.  As reflected by 42 U.S.C. § 12132, the goal of Title II of the ADA is to prohibit discrimination against a disabled person by reason of that person's disability.  To state a valid claim thereunder, a plaintiff must allege: (1) that he or she is a qualified individual with a disability; (2) that he or she was excluded from participation in or denied benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; *and* (3) this disability was the reason for the exclusion, denial of a benefit, or discrimination.  *See Burke v. Miami-Dade Cty.*, 2017 WL 4119625, at *10 (S.D. Fla. Sep. 18, 2017).  Not only must a complaint plead the elements, but underlying factual allegations must also be provided.  Without that, ADA claims cannot go forward -- no matter how sympathetic the underlying facts may sound.  *See id.* at *10 (dismissing ADA claim against county for failure to allege facts supporting required elements despite blind plaintiff's compelling allegations that police officers had wrongfully arrested him, then dropped him off in a dark secluded area miles from his home).

Here, all required elements have not even been pled, much less supported by any factual detail relating to these Defendants.  Indeed, there is no allegation that either Plaintiff is a "qualified individual" who possesses a recognized "disability" within the meaning of the ADA.  Nor is there any allegation showing that any County official had knowledge of any discrimination by its employees and failed to act.  *See, e.g.*, *Estate of Osorio v. Miami-Dade Cty.*, 717 F. App'x 957, 957-58 (11th Cir. 2018) (affirming dismissal of ADA claim for failure to plead that any county official knew of police officer's alleged discrimination and failed to act).  As such, no valid ADA claim has been asserted against these Defendants.

As to Urbina, there is no good-faith basis for Plaintiffs to have named her in any ADA claim.  It is well-settled that individuals cannot be held personally liable for this type of alleged

14

ADA violation.  *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ("there is no individual capacity liability under Title II of the ADA"); *accord Morgan v. Tucker*, 2016 WL 4765734, at \*10 (M.D. Fla. Sept. 13, 2016) (the ADA "do[es] not provide for individual liability, and only public entities may be liable…").  Moreover, none of the factual allegations relating to the ADA-based claims here (Counts IX and XX) involve any alleged misconduct by her.

**F.**      ***Qualified Immunity Bars Claims Against Urbina***

Adding to the legal impediments that bar suit against Urbina is the doctrine of qualified immunity.  This defense constitutes a full immunity from *suit* rather than just from liability and is properly raised in a Rule 12(b)(6) motion to dismiss such as this.  *See, e.g.*, *Burke*, *supra*, at \*8. Under this doctrine, government officials who have been sued in their individual capacities are afforded complete protection so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Moore v. Miami-Dade County*, 502 F. Supp. 2d 1224, 1232 (S.D. Fla. 2007).  The underlying rationale is to allow government officials to do their jobs "without the fear of personal liability or harassing litigation…."  *See Myrthil v. Schade*, No. 18-cv-60009-BLOOM/Valle,  2018 WL 3972183, at \*5 (S.D. Fla. Aug. 20, 2018) (granting dismissal of claim against police officers based on qualified immunity and closing case).  As this very Court recently observed, this doctrine "gives ample room for mistaken judgments" by an official and that "if reasonable public officials could differ on the lawfulness of the defendants' actions, the defendants are entitled to immunity."  *Id.* at \*6.  That is certainly a high bar for any plaintiff to overcome.

As this Court recognized in *Myrthil*, the first step for invoking qualified immunity is that the acts of the government official were within the scope of his or her discretionary authority when they occurred.  There is no dispute on that point here.  As Plaintiffs have alleged, Urbina was indeed serving in her role as the official spokesperson for DCSD when making her challenged

statements to the press.  (*See, e.g.*, Compl. ¶¶ 46-47, 189).  That being satisfied, the analysis moves to step two.  At this point, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the officer violated a constitutional right; and (2) that right was clearly established at the time of the incident."  *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009); *Myrthil*, *supra*, at *6.  As the recent decision in *Burke* explained in dismissing a complaint against police officers based on qualified immunity, a right is deemed "clearly established" in this context only if a reasonable official "would understand that his conduct violates that right," which in turn necessarily requires that the "official had fair warning and notice that his conduct violated the constitutional right in question."  *Burke*, *supra*, at *9.

Plaintiffs have not made any such allegations to defeat Urbina's immunity, much less satisfied the heightened pleading standard on this point.  *See, e.g.*, *Moore*, *supra* (dismissing all claims against police officers individually based on qualified immunity and recognizing heightened pleading standard).  Indeed, even the basics are missing here.  The complaint fails to identify what specific constitutional right Urbina allegedly violated, much less how she violated that right or that she was on notice that her conduct was wrong.  *See id.* at 1234 (dismissing complaint against county police officers based on qualified immunity where plaintiff failed to allege facts showing that any reasonable officer in his position "would have known that his or her conduct violated federal law").  Moreover, in rambling fashion, the relevant counts of the complaint merely recite a bunch of constitutional provisions that were allegedly violated by a bunch of defendants -- with no delineation by defendant.  That too is legally deficient in the qualified-immunity context.[8] *See id.* (also noting that plaintiff merely listed constitutional violations under the Fourth, Fifth, and Fourteenth Amendments "without differentiating between the various defendants").  All claims

---

[8]     In addition, the complaint in this case violates the "shotgun pleading" rule that prohibits each count in a complaint from merely adopting the allegations of all preceding counts. *Bowe*, *supra*, at *3-4.

against Urbina must therefore be dismissed.

### *ARGUMENT NO. 4*

### ALL STATE CLAIMS AGAINST DALLAS COUNTY DEFENDANTS MUST BE DISMISSED ON THE MERITS

In all remaining counts of their complaint, Plaintiffs have asserted claims based on state law.  As a threshold matter, the decision as to which state's law to apply to these claims (*i.e.*, Texas or Florida law) turns on which state had the "most significant relationship" to the dispute.  *See Coulter v. ADT Sec. Srvs.*, 2018 WL 3636852, at *3 (11th Cir. July 31, 2018) (affirming dismissal based on decision to apply law of Pennsylvania, which is where Plaintiff resided when alleged misconduct occurred); *Jeffers v. Kerzner Int'l Hotels Ltd.*, 2018 WL 3541855, at *2 (S.D. Fla. July 23, 2018) (granting dismissal based on resolution of choice-of-law issue in favor of the Bahamas).

*Texas is the only option here.*  Under the allegations pled, it is clear that Florida does not have *any* relationship to the claims against these Defendants, much less the "most significant" relationship.  As noted, every event involving the Dallas County Defendants occurred in Texas in May of 2016 -- six months before Plaintiffs even moved to Florida.  Texas law therefore applies.

**A.** *Governmental Immunity Bars All State Claims Against Dallas County Defendants*

All state claims asserted in this action are barred by the doctrine of governmental immunity, as embodied within the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code §§ 101.001, *et seq*.  The preclusive effect of this doctrine was addressed in an instructive decision issued this past month, in which the court rendered judgment dismissing all claims brought against a municipal entity in Texas.  Relying on a host of Texas Supreme Court authority, the decision provides a virtual roadmap to the law applicable here and highlights just how narrow the exceptions to governmental immunity are.  In the court's words:

> Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including *counties*, cities, and school districts. . . . A party suing a

17

> governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission. *Absent the state's consent to suit, a trial court lacks subject-matter jurisdiction. Id.* Section 101.021 of the TTCA provides a limited waiver of immunity if certain conditions are met. Section 101.021 has been interpreted to waive immunity in three general areas: use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.

*City of San Antonio v. Smith*, 2018 WL 3998664, at *2 (Tex. App. Ct. Aug. 22, 2018) (citations omitted) (emphasis added); *see also Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (dismissal required where government had not waived governmental immunity).

As the above case law teaches, Plaintiffs have the affirmative duty to plead and show that the government has waived immunity as to each of their claims, yet they have not done so as to *any* claim asserted. Nor can they. None of the claims asserted even arguably fall into any of the three categories of claims for which the government has waived immunity under § 101.021, as identified in *City of San Antonio*. Indeed, this case does not involve the "use of publicly owned automobiles." This case does not involve "premises defects." And this case does not involve "injuries arising out of conditions or use of property." While that alone sinks all of Plaintiffs' state claims, it is also well-settled that the government has *not* waived immunity for any intentional tort. *See Harris Cty., Tex. v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App. 1st Dist. 2005) (citing Tex. Civ. Prac. & Rem. Code § 101.057(2)). Accordingly, none of Plaintiffs' state claims can possibly survive the governmental-immunity doctrine. *See also Reynolds v. Dallas Cty.*, 2009 WL 2591192, at *5-6 (N.D. Tex. Aug. 21, 2009).

## B. *All State Claims Against Urbina Are Statutorily Barred*

The TTCA also contains an election provision that is fatal to all state claims against Urbina. Specifically, § 101.106 provides for dismissal as follows:

> (a)     The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the Plaintiff and immediately and *forever bars any suit or recovery* by the Plaintiff against any individual employee of the

governmental unit regarding the same subject matter.

\*\*\*

(e)    If a suit is filed under this chapter against a governmental unit and any of its employees, the *employees shall immediately be dismissed* on the filing of a motion by the governmental unit.  (Emphasis added)

Application of this statute is very straightforward here.  Under subsection (a), by including Dallas County in every single claim asserted against Urbina, Plaintiffs have made an "irrevocable election" to recover against the County, and that "forever bars any suit or recovery" against Urbina. Under subsection (e), Urbina "shall immediately be dismissed" from this lawsuit.  *See also Salazar-Limon v. City of Houston*, 97 F. Supp. 3d 898, 909-910 (S.D. Tex. 2015), *aff'd,* 826 F.3d 272 (5th Cir. 2016) (dismissing state claims against police officer because same claims asserted against city); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1006–07 (S.D.  Tex. 2014), *aff'd,* 803 F.3d 754 (5th Cir. 2015) (dismissing state claims against government employees under § 101.106(e)).

**C.**    *All State Claims Against Urbina Are Barred By Official Immunity*

Texas has a state-law counterpart to the federal "qualified immunity," and it is called "official immunity."  Under this Texas doctrine, government officers performing discretionary functions are shielded from liability for civil damage claims arising under Texas law.  The elements of this defense are: (1) the performance of discretionary duties, (2) within the scope of the government employee's authority, and (3) performed in good faith.  *See*, e.g., *Waller v. City of Fort Worth Tex.*, 2018 WL 1757779, at \*18 (N.D. Tex. Apr. 12, 2018). While there are some minor differences between how the tests for the federal and state immunities are articulated, it is nevertheless routinely recognized that the "Texas law of official immunity is substantially the same as federal qualified immunity." *See Eisenbach v. Zatzkin*, 728 F. App'x 307, 312 (5th Cir. 2018); *see also Waller, supra*, at \*18. As *Waller* explains, "[l]ike the [qualified immunity] federal standard from which it is derived, Texas's good-faith test is one of objective legal reasonableness."

Just as Plaintiffs' federal claims are barred by qualified immunity (*see supra* at Argument No. 3, § F), so too are the state-law claims under Texas' official immunity. After all, as the complaint itself reflects, Urbina is being sued merely for speaking to the press about current events involving the Sheriff's Office.  There is nothing objectively unreasonable about that.  Indeed, she was just doing her job.  She is therefore entitled to be dismissed from this lawsuit.

### *CONCLUSION*

Defendants -- Dallas County, Texas; Dallas County Sheriff's Department; and Melinda Christine Urbina -- request that the Court dismiss all of the Plaintiffs' claims asserted against them and enter such additional relief as the Court deems just and proper.


Respectfully submitted,

/s/ Dana J. McElroy
DANA J. MCELROY
Florida Bar No. 845906
dmcelroy@tlolawfirm.com
Thomas & LoCicero PL
915 Middle River Dr., Suite 309
Ft. Lauderdale, FL  33304
(954) 703-3416 (Telephone)
(954) 400-5415 (Facsimile)


ATTORNEYS FOR DEFENDANTS
Dallas County Texas, Dallas County Sheriff's
Dept., and Melinda Christine Urbina

/s/ Peter L. Harlan
PETER L. HARLAN
Assistant District Attorney
pharlan@dallascounty.org
Texas Bar No. 09011300
 Frank Crowley Courts Building
 133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
 (214) 653-3691 (Telephone)
 (214) 653-2899 (Facsimile)


ATTORNEY FOR DEFENDANTS
Dallas County Texas, Dallas County Sheriff's
Dept., and Melinda Christine Urbina
Attorney Pro Hac Vice (Application Pending)

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on this **10th** day of **September, 2018**, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF.  I also certify that the foregoing document is being served on this date to all other counsel or pro se parties listed below, either via transmission of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Steven Benton Aubrey, Pro Se
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

Brian Edward Vodicka
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

/s/ Dana J. McElroy
DANA J. MCELROY
Attorney