# EXHIBIT A

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 2 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

2018 WL 3301592
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas, Dallas.

Brian E. VODICKA, Appellant
v.
A.H. BELO CORPORATION and Eric Vaughn Moyé, Individually, Appellees

No. 05-17-00728-CV
|
Opinion Filed July 5, 2018

On Appeal from the 116th Judicial District Court, Dallas County, Texas, Trial Court Cause No. DC-16-12693

**Attorneys and Law Firms**

Brian E. Vodicka, Wilton Manors, FL, pro se.

Demetri Anastasiadis, Texas Attorney General, Austin TX, James C. McFall III, Lindsey Marsh, Paul C. Watler, Jackson Walker L.L.P., Dallas TX, Michael Tobolowsky, Tobolowsky P.C., Dallas TX, for Appellee A.H. Belo Corporation, et al.

Demetri Anastasiadis, Texas Attorney General, Austin TX, for Appellee Moye, Eric.
Before Justices Lang-Miers, Myers, and Boatright

## MEMORANDUM OPINION

Opinion by Justice Lang-Miers

*1 This appeal arises from a lawsuit claiming defamation filed by appellant Brian E. Vodicka and Steven B. Aubrey.[1] In four issues appellant Vodicka argues that the trial court erred in granting appellee A.H. Belo Corporation's motion to dismiss with prejudice under the Texas Citizen Participation Act, granting appellee Judge Eric V. Moyé's motion to dismiss with prejudice under rule of civil procedure 91a, denying Vodicka's motion to recuse the trial court judge, and declaring that Aubrey was a vexatious litigant. We affirm.

## BACKGROUND

Appellant Vodicka and Aubrey filed a lawsuit seeking damages for claimed defamation against Belo and Judge Moyé and other defendants. Vodicka and Aubrey based their claims on articles published in the *Dallas Morning News* and statements made during a court hearing by appellee Judge Moyé relating to the alleged arson murder of Dallas attorney Ira Tobolowsky.

Judge Moyé filed a motion to dismiss under rule of civil procedure 91a. *See* TEX. R. CIV. P. 91a. Belo filed a motion to dismiss under the Texas Citizen Participation Act (TCPA) codified at chapter 27 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003 (West 2015). Aubrey—but not Vodicka—filed a response to Belo's motion to dismiss under the TCPA. Judge Moyé also filed a motion asking the court to declare Aubrey a vexatious litigant under section 11.054 of the civil practice and remedies code, in which Belo also joined. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.054 (West 2002). Vodicka and Aubrey subsequently filed a notice of nonsuit "of their entire case against" Belo, Judge Moyé, and other defendants that was "effective immediately" and "without prejudice to refiling." The trial court then issued an order declaring that Aubrey was a vexatious litigant. Vodicka filed a motion to recuse the trial court judge, which was denied.[2]

After a hearing, the court granted Judge Moyé's motion to dismiss with prejudice under rule 91a. The court found "that the allegations in [the] Petition, as to Judge Moyé do not set forth sufficient facts to defeat a judge's judicial immunity" and "that all claims made against Judge Moy[é] allege conduct taken within his jurisdiction and judicial capacity and [are] barred [by] judicial immunity." The court also concluded that "the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of" rule of civil procedure 13 and awarded sanctions of $1,000 against Vodicka and Aubrey jointly and severally. The court also granted Belo's motion to dismiss with prejudice under the TCPA and awarded Belo attorney's fees, expenses, and a sanction against Vodicka and Aubrey jointly and

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 3 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

severally.

The court subsequently issued a final judgment in favor of Belo and Judge Moyé that stated that the trial court "recognized" that Vodicka and Aubrey filed a notice of nonsuit "pursuant to which they notified the Court and the Parties that 'they are taking a nonsuit of their entire case' against Belo, Judge Moy[é]," and other defendants. In the final judgment, the court found that Judge Moyé's motion to dismiss under rule 91a and motion for sanctions under rule 13 and Belo's motion to dismiss under the TCPA should be granted and that "all causes of action asserted by" Vodicka and Aubrey against Belo and Judge Moyé were dismissed with prejudice so that Vodicka and Aubrey "shall take nothing from Belo and [Judge] Moyé in this action."[3]

**\*2** The final judgment awarded Belo attorney's fees, expenses, and a $25,000 sanction against Vodicka and Aubrey, jointly and severally. The final judgment also awarded Judge Moyé $1,000 in sanctions against Vodicka and Aubrey, jointly and severally, pursuant to rule of civil procedure 13. In addition, the final judgment ordered that the trial court's "Order Declaring Steven B. Aubrey a Vexatious Litigant" "in its entirety, is included herein by reference and shall be considered a part of this Final Judgment, remaining in full force and effect indefinitely." Vodicka—but not Aubrey—filed a notice of appeal.

### BELO'S MOTION TO DISMISS

In his first issue, Vodicka argues that the trial court erred in granting Belo's motion to dismiss with prejudice under the Texas Citizen Participation Act. A TCPA motion to dismiss seeks dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). If the trial court dismisses an action under the TCPA, the statute states that the court shall award to the movant reasonable attorney's fees, court costs, other expenses, and sanctions. *Id.* § 27.009(a).

Vodicka filed a nonsuit of his "entire case" against Belo. Generally, a plaintiff may dismiss a case or take a nonsuit at any time before it introduces all of its evidence, excluding rebuttal evidence. TEX. R. CIV. P. 162. But dismissal by nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief[.]" *Id.* "And a defendant's TCPA motion to dismiss is a claim for affirmative relief." *Duchouquette v. Prestigious Pets, LLC*, No. 05-16-01163, 2017 WL 5109341, at \*3 (Tex. App.—Dallas Nov. 6, 2017, no pet.) (mem. op.); *see Rauhauser v. McGibney*, 508 S.W.3d 377, 382 (Tex. App.—Fort Worth 2014, no pet.) (per curiam), *overruled on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting that motion to dismiss under the TCPA may afford more relief than a nonsuit, including dismissal with prejudice, sanctions, and attorney's fees).

In his third amended brief, Vodicka argues (1) that the trial court erred in granting Belo's motion to dismiss under the TCPA because Belo relied on "**unlawfully and illegally obtained sealed records to support its publications defaming**" Vodicka and Aubrey and (2) that the evidence that Vodicka presented constituted a prima facie case for the elements of his claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (providing a "court may not dismiss a legal action under" the TCPA "if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question").

### Sealed Documents

In his third amended brief, Vodicka argues that Belo relied upon unlawfully and illegally obtained sealed court documents to "support its defamatory publications" and "Belo's right to free speech does not extend to use of illegally obtained information." Belo denies the allegations. Importantly, however, only Aubrey—and not Vodicka—filed a response to Belo's TCPA motion to dismiss. And although Vodicka states that "Belo has the audacity to tell this Court that Vodicka never responded to its motion to dismiss[,]" Vodicka then cites to the record of Aubrey's response to Belo's motion to dismiss. The "Sealing Orders" and arguments concerning the sealed documents do not appear in the record before this Court except as submitted by Aubrey, a non-party to this appeal, in his response and attachments to his response. As a result, Vodicka did not present to the trial court this complaint regarding Belo unlawfully using sealed records as evidence supporting its motion to dismiss and this complaint is not before us on appeal.[4] *See Norris v. Tenet Houston Health Sys.*, No. 14-04-01029-CV, 2006 WL 1459958, at \*8 n.14 (Tex. App.—Houston [14th Dist.] May 30, 2006, no pet.) (mem. op.) (party waived argument on appeal that trial court erred in disregarding her response to motion to dismiss where she did not identify the location of her response in the record or

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 4 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

provide argument or evidence of the contents of her response and record did not include response to motion to dismiss).

### Prima Facie Case

*3 We review de novo the trial court's determination concerning whether Vodicka met his burden to present clear and specific evidence to establish a prima facie case for each element of his claim. *See Watson v. Hardman*, 497 S.W.3d 601, 605 (Tex. App—Dallas 2016, no pet.). To recover for defamation, a plaintiff must prove that the defendant (1) published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) while acting with negligence, if the plaintiff was a private individual, and (4) which caused damages, unless the defamatory statements were defamatory per se. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *Campbell v. Clark*, 471 S.W.3d 615, 624 (Tex. App—Dallas 2015, no pet.).

Among other arguments, Belo contends that Vodicka did not establish the element that Belo published a false statement of fact. "Truth is a defense to all defamation suits" for "there is no defamation liability if the gist" of the publication "is substantially true." *Neely v. Wilson*, 418 S.W.3d 52, 56 (Tex. 2013). "[T]he substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). "We determine a" publication's "gist or meaning by examining how a person of ordinary intelligence would view it." *Neely*, 418 S.W.3d at 64; *see McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990) ("The test used in deciding whether the broadcast is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been."). In addition, a publication "can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all of the story's individual statements considered in isolation were literally true or non-defamatory." *Neely*, 418 S.W.3d at 64 (quoting *Turner*, 38 S.W.3d at 114). "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim." *Neely*, 418 S.W.3d at 62.

Vodicka argues both that Belo "ma[de] false statements" and that Belo "juxtaposed statements that implicated" Vodicka and Aubrey in "Tobolowsky's death."[5] Vodicka states that "[n]either Vodicka nor Aubrey have ever been convicted, indicted, arrested, charged with, or even named as suspects in, the ongoing homicide investigation of Tobolowsky." He argues that the gist "of Belo's publications without question gave a 'person of reasonable intelligence' the impression that" Vodicka and Aubrey "were connected to the murder of Tobolowsky" and states that "Belo convinced its readers that" Vodicka and Aubrey "were criminals guilty of capital murder."

In his brief, Vodicka quotes excerpts from five *Dallas Morning News* articles from May 13, May 15, May 18, and May 27, 2016.[6] Two of these articles are not in the record and, as a result, are not before us on appeal.[7] Of the statements that he identifies from the articles that are in the record, he does not indicate which of these statements he contends are false or that he presented a prima facie case concerning their falsity.

*4 In addition, Vodicka argues that the statement in one article that the defamation lawsuit was "an extraordinarily 'nasty lawsuit' " and the statement in another article that it was "high-profile" were not accurate. He notes that Tobolowsky's brother-in-law stated that "we might have known there was a big case going on, but I didn't know much of the details[.]" But whether a lawsuit was "nasty" or "high-profile" is "not verifiable as false" and, as a result, cannot form the basis of a defamation claim. *See Neely*, 418 S.W.3d at 62; *see also Dallas Morning News, Inc. v. Tatum*, No. 16-0098, 2018 WL 2182625, at *16 (Tex. May 11, 2018) ("[S]tatements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions.").[8]

In his reply brief, Vodicka identifies fourteen statements that "are false." Nine of these are statements from articles in the record.[9]

- Judge Moyé said in court Wednesday that he was voluntarily removing himself from the case because of Aubrey and "his implications in the death of Mr. Tobolowsky." The record reflects that Judge Moyé made this statement.

- "Tobolowsky's lawyer in the case, Steve Schoettmer, said Wednesday that [Judge] Moyé was appropriately concerned for his safety." Vodicka does not argue that Schoettmer did not make this statement, but rather that Schoettmer "had absolutely no basis to make that statement."

- "The lawsuit claims Aubrey openly called his fight with his brother and mother 'jihad'." The record reflects that this statement accurately reflects what the lawsuit claimed.

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 5 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

- "Dallas police detectives and a marked crime scene vehicle were at the apartment where Vodicka lives on Glen America Drive on Wednesday morning. But it was not clear whether investigators spoke with Aubrey or Vodicka." Vodicka states "[t]his was a true statement."

- "Police officials would not comment on whether detectives have interviewed either man in connection with Tobolowsky's death." Vodicka argues conclusively that "[p]olice never once said the names of Plaintiffs or anybody else, in connection with the murder of Mr. Tobolowsky." He does not provide any evidence supporting his argument.

- "He said that Tobolowsky 'was universally loved, and this was the only individual that I'm aware of that had any excessive ill will towards him,' Schoettmer said this week, referring to Aubrey." Vodicka argues in his brief—without further argument or evidence—that "Tobolowsky was NOT universally loved."

- "In Tobolowsky's lawsuit against Aubrey and Vodicka, he alleges that Aubrey referred to his fight with his family as 'jihad' and later used the same term to describe his battle with Tobolowsky." On appeal, Vodicka argues that "Aubrey never referred to his fight as anything" and that Schoettmer "made up this ridiculous assertion." The record reflects that this statement accurately states allegations in Tobolowsky's lawsuit.

- "Tobolowsky's lawsuit argues that Aubrey used 'intentional lies, fraud, defamatory statements, and 'dirty tricks' " to get the lawyer to stop representing Aubrey's mother. Vodicka argues that Tobolowsky never represented his mother, but instead represented his brother. The record reflects that this statement accurately states arguments in Tobolowsky's lawsuit.

*5 • "In court filings in the defamation case, Aubrey and Vodicka fired back at Tobolowsky, comparing him to 'ISIS radicals.' " "Like an ISIS butcher, Tobolowsky butchers the truth causing mayhem amongst the halls of justice[.]" These court filings are not in the record, and Vodicka does not present any argument that this statement does not accurately reflect the contents of court documents.

We conclude that Vodicka has not established by clear and specific evidence that any of these statements are false.

Vodicka also argues that the "gist" of the articles was false because the "publications without question gave a 'person of reasonable intelligence' the impression that" Vodicka and Aubrey "were connected to the murder of Tobolowsky" and **"The 'Gist' is Plaintiffs are murderers[.]"** *See Dallas Morning News, Inc.*, 2018 WL 2182625, at *14 ("In a gist case, the court must 'construe the publication "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it.' " " (quoting *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) ) ). Vodicka contends that "Belo cannot continually publish articles that feature Plaintiffs and the Tobolowsky murder and claim the article is not defamatory because there is not an untrue statement." He contends that "Belo falsely convinced it [sic] general public readers that" Vodicka and Aubrey "were the only persons of interest, exhibiting Belo's malice."

We disagree. Construing the articles "as a whole in light of the surrounding circumstances" and "based upon how a person of ordinary intelligence would perceive it," *id.*, the gist of the articles was that Ira Tobolowsky died under suspicious circumstances, law enforcement were investigating his death, Vodicka and Aubrey were being investigated but that they had not been charged with a crime and the investigation was broad-ranging, and Tobolowsky, Aubrey, and Vodicka had made various allegations against each other in filings in court cases during the years leading up to Tobolowsky's death. Of the articles that Vodicka relies upon and that are in the record, only the May 18, 2016 and May 27, 2016 articles mention Vodicka and Aubrey.

In the May 18, 2016 article, *Judge steps down from civil case after Dallas lawyer's suspicious death*, the article discussed Judge Moyé recusing himself from the case between Tobolowsky and Aubrey and his statement that he did so because of "Aubrey and 'his implications in the death of Mr. Tobolowsky.' " It also discussed Tobolowsky's death and a Dallas Fire-Rescue official's comments that the fire involved in Tobolowsky's death was " 'suspicious in nature' but" they had "not determined arson was the cause[,]" that the Dallas County medical examiner's office had "not ruled on Tobolowsky's cause of death[,]" and that police officials had "not said whether it is being investigated as a homicide." The article discussed the lawsuit filed by Tobolowsky against Aubrey and Vodicka, the previous lawsuit that Tobolowsky filed as attorney for Aubrey's brother and mother against Aubrey, and related statements in court filings. It also stated that a sheriff's department spokeswoman "did not say which case prompted" security concerns and extra security measures that Judge Moyé received and stated that Tobolowky's attorney Schoettmer

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 6 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

"would not comment on whether he believed Aubrey was a threat and did not say whether he thought the man was involved in Tobolowsky's death." The article also stated that "Aubrey has not been accused of a crime" and that "[b]oth men could not be reached for comment this week."

*6 The May 27, 2016 article that is in the record, *Prominent Dallas lawyer's nasty lawsuit gets attention in his death*, discussed the "grief and unanswered questions" surrounding Tobolowsky's death and stated:

> Authorities have yet to rule on either the cause of Tobolowsky's death or the fire, other than to label it as "suspicious." Despite the lack of a medical examiner's ruling, Dallas police have assigned a homicide detective to the case, though no suspects have been named.
>
> "Our investigation is wide-ranging in regards to whether or not anybody's a suspect," said Dallas [P]olice Assistant Chief Randy Blankenbaker, who oversees investigations. Tobolowsky has "been a pillar in the legal community for a long time, so there's a broad spectrum of investigative follow-up."
>
> Many of those close to Tobolowsky can't help but wonder if the diminutive lawyer's legal cases had anything to do with his gruesome demise, and some of his friends have publicly said they believe he was killed. But the Tobolowsky family hasn't gone that far yet. They just want answers.

The article discussed Tobolowsky as an accomplished attorney, and then discussed the defamation suit that he filed against Aubrey and Vodicka and stated "[t]he men could not be reached for comment by phone or at their home." The article also stated, "Neither Aubrey nor Vodicka, a lawyer, has been accused of a crime." It then stated that police detectives and a crime scene vehicle were at Vodicka's apartment and that it was unclear if investigators spoke with Aubrey or Vodicka or whether police had interviewed them. The article then discussed the court cases and statements in filings in the cases involving Aubrey, Vodicka, and Tobolowsky, and prior legal fights involving Vodicka and his relatives. The article also stated that Tobolowsky's friend and attorney Schoettmer said "that Tobolowsky 'was universally loved, and this was the only individual that I'm aware of that had any excessive ill will towards him,' ... referring to Aubrey." It also stated that Judge Moyé had recused himself and had referred to "Aubrey's implication in the death of Mr. Tobolowsky."

In addition, Vodicka quotes numerous comments that readers posted to the five articles that he relies upon "as an ideal sampling of persons with reasonable intelligence as proof Belo achieved its desired purpose, convincing its readers" that Vodicka and Aubrey "were guilty of capital murder." Vodicka does not state any basis for his claim that the readers who posted comments represented "an ideal sampling of persons with reasonable intelligence[.]" In addition, the comments often did not concern the contents of the articles but instead provided additional and separate information. As a result, we conclude that Vodicka has not established that the comments indicate how "a person of ordinary intelligence would view" the alleged defamatory statements in the articles. *See Neely*, 418 S.W.3d at 64.[10]

*7 We conclude that the "gist" of the articles—which concern Tobolowsky's death, investigations that were proceeding concerning his death, court cases involving Tobolowsky, Aubrey, and Vodicka and the tenor of those cases, and Judge Moyé's recusal and statements at a hearing—is not false. Although the articles discussed Aubrey and Vodicka's contentious legal history with Tobolowsky and indicate that police had investigated them after (but not necessarily in connection with) Tobolowsky's death, the articles stated that neither had been accused of a crime, and included the police statement that the "investigation is wide-ranging in regards to whether or not anybody's a suspect" and stated that "[a]uthorities have yet to rule on either the cause of Tobolowsky's death or the fire, other than to label it as 'suspicious.' " Construing the articles as a whole, we disagree with Vodicka's argument that the gist of the articles is that Vodicka and Aubrey are murderers and disagree that Belo "falsely convinced it[s] general public readers that" Aubrey and Vodicka "were the only persons of interest[.]"[11]

We conclude that Vodicka did not establish by clear and specific evidence a prima facie case for the essential element of his defamation claim that Belo published a false statement of fact. As a result, we conclude that the trial court did not err in granting Belo's motion to dismiss under the TCPA. We overrule Vodicka's first issue.

## JUDGE MOYÉ'S MOTION TO DISMISS

In his second issue, Vodicka argues that the trial court erred in dismissing with prejudice claims against Judge Moyé under rule 91a of the rules of civil procedure. *See* TEX. R. CIV. P. 91a. Vodicka and Aubrey's first

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 7 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

amended petition states a claim of defamation against Judge Moyé:

> [Judge] Moy[é] publically stated Plaintiff Aubrey's name and unambiguously charged Plaintiff Aubrey with the murder. Dallas Morning News, and many television stations, published [Judge] Moy[é]'s shocking accusation:
>
>> **"[Judge] Moyé stated in court Wednesday that he was voluntarily removing himself from the case because of <u>Aubrey</u> and "his implications in the death of Mr. Tobolowsky.**" (Emphasis added.)
>
> These are the words the media held onto and published and republished for months to destroy Plaintiffs' reputations. As of the date this amended petition is filed, no legal authority, news organization or even another person, has made such a statement or claim, as did [Judge] Moy[é].

Judge Moyé made the statements at issue during a hearing in this case on May 18, 2016. Judge Moyé stated:

> The record will reflect that I've conferred with Mary Murphy, who is the Regional Presiding Judge in this matter.
>
> There have been three Motions for Recusal which have been filed in this case. I think in two of them this Court has declined to recuse itself and has had that declination affirmed by the Presiding Judge.
>
> I think at this point with the allegations which have been made related to Mr. Aubrey and his implication in the death of Mr. Tobolowsky and related issues, I don't think that it is unreasonable for a judge other than myself to hear this case. And so I've conferred with Judge Murphy, and we have agreed that a voluntary recusal is appropriate at this time.

The first amended petition recognizes that the allegedly defamatory statements concerned Aubrey: Judge "Moy[é] publically stated Plaintiff Aubrey's name and unambiguously charged Plaintiff Aubrey with the murder." Vodicka, who filed this appeal, does not argue that Judge Moyé defamed him personally but he maintains that he had standing to contest the motion to dismiss the defamation claim. Standing is a component of subject-matter jurisdiction. *Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 497 (Tex. App.—Dallas 2014, no pet.). "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Id.* "A plaintiff must affirmatively show, through pleadings and other evidence pertinent to the jurisdictional inquiry, a distinct interest in the asserted conflict, such that the defendant's actions have caused the plaintiff some particular injury." *Id.*

**\*8** Vodicka argues that he has standing to bring this claim because he was not a third party, but a co-party and Aubrey's spouse. As authority, he cites *Obergefell v. Hodges*, 135 S.Ct. 2584, 2604 (2015). *Obergefell* held that "couples of the same-sex may not be deprived" of the fundamental constitutional right to marry, *id.*, but *Obergefell* did not concern standing of a spouse in claims for injuries suffered by their spouse. And Vodicka does not provide any authority for his contention that a "punitive court designation of a party aligned in the same interest prejudices the other parties." Rather, a "defamatory statement must be directed at the plaintiff as an ascertainable person to be actionable." *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Newspapers Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960) ). "A family member does not have a cause of action based on the defamation of another family member." *Id.* (citing *Renfro Drug Co. v. Lawson*, 160 S.W.2d 246, 250 (Tex. 1942) ); *see id.* at 14 (holding that wife and daughter of one plaintiff did not have standing to bring defamation claims when defamatory statements concerned the plaintiff).

Vodicka also argues that "the Trial Court's Judgment held Vodicka 'jointly' liable for $1,000 Sanctions, based, in part, on Plaintiffs' challenge of the 'vexatious' claim" and Judge "Moyé cannot now argue that Vodicka was not adversely prejudiced." The trial court's order granting Judge Moyé's motion to dismiss under rule 91a and awarding sanctions under rule 13 stated, "The Court further concludes that sanctions should be awarded against Plaintiffs in the amount of $1,000. The Court finds that the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of" rule of civil procedure 13. The court assessed the $1,000 sanction jointly and severally against Aubrey and Vodicka. But a sanction under rule 13 does not implicate standing, but rather results when a court concludes that an attorney or party violated rule 13 by signing a document that was "groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. The court can sanction "the person who signed it, a represented party, or both." *Id.* Both Aubrey and Vodicka signed their petition. We conclude that the $1,000 sanction resulted from their signing a petition that the court concluded was "brought in bad faith, is groundless and brought for the purpose of harassment" and did not implicate standing.

Vodicka also argues that he "brought his own claims for

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 8 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

his own injuries[,]" and he refers to Belo's publication of his name, apartment, and personal history in an article. But Vodicka does not describe or provide legal authority for his contention that his own claims for separate injuries give him standing in a claim that statements defamed Aubrey. He also references the release of statements by Judge Moyé's office to NBC's The Today Show and by Judge Moyé's re-election campaign, some of which he claims Belo reported. He argues that "[t]hese statements directly involved Vodicka, who is not some random person seeking to piggy-back off of a tort claim for personal injury for loss of consortium, derived from somebody else." Vodicka contends that he "has suffered as a direct result from statements [Judge] Moy[é] surreptitiously released to the media." But Vodicka does not explain how his claim that these "statements directly involved" him establishes a basis for his standing in the claim that Judge Moyé defamed Aubrey.

Vodicka also states the additional arguments that "loss of consortium concerns the intangible elements of the union[,]" "[i]f someone publically accused [Judge] Moy[é] of murder, certainly his wife would suffer" and he "sought general damages, independent from Aubrey, specifically for mental anguish." But he does not provide authority or argument to establish how these arguments provide a basis for his standing in the defamation claim against Judge Moyé.

*9 We conclude that Vodicka lacks standing to appeal the grant of Judge Moyé's motion to dismiss under rule 91a of the rules of civil procedure.[12] We resolve Vodicka's second issue against him.

## MOTION TO RECUSE

In his third issue, Vodicka argues that the trial court erred in denying his motion to recuse the trial court judge. Vodicka filed a motion to recuse "complaining of Judge Donald Cosby pursuant to Rule 18 of the Texas Rules of Civil Procedure[.]" Judge Stephen B. Ables[13] issued an order denying Vodicka's motion to recuse, finding "that the Motion does not comply with Rule 18a." The order stated:

> The undersigned finds that each matter of noncompliance set out below is independently sufficient for Summary Denial for Noncompliance. The nature of the noncompliance is as follows:

> 1. The Motion does not state with detail and particularity facts that if proven would be sufficient to justify recusal. See Rule 18a (a) (4); and

> 2. The Motion is based solely on the Judge's rulings in the case. See Rule 18a (a) (3).

> 3. The Motion is not verified as required by Rule 18(a).

We review a denial of a motion to recuse for abuse of discretion. TEX. R. CIV. P. 18a(j) (an order denying a motion to recuse is reviewable for abuse of discretion on appeal from final judgment); *Rammah v. Abdeljaber*, 235 S.W.3d 269, 274 (Tex. App.—Dallas 2007, no pet.). A court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Rammah*, 235 S.W.3d at 274.

In order to recuse a judge, a party must comply with the procedural requirements of rule of civil procedure 18a. *Id.* That rule requires that the motion to recuse be verified, must not be based solely on the judge's rulings in the case, and must state with detail and particularity facts that, if proven, would be sufficient to justify recusal. TEX. R. CIV. P. 18a(a); *see Rammah*, 235 S.W.3d at 274. "Texas courts have consistently held that the procedural requirements of rule 18a are mandatory." *Rammah*, 235 S.W.3d at 274; *see Carson v. Serrano*, 96 S.W.3d 697, 698 (Tex. App.—Texarkana 2003, pet. denied) (stating party "may not complain about the judge's failure to recuse himself because" the party "did not follow the procedure prescribed by Rule 18a"); *Gill v. Tex. Dep't of Criminal Justice*, 3 S.W.3d 576, 579 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("If a party does not comply with the mandatory requirements of Rule 18a, he waives his right to complain of a judge's refusal to recuse himself.").

With respect to the third "matter of noncompliance" listed in the order, Vodicka argues on appeal that he "filed a verified Motion for Recusal" but does not provide further argument concerning the verification of his motion. He attached a declaration to his motion for recusal that stated his name, date of birth, and address and described events in 2017 that he described as "harassment caused by the Tobolowsky family" and their agents. In the declaration, after stating his personal information and before describing the events in 2017, he stated, "I declare under penalty of perjury that the foregoing and the following statements are true and correct." He signed the declaration and the motion to recuse. But the record reflects that Vodicka did not verify the statements about Judge Cosby that are the basis for the motion to recuse. *See In re*

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 9 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

*K.M.L.*, 443 S.W.3d 101, 109 (Tex. 2014) (applying Black's Law Dictionary's definition of "verification" as "(1) [a] formal declaration made in the presence of an authorized officer, such as a notary public ...; whereby one swears to the truth of the statements in the document [or]; (2) [a]n oath or affirmation that an authorized officer administers to an affiant or deponent" and definition of "verify" as "(1) [t]o prove to be true; to confirm or establish the truth or truthfulness of; to authenticate; [or] (2) [t]o confirm or substantiate by oath or affidavit; to swear to the truth of") (quoting BLACK'S LAW DICTIONARY 1793 (10th ed. 2009) ).

**\*10** Because we conclude that Vodicka's motion to recuse did not comply with the requirement under rule 18a that a motion to recuse be verified, it is not necessary for us to address the other two "matters of noncompliance" described in the order denying Vodicka's motion to recuse.[14] We resolve Vodicka's third issue against him.

### DECLARATION OF AUBREY AS VEXATIOUS LITIGANT

In his fourth issue, Vodicka argues that the trial court erred in declaring Aubrey to be a vexatious litigant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.054. In its order declaring Aubrey a vexatious litigant, the trial court concluded that Aubrey met "the criteria for finding that a plaintiff is a vexatious litigant" as set forth in section 11.054 of the civil practice and remedies code. *Id.* The trial court ordered Aubrey to "furnish $25,000 in order to proceed" with this case by paying that security to the district clerk, ordered that Aubrey was "prohibited from filing, *pro se*, any new litigation in a district or statutory county court without permission of the appropriate local administrative judge of such district or statutory county court," and ordered that "a clerk of court may not file a litigation, original proceeding, appeal, or other claim presented, *pro se*," by Aubrey "in a district or statutory county court unless he first obtains an order from the appropriate local administrative judge[.]"

Belo and Judge Moyé argue that Vodicka does not have standing to appeal the order declaring Aubrey to be a vexatious litigant. Vodicka argues that he has standing because he "had a stake in the case as a party with similar interests." He states many of the same arguments that he made regarding his standing to appeal the trial court's grant of Judge Moyé's motion to dismiss under rule 91a. Citing *Obergefell*, 135 S.Ct. at 2604, Vodicka argues that he has standing to bring this claim because he was not a third party as Judge Moyé contends, but a co-party and Aubrey's spouse. As discussed above, *Obergefell* held that "couples of the same-sex may not be deprived" of the fundamental constitutional right to marry; *id.*, it did not concern standing of a spouse in claims for injuries suffered by their spouse. And Vodicka does not provide any authority for his contention that a "punitive court designation of a party aligned in the same interest prejudices the other parties."

Vodicka argues that Belo incorrectly argues that he lacks standing because he cannot show that "his interest has been prejudiced by the adverse ruling[.]" He contends that "Belo forgets the Trial Court's Judgment held Vodicka 'jointly' liable for [Judge] Moyé's sanctions of $1,000.00, based in part, on Plaintiffs' challenge of the 'Vexatious' issue when Vodicka demonstrated for the Trial Court that this exact issue was being litigated for the third time."[15] The trial court assessed sanctions of $1,000 jointly and severally against Vodicka and Aubrey under rule 13. As discussed above, the order stated, "The Court further concludes that sanctions should be awarded against Plaintiffs in the amount of $1,000. The Court finds that the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of" rule of civil procedure 13. The final judgment likewise ordered Vodicka and Aubrey, jointly and severally, to pay Judge Moyé $1,000 pursuant to rule 13 of the rules of civil procedure. Neither the order nor the final judgment relate the $1,000 sanction to the " 'Vexatious' issue[.]" In addition, as stated above, a sanction under rule 13 does not concern standing, but rather results when a court concludes that an attorney or party violated rule 13 by signing a document that was "groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13.[16]

**\*11** "Only the party whose primary legal right has been breached may seek redress for the injury." *Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Vodicka has not shown that his "primary legal right has been breached" by the declaration of Aubrey as a vexatious litigant. *See Guardianship of L.S.*, No. 14-15-00494-CV, 2017 WL 1416190, at \*5 n.11 (Tex. App.—Houston [14th Dist.] Apr. 18, 2017, pet. denied) (mem. op.) (concluding party who was "the person the probate court declared a vexatious litigant" had standing to appeal that declaration). We conclude that Vodicka does not have standing to appeal the order declaring Aubrey to be a vexatious litigant. We resolve Vodicka's fourth issue against him.

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 10 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

### BELO'S REQUEST FOR DAMAGES UNDER RULE 45

Belo requests "just damages" under rule 45 of the rules of civil procedure arguing that Vodicka's appeal is "objectively frivolous and has caused Belo to incur damages in the form of fees and costs associated with filing this brief." After considering the record, briefs, and other papers filed in this Court, we may award just damages to each prevailing party if we determine that an appeal is frivolous. TEX. R. APP. P. 45; *Archer v. Tunnell*, No. 05-15-00459-CV, 2016 WL 519632, at *4 (Tex. App.—Dallas Feb. 9, 2016, no pet.) (mem. op.). Recovery is authorized if an appeal is objectively frivolous and injures an appellee. *Solares v. Solares*, 232 S.W.3d 873, 883 (Tex. App.—Dallas 2007, no pet.). An appeal is frivolous when the record, viewed from the perspective of the advocate, does not provide reasonable grounds for the advocate to believe that the case could be reversed. *Archer*, 2016 WL 519632, at *4. The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with caution and prudence and only after careful deliberation. *Id.* Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *Id.* After considering the record, briefs, and other papers filed, we decline to impose appellate sanctions against Vodicka. We deny Belo's request for damages for a frivolous appeal.

### CONCLUSION

We resolve Vodicka's four issues against him. We affirm the trial court's judgment. We deny Belo's motion for damages for a frivolous appeal.

**All Citations**

Not Reported in S.W. Rptr., 2018 WL 3301592

Footnotes

1   Aubrey is not before this Court on appeal.

2   Aubrey also filed a separate motion to disqualify or recuse the trial court judge, which was also denied.

3   The final judgment also ordered that all causes of action asserted against other defendants were also dismissed.

4   Likewise, Vodicka's discussion of other arguments that Aubrey stated in his response to Belo's motion to dismiss in his brief are not before us on appeal.

5   Vodicka interweaves his arguments that the statements published by Belo were false with his argument that the statements were defamatory. Because our disposition concerns whether Vodicka presented prima facie proof of the defamation element that the statements were false, it is not necessary for us to discuss Vodicka's arguments that the statements were defamatory. *See Bentley v. Bunton*, 94 S.W.3d 561, 587 (Tex. 2002) ("That a statement is defamatory—that is, injurious to reputation—does not mean that it is false, and vice versa.").

6   Vodicka quotes three statements from a May 15, 2016 article, *Dallas judge given extra security after attorney's death in suspicious fire*:
    • Sheriff's officers were patrolling at Eric V. Moyé's home because he was presiding over a high-profile civil case that prompted concerns for his safety, sheriff's spokeswoman Melinda Urbina said. [Judge] Moyé does not preside over criminal cases.
    • Investigators are looking into whether any of his clients may have wanted revenge.
    • Members of [Judge] Moyé's re-election campaign said the judge warned officials of a possible connection between Tobolowsky's death and litigation being handled by [Judge] Moyé's court.
    Vodicka also identifies statements from an article published May 18, 2016, *Judge steps down from civil case after Dallas lawyer's suspicious death*:

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 11 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

> - A district judge on Wednesday removed himself from overseeing a civil suit involving a Dallas lawyer found dead last week in a suspicious house fire.
> - Aubrey and his partner, Brian Vodicka, were both named in the lawsuit filed by Tobolowsky. Vodicka, a lawyer, and Aubrey were representing themselves in the case.
> - Judge Eric V. Moyé had presided over a lawsuit between attorney Ira Tobolowsky and Steven Aubrey, an Austin resident. Tobolowsky was found dead[.]
> - [Judge] Moyé said in court Wednesday that he was voluntarily removing himself from the case because of Aubrey and "his implications in the death of Mr. Tobolowsky."
> - During this time, he "pursued a hostile course of action to harass, intimidate and embarrass them," according to a defamation lawsuit Tobolowsky filed against Aubrey and Vodicka. Both men could not be reached for comment this week.
> - The lawsuit claims Aubrey openly called his fight with his brother and mother "jihad."
> - ... the family has not decided whether to go forward with the lawsuit against Aubrey and Vodicka.
>
> Vodicka quotes statements from a May 27, 2016 article, *Prominent Dallas lawyer's nasty lawsuit gets attention in his death*:
> - Last year, Tobolowsky filed a defamation suit in Dallas County against Steven Aubrey and his partner, Brian Vodicka. The men could not be reached for comment by phone or at their home.
> - Dallas police detectives and a marked crime scene vehicle were at the apartment where Vodicka lives on Glen America Drive on Wednesday morning.
> - Vodicka and his brother, Gary, made headlines during a four-year legal battle with Southern Methodist University. Gary Vodicka sued SMU when the school bought condo units to make way for the George W. Bush Presidential Center.
> - The brothers were involved in their own legal fight then over who owned the condos in question. Gary Vodicka and the school eventually reached a settlement.
>
> Vodicka also argues that this "one article" published on May 27 referenced Aubrey twenty-six times and Vodicka fifteen times, totaling forty-one times "in one article about the arson murder of Tobolowsky."

7   Vodicka points to statements in two articles published on May 13, 2016 and May 27, 2016 that are not in the record. Vodicka attaches these articles to his brief. "Documents attached to a brief that are not formally included in the record are not properly before the court of appeals and may not be considered by this Court." *Petterson v. JGMS Invs. LLC*, No. 05-15-01286-CV, 2016 WL 6124134, at *2 (Tex. App.—Dallas Oct. 20, 2016, no pet.) (mem. op.).

8   Vodicka also states that one year after Tobolowsky's death, *D Magazine* revealed that the authorities had a list of "persons of interest" that included "many names" but that "Belo exclusively and selectively chose" Vodicka and Aubrey "in prosecuting their 'trial by media.' " But the *D Magazine* article that Vodicka cites is not in the record before us on appeal. *See Patterson*, 2016 WL 6124134, at *2 (stating documents attached to a brief that are not formally included in the record are not properly before the court of appeals and cannot be considered by the court).

9   Three of the statements are comments posted by readers to the articles, discussed below, and one is from an article not in the record.

10  In his reply brief, Vodicka also argues that three of the comments are "false." He does not cite to any authority for the proposition that Belo should be held liable for the comments that third parties posted to its online articles.

11  Vodicka alleges that "Belo spoliated all of the blog comments associated with the articles." Because he includes no argument or citations to authority, Vodicka has presented nothing for us to review concerning his spoliation contention. *See* TEX. R. APP. P. 38.1(i). In addition, in his reply brief, Vodicka first raises constitutional arguments and arguments regarding "public concern" under the TCPA. "[W]e do not consider arguments raised for the first time in a reply brief." *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 803 n.5 (Tex. App.—Dallas 2011, no pet.).

12  Because of our conclusion that Vodicka lacks standing, it is not necessary for us to address the arguments of Vodicka and Judge Moyé concerning judicial immunity.

13  Judge Ables was assigned to hear the motion by the Chief Justice of the Supreme Court of Texas. *See* TEX. R. CIV. P. 18a(f), (g), (i).

14  In the section of his third amended brief concerning the motion to recuse, Vodicka contends (1) that he had a right to a telephonic hearing and (2) that phone calls between attorneys for the Tobolowskys and the trial court reflects Judge Cosby's "bias and prejudice." Because Vodicka's motion did not comply with the requirements of rule 18a, it is not necessary for us to address these arguments. *See Rammah*, 235 S.W.3d at 274; *Gill*, 3 S.W.3d at 579.

Case 0:18-cv-61117-BB   Document 54-1   Entered on FLSD Docket 09/10/2018   Page 12 of 12

Vodicka v. A.H. Belo Corporation, Not Reported in S.W. Rptr. (2018)

15   Vodicka also states that the trial court "was aware that [Judge] Moy[é] actually issued the second Order (when Aubrey could not be present to defend the action)" and contends "Belo forgets the Trial Court held Vodicka jointly liable for $25,000.00 Sanctions, in part due to this adverse issue." But Vodicka does not further argue or provide citations to the record or authority to establish how these statements provide a basis for his standing to challenge on appeal the order declaring Aubrey to be a vexatious litigant.

16   As noted above, both Aubrey and Vodicka signed their petition.

---

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.