IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

STEVEN BENTON AUBREY and          )
BRIAN EDWARD VODICKA,             )
                                  )
            Plaintiffs,           )
                                  )         Case No. 18-cv-61117-BLOOM-VALLE
      v.                          )
                                  )
D MAGAZINE PARTNERS, L.P.         )
d/b/a D MAGAZINE, MAGAZINE        )
LIMITED PARTNERS, L.P.,           )
ALLISON MEDIA, INC.,              )
JAMIE L. THOMPSON,                )
ROBERT L. ERMATINGER, JR.,        )
SCOTT ROBERT SAYERS,              )
STEPHEN CHARLES SCHOETTMER,       )
ERIC VAUGHN MOYE,                 )
DALLAS POLICE DEPARTMENT,         )
CITY OF DALLAS,                   )
MELINDA CHRISTINE URBINA,         )
DALLAS COUNTY SHERIFF'S DEPT.,    )
DALLAS COUNTY, TEXAS, and         )
DOES 1-10,                        )
all of whose true names are unknown, )
                                  )
            Defendants.           )
_____)


**DEFENDANTS D MAGAZINE PARTNERS, L.P. F/K/A MAGAZINE LIMITED
PARTNERS, ALLISON MEDIA, INC., AND JAMIE THOMPSON'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
<u>AND IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

I.          INTRODUCTION ................................................................................................. 1

II.         STATEMENT OF FACTS .................................................................................. 3

     A.    Plaintiffs' allegations are all based on Dallas events ................................... 3

     B.    D Magazine is based in Dallas and lacks sufficient contacts with Florida ............. 5

     C.    Thompson has no relevant contacts with Florida ...................................... 6

III.        ARGUMENT AND AUTHORITIES .................................................................. 6

     A.    Defendants are not subject to personal jurisdiction in Florida ............................ 6

          1.   Legal standard ........................................................................................ 7

          2.   Exercising personal jurisdiction over Defendants would not comport with due process ................................................................................... 8

               a.   Defendants do not have a substantial connection with Florida ....... 8

               b.   The exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice ................................... 12

     B.    Venue is improper in this district and the case should be dismissed ................... 14

     C.    Alternatively, the Court should transfer the case to the Northern District of Texas for the convenience of the parties and witnesses and in the interest of justice ....................................................................................................... 15

          1.   This case could have been brought in the Northern District of Texas ...... 16

          2.   The convenience to the parties and witnesses and the interests of justice weigh in favor of transfer ............................................................. 16

               a.   The convenience of parties and witnesses, location of sources of proof, and the availability of process to compel witness attendance (factors 1-3 and 5) all favor transfer .......................... 16

               b.   The locus of operative facts (factor 4) favors transfer ................. 17

               c.   The relative means of the parties (factor 6) favors transfer .......... 18

               d.   The governing law (factor 7) favors transfer ............................... 18

               e.   Plaintiffs' choice of venue (factor 8) should be given little weight ..................................................................................... 19

               f.   Trial efficiency and the interest of justice (factor 9) favors transfer ................................................................................... 19

IV.        PRAYER .......................................................................................................... 20

Pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a), Defendants D Magazine Partners, L.P. d/b/a D Magazine (formerly known as Magazine Limited Partners, L.P.) and Allison Media, Inc. (collectively "D Magazine") and Jamie Thompson (collectively with D Magazine, "Defendants") move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper venue or, alternatively, transfer the case to the Northern District of Texas, and respectfully show the Court the following.

## I.    INTRODUCTION

Defendants are not subject to personal jurisdiction in this district and venue is improper. Defendants are not Florida residents and have neither purposely availed themselves of the laws of Florida nor aimed their conduct at Florida, negating any basis for personal jurisdiction.  And traditional notions of fair play and substantial justice do not support the exercise of personal jurisdiction.  Moreover, venue is improper because no substantial part of the alleged events or omissions on which Plaintiffs' claims are based occurred in this district.

D Magazine is based in Dallas, Texas and publishes a Dallas-centric magazine, *D Magazine*, that is targeted at residents of the Dallas area.  The article at issue, "A Place Where Something Evil Happened" (the "Article") is about the murder of a Dallas lawyer in his Dallas home that is being investigated by Dallas authorities.  In fact, Plaintiffs Steven Aubrey and Brian Vodicka (collectively, "Plaintiffs"), whose claims against Defendants are based on the Article, lived in Dallas at the time of the murder.

D Magazine does not target Florida residents with its content, advertisements, or subscription efforts, and more than 97 percent of D Magazine's print publications are distributed in Texas. Because D Magazine lacks any substantial connection to Florida, exercising jurisdiction over D Magazine here would violate due process.

This Court also lacks jurisdiction over Thompson.  Thompson is a freelance reporter who

authored the Article.  Thompson does not live or work in Florida and was at all times a resident of Dallas while researching and writing the Article.  Other than Aubrey (who moved from Dallas to Florida after the events discussed in the Article occurred, but shortly before the Article was published), Thompson did not communicate with anyone in Florida, much less set foot in Florida, while researching or writing the Article.  Accordingly, Thompson, like D Magazine, has insufficient contacts with Florida for the Court to exercise personal jurisdiction.

Venue is also improper in this district, as no substantial part of the alleged events or omissions giving rise to Plaintiffs' claims occurred here.  In fact, a quick glance at the case caption demonstrates how Dallas-centric Plaintiffs' claims are.  Plaintiffs have sued the City of Dallas, Dallas County, Dallas law enforcement entities, a Dallas judge, current and former Dallas detectives, a Dallas County employee, and a Dallas attorney—all in addition to Defendants (a Dallas magazine and freelance writer)—based on alleged acts that occurred in Dallas.  The Article was about Dallas events, was written and researched in Dallas by a then Dallas resident, and was primarily distributed in the Dallas metropolitan area.  While Plaintiffs moved to this district a few months before the Article was published, that fact is insufficient to establish venue, and venue is thus improper in this district.

Because this Court lacks personal jurisdiction over Defendants and venue is improper in this district, the Court should dismiss Plaintiffs' claims against Defendants pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure.  Alternatively, even if jurisdiction exists and venue is proper, the Court should transfer the case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.

## II.    STATEMENT OF FACTS

**A.    Plaintiffs' allegations are all based on Dallas events.**

Plaintiffs' allegations against Defendants are based on Dallas events.  Plaintiffs allege

that the Article, about the unsolved murder of Dallas attorney Ira Tobolowsky in his Dallas home

and the subsequent investigation into his murder by Dallas authorities, defamed them and

invaded their privacy.[1]  The Article was researched and written by Thompson in Dallas and

published by D Magazine in Dallas.[2]  It describes Tobolowsky's relationship with the Plaintiffs,

which began when Aubrey's mother, a Dallas resident, hired Tobolowsky to represent her in

litigation with Aubrey in Dallas.[3]  The Article also describes a defamation suit Tobolowsky filed

against Plaintiffs in Dallas and Tobolowsky's successful effort to have Aubrey declared a

vexatious litigant in Dallas County courts.[4]  It also describes Plaintiffs' defamation suit against

the *Dallas Morning News* and others (including some Defendants in this case) in Dallas.[5]

The Article discusses that, as part of the investigation, Dallas detectives executed

multiple search warrants in Dallas and searched the Plaintiffs' two Dallas apartments for

evidence relating to Tobolowsky's death.[6]  It describes how Plaintiffs were taken into custody by

Dallas authorities, and that Aubrey testified before a Dallas County grand jury.[7]  Additionally,

the Article discusses the Dallas Police Department's struggles to investigate the high number of

murders in Dallas that year (with only half being solved), in part due to early officer retirements

during a pending financial crisis with the Dallas Police and Fire Pension Fund.[8]

---

[1] Dkt. 1, Plaintiffs' Complaint ("Compl."), Dkt. 1 at ¶¶ 235-74, 323-28, 362-406, Compl. Exs. E-F.
[2] Ex. A, Declaration of Jamie Thompson ("Thompson Decl.") at ¶¶ 2-4; Ex. B, Declaration of Thomas Earnshaw ("Earnshaw Decl.") at ¶¶ 9, 11.
[3] Ex. B-1, Article.
[4] Ex. B-1, Article; *see also* Ex. C-1, Feb. 12, 2016 Order Granting Defendants' Motion to Determine Vexatious Litigant and for Sanctions.
[5] Ex. B-1, Article; *see also* Ex. C-1, First Amended Petition.
[6] Ex. B-1, Article; *see also* Dkt. 1 at Compl. Ex. E, Dallas County Search Warrants.
[7] Ex. B-1, Article.
[8] Ex. B-1, Article.

The Article additionally discusses the efforts of Tobolowsky's son, Michael, of Dallas, to keep Tobolowsky's law practice running while at the same time trying to solve his father's murder.[9]  Further, the Article describes how the Tobolowskys retained private investigators to assist with finding the killer, and how an investigator interviewed Vodicka in a Dallas hotel room after Aubrey had been arrested by Dallas authorities for prostitution at another Dallas hotel.[10]  The Article also discusses the investigators' interview of Aubrey's brother, Tom, in Dallas.[11]

Although the legal grounds are wide ranging, Plaintiffs' twenty-three count complaint against thirteen defendants has a single common thread—Dallas, Texas.  In fact, in addition to Defendants, Plaintiffs have sued the City of Dallas and Dallas County, a county employee, Dallas law enforcement entities and agents, a Dallas judge, and a Dallas attorney.[12]

It should be noted that Plaintiffs previously brought very similar defamation claims against the owner of the *Dallas Morning News* and several named defendants in this lawsuit in Dallas state court.[13]  As here, Plaintiffs alleged that the newspaper made defamatory statements about the Plaintiffs' involvement in Tobolowsky's murder.[14]  The trial court dismissed the suit, declared Aubrey a vexatious litigant, and sanctioned Plaintiffs.[15]  On appeal, the Dallas Court of Appeals upheld the dismissal, finding that Vodicka had failed to demonstrate that any of the alleged defamatory statements were false.[16]  Presumably dissatisfied with the Dallas forum, Plaintiffs have now brought similar claims here in Florida.

---

[9] Ex. B-1, Article.
[10] Ex. B-1, Article.
[11] Ex. B-1, Article.
[12] *See* Dkt. 1, Complaint at ¶¶ 23-35.
[13] Ex. C-1, First Amended Petition.
[14] Ex. C-1, First Amended Petition.
[15] Ex. C-2, Feb. 2, 2017 Order Declaring Steven B. Aubrey a Vexatious Litigant and Prefiling Order ("Feb. 2, 2017 Order"); C-3, Mar. 1, 2017 Order Granting A.H. Corporation's Motion to Dismiss Under Chapter 27 of the Texas Civil Practice and Remedies Code.
[16] *See Vodicka v. A.H. Belo Corporation*, No. 05-17-00728-CV (Tex. App.—Dallas Jul. 5, 2018, no pet. h.), *available at* http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=7d819e1d-7ea7-425c-8b1b-51461ead754a&coa=coa05&DT=Opinion&MediaID=737dec84-8b58-482a-a085-b3bb8deb3cc8.

**B.    D Magazine is based in Dallas and lacks sufficient contacts with Florida.**

Both D Magazine Partners, L.P. and its general partner, Allison Media, Inc. are Texas entities with their principal office in Dallas.[17]   D Magazine has no offices or employees in Florida or anywhere else outside of Texas.[18]   Since 1974, D Magazine has published Dallas-centric content regarding a variety of issues impacting Dallas residents.[19]   The Article is an example of such Dallas-centric content, and all of the D Magazine employees who worked to fact-check, edit, and publish the Article worked in Dallas.[20]

All print copies of the May 2017 issue of *D Magazine*, in which the Article appeared, were printed in Dallas County, Texas.[21]   In addition to print subscriptions delivered by mail, D Magazine also delivers its magazines to readers through newsstand sales (grocery stores, drug stores, etc.) and to Dallas-area hotels.[22]   D Magazine did not distribute any copies of its May 2017 issue to newsstands or hotels in Florida.[23]

D Magazine printed 72,460 copies of the May 2017 *D Magazine* issue containing the Article, 70,587 (97 percent) of which were distributed in Texas.[24]   Of the 72,460 copies, only 124 (0.17 percent) were sent to subscribers in Florida, and at most 31 (0.055 percent) were sent to this district.[25]   D Magazine only delivered copies of the May 2017 issue to existing subscribers in Florida.[26]

While the Article was also published on D Magazine's website, and was conceivably viewable anywhere in the world with Internet access, nothing about D Magazine's online

---

[17] Ex. B, Earnshaw Decl. at ¶ 4.
[18] Ex. B, Earnshaw Decl. at ¶ 4.
[19] Ex. B, Earnshaw Decl. at ¶ 6.
[20] Ex. B, Earnshaw Decl. at ¶ 8; Ex. B-1, Article.
[21] Ex. B, Earnshaw Decl. at ¶ 9.
[22] Ex. B, Earnshaw Decl. at ¶ 9.
[23] Ex. B, Earnshaw Decl. at ¶ 9.
[24] Ex. B, Earnshaw Decl. at ¶ 10.
[25] Ex. B., Earnshaw Decl. at ¶ 10.
[26] Ex. B, Earnshaw Decl. at ¶¶ 9-10.

publication of the Article was directed at the Florida market.[27]

## C.   Thompson has no relevant contacts with Florida.

At the time she wrote the Article, Thompson lived in Dallas.[28]   Thompson performed all of her work researching and writing the Article while in Dallas, and did not set foot in Florida while writing the Article.[29]   Thompson visited several physical locations, including Dallas courts, the Tobolowsky residence (where Tobolowsky was murdered), Tobolowsky's law office, and various homes and restaurants for interviews while researching and writing the Article, but all were in Dallas.[30]   Thompson interviewed at least 33 sources while researching and writing the Article.[31]   Of those, at least 28 lived in Dallas, two lived elsewhere in Texas, and three lived outside of Texas.[32]   The only source Thompson spoke with who lived in Florida was Aubrey, and Thompson only communicated with him by e-mail.[33]   When Thompson initially emailed Aubrey for comment, she did not know where he lived.[34]

After writing the Article, Thompson played no role in publishing or distributing the May 2017 issue of *D Magazine*.[35]   Thompson has recently moved from Dallas to Maryland and does not conduct any business in Florida.[36]

## III.    ARGUMENT AND AUTHORITIES

## A.    Defendants are not subject to personal jurisdiction in Florida.

Defendants have not purposefully availed themselves of the privilege of conducting activities within Florida, and Defendants could not have foreseen being haled into court in

---

[27] Ex. B, Earnshaw Decl. at ¶¶ 6, 11.
[28] Ex. A, Thompson Decl. at ¶¶ 3-4.
[29] Ex. A, Thompson Decl. at ¶ 4.
[30] Ex. A, Thompson Decl. at ¶ 8.
[31] Ex. A, Thompson Decl. at ¶ 5.
[32] Ex. A, Thompson Decl. at ¶5.
[33] Ex. A, Thompson Decl. at ¶¶ 5-7.
[34] Ex. A, Thompson Decl. at ¶ 7.
[35] Ex. A, Thompson Decl. at ¶ 2.
[36] Ex. A, Thompson Decl. at ¶ 3.

Florida based on publishing the Article, primarily distributed in Texas, discussing Dallas-based sources and events. Further, exercising personal jurisdiction over Defendants in Florida would not comport with fair play and substantial justice. Accordingly, Defendants are not subject to the personal jurisdiction in Florida, and all claims against them should be dismissed.

### 1.    Legal standard.

Plaintiffs "bear[] the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal jurisdiction with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

This Court may exercise personal jurisdiction over a nonresident if doing so is consistent with both the Florida long-arm statute and federal due process requirements. *Id.* Florida's long-arm statute includes several enumerated actions that can subject one to personal jurisdiction, including "committing a tortious act within Florida." FLA. STAT. § 48.193 (1)(a)(1), (2).[37]

To satisfy constitutional due process requirements, a plaintiff must establish that a "defendant's suit-related conduct" created a "substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). To do so, a plaintiff must establish that (1) its claims arose out of or are related to the defendant's contact with the forum and (2) the defendant has purposefully availed itself of the privilege of conducting activities within the state, invoking the benefit of the forum state's laws. *Louis Vuitton*, 736 F.3d at 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Even if the plaintiff meets this initial burden, personal

---

[37] The Florida Supreme Court has recognized that the Florida long-arm statute has a broader reach than federal due process requirements allow. *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1206-07 (Fla. 2010). Because exercising jurisdiction over Defendants would violate federal due process, this motion does not address whether jurisdiction would be proper under the Florida long-arm statute.

jurisdiction should still not be exercised if a defendant establishes that the exercise of jurisdiction

would violate traditional notions of fair play and substantial justice.  *Id.*

### 2.  Exercising personal jurisdiction over Defendants would not comport with due process.[38]

#### a.  Defendants do not have a substantial connection with Florida.

Exercising personal jurisdiction over Defendants would be improper because Defendants'

suit-related conduct created no substantial connection with Florida.  At most, Plaintiffs allege

that Defendants are subject to personal jurisdiction in Florida because the Article was accessible

in Florida and Plaintiffs felt harm in Florida.[39]   These allegations fall far short of demonstrating

a "substantial connection" sufficient to comport with due process. *Walden*, 571 U.S. at 284.

Purposeful availment can be evaluated under the effects test or the traditional minimum

contacts test.  *Louis Vuitton*, 736 F.3d at 1356.  Under the effects test, an intentional tort can

support a finding of personal jurisdiction only when it is aimed at the forum state.  *Id.* (citing

*Calder v. Jones*, 465 U.S. 783 (1984)).  Under the minimum contacts test, jurisdiction can be

exercised if, based on their conduct, Defendants should have reasonably anticipated being haled

into court in Florida. *Id.* at 1357.  Under either test, jurisdiction is only proper if "the defendant's

suit-related conduct . . . create[s] a substantial connection with the forum State." *Aviation One of

Florida, Inc. v. Airborne Ins. Consultants Pty., Ltd.,* 722 Fed. App'x 870, 879 (11th Cir. 2018)

(quoting *Walden*, 571 U.S. at 284).

The Supreme Court has twice given guidance about when personal jurisdiction is proper

over a nonresident defendant who has allegedly defamed the plaintiff—once under the effects

---

[38] Plaintiffs have only alleged that Defendants are subject to specific jurisdiction in Florida.  *See* Dkt. 1, Complaint at ¶ 17 (alleging minimum contacts and the commission of torts in Florida, both of which are related to specific personal jurisdiction).  Therefore, the general jurisdiction standard is not discussed in this motion.  Nevertheless, Defendants lack such continuous and systematic contacts with Florida to render them "essentially at home in the forum [s]tate," as would be required to establish general jurisdiction.  *Daimler AG v. Baumam*, 134 S. Ct. 746, 751 (2014) (internal citations omitted).
[39] *See* Dkt. 1, Complaint at ¶ 17.

test and once under the traditional minimum contacts test.  In both cases, jurisdiction was based on the Defendant's efforts to direct a nationally-distributed publication with significant circulation in the forum state at the forum state.  None of those facts are present here.

In *Calder v. Jones*, the Supreme Court found that personal jurisdiction existed in California, a state where the *National Enquirer*, a nationwide publication with weekly circulation of more than 5 million copies, distributed 600,000 copies of an allegedly defamatory story. *Calder v. Jones*, 465 U.S. 783, 784-85 (1984).  In fact, the *National Enquirer* circulated almost twice as many issues in California as it did any other state. *Id.* at 785.  The story "concerned the California activities of a California resident" and was "drawn from California sources." *Id.* at 788.  In sum, the Court stated, "California is the focal point" of the story. *Id.* at 789.  In *Calder*, jurisdiction existed because of the defendants' contacts with the forum state, rather than contacts with the plaintiff or the fact that the plaintiff suffered harm in the forum state. *Id.*; *see also Walden*, 571 U.S. at 287 ("The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff."); *Honus Wagner Co. v. Luminary Group LLC*, No. 17-cv-61317-Bloom/Valle, 2017 WL 6547899, *12 (S.D. Fla. Dec. 21, 2017) (causing harm to plaintiff in forum is insufficient to satisfy due process).

In *Keeton v. Hustler Magazine, Inc.*, the Supreme Court found that jurisdiction existed in New Hampshire, where a national publication distributed between 10,000 and 15,000 copies of its magazine each month. 465 U.S. 770, 772 (1984). In finding the exercise of jurisdiction proper, the Court held that "such regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Id.* at 774.

The Fifth Circuit has read *Calder* to require a "plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show '(1) the subject matter of and (2) the

sources relied upon for the article were in the forum state.'"   *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (citing *Revell v. Lidov*, 317 F.3d 467, 474, n.48 (5th Cir. 2002)).[40] Under this test, courts should also consider whether the statements were directed to readers in the forum state. *Id.* This Court has relied on the Fifth Circuit's reasoning to find personal jurisdiction lacking in internet defamation cases, stating that "posting defamatory information on the internet is not enough to satisfy the second prong of the 'effects test' . . . even where the defendant knew where the plaintiff lived and intended to inflict injury in that state." *FVD-USA LLC v. Fabiani*, No. 06-cv-61710, 2007 WL 9684283, *6 (S.D. Fla. July 26, 2007) (citing *Revell*, 317 F.3d at 473).   Instead, jurisdiction is lacking where "there is no record evidence" showing that defamatory content "targeted Florida or that Defendants acted to aim their conduct at a Florida audience." *Vision Media TV Group, LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010).

Here, the Article was not directed at Florida residents, but at Texas residents.[41] D Magazine is based in Dallas and publishes Dallas-centric content.[42]  Approximately 97 percent of the print issues containing the Article were distributed in Texas. And while D Magazine posted the Article online and mailed limited copies of its May 2017 issue to non-Texas subscribers, D Magazine is by no means a national publication seeking to reach a national, much less Florida, audience.[43]   In fact, D Magazine's mailing of 124 copies of the May 2017 *D Magazine* issue to Florida subscribers was only 0.13 percent of its total distribution of 72,460 print copies.[44]

Further, the Article recounts events that happened in Dallas.[45]   It was based on reporting from at least 33 sources, most of whom lived in Dallas, and discussed a Dallas murder (which

---

[40] The Eleventh Circuit has twice positively cited *Revell* in finding personal jurisdiction lacking.  *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010); *Bond v. Ivy Tech State College*, 167 Fed. App'x 103, 106 (11th Cir. 2006).
[41] Ex. B, Earnshaw Decl. at ¶¶ 6-7, 9-11; Ex. B-1-2, Article.
[42] Ex. B, Earnshaw Decl. at ¶¶ 4-6.
[43] Ex. B, Earnshaw Decl. at ¶¶ 6, 10, 12.
[44] Ex. B., Earnshaw Decl. at ¶ 10.
[45] Ex. B-1, Article.

occurred while Plaintiffs resided in Dallas) being investigated by Dallas authorities.[46] Thompson researched and wrote the Article while living in Dallas, and D Magazine published the Article in Dallas, even using a Dallas-area printer.[47] The only individual in Florida who Thompson contacted about the Article was Aubrey, who she contacted by e-mail without prior knowledge of his whereabouts. Such a contact is insufficient to subject Defendants to personal jurisdiction.[48] *See Aviation One*, 722 Fed. App'x at 880 ("the plaintiff cannot be the only link between the defendant and the forum") (quoting *Walden*, 571 U.S. at 1122).

D Magazine's publication of the Article on its website is also insufficient to establish jurisdiction. Merely operating a website that is accessible in Florida is insufficient to establish jurisdiction, absent a showing that D Magazine "specifically targeted Florida." *Honus Wagner*, 2017 WL 6547899 at *12. Furthermore, posting allegedly defamatory statements on "the internet available for viewing to all the world is, without more, insufficient to subject a defendant to personal jurisdiction in any given forum." *FVD-USA*, 2007 WL 9684283, *5. D Magazine does not target the Florida market and does not target Florida citizens with its print or web content, its advertising, or its efforts to develop new subscriptions.[49]

Plaintiffs' alleged harm in Florida does not change this analysis. *See Walden*, 571 U.S. at 291 ("The mere fact that [a defendant's conduct] affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."); *Honus Wagner*, 2017 WL 6547899 at *12 (allegations that defendants' conduct harmed plaintiff in forum state "fall short of satisfying the requirements of due process"). D Magazine does not purposely avail itself of the Florida

---

[46] Ex. A, Thompson Decl. at ¶ 5; Ex. B-1, Article; Dkt. 1, Compl. at ¶¶ 58, 226, Compl. Ex. E; Ex.C-1, First Amended Petition at ¶¶ 3.1-3.2, 4.1.
[47] Ex. A, Thompson Decl. at ¶ 4; Ex. B, Earnshaw Decl. at ¶¶ 9, 11.
[48] Thompson Decl. at ¶ 7. The fact that Thompson exchanged e-mails with Aubrey while he was in Florida should not be given much weight in the jurisdictional analysis, as such an approach would improperly allow the Plaintiffs' connections with the forum state to drive the analysis. *Walden*, 571 U.S. at 289. Thompson's communication with Aubrey in preparing the story was conduct directed at the Plaintiff, not at the forum itself. *See id.*
[49] Ex. B, Earnshaw Decl. at ¶¶ 6-7, 9-12.

market and therefore is not subject to jurisdiction here.[50]

Any jurisdictional claims as to Thompson individually are even more attenuated. After researching and writing the Article, Thompson played no role in publishing the Article, and Thompson had no knowledge that the Article would be accessible in Florida.[51] Simply put, Thompson took no actions directed at Florida or that should have given her cause to believe she would be haled into Court here.[52] Accordingly, Defendants had no "substantial connection" with Florida that would satisfy due process requirements for exercising personal jurisdiction.

**b. The exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice.**

Because Plaintiffs have failed to demonstrate that D Magazine has a substantial connection to Florida, the Court need not examine the fair play and substantial justice factors. *Honus Wagner*, 2017 WL 6547899 at *13. But to the extent these factors are considered, they weigh against the exercise of jurisdiction.

When determining whether the exercise of jurisdiction comports with fair play and substantial justice, the Court should consider (1) the burden on the defendants, (2) the forum's interest in adjudicating the dispute, (3) the plaintiffs' interest in obtaining convenient and effective relief, and (4) the judicial system's interest in resolving the dispute. *Louis Vuitton*, 736 F.3d at 1358. None of these factors support the exercise of jurisdiction over Defendants.

As to the first factor, D Magazine is based in Texas and Thompson resides in Maryland.[53] Defending this lawsuit in Florida would therefore substantially burden Defendants. *Honus Wagner*, 2017 WL 6547899 at *13 (out-of-state defendants would be burdened by having to defend lawsuit in Florida).

---

[50] Ex. B, Earnshaw Decl. at ¶¶ 6-7, 9-12.
[51] Ex. A, Thompson Decl. at ¶ 2.
[52] Ex. A, Thompson Decl. at ¶ 14.
[53] Ex. A, Thompson Decl. at ¶ 3; Earnshaw Decl. at ¶ 4.

The second factor weighs against the exercise of jurisdiction because Florida has minimal, if any, interest in adjudicating this dispute.  Plaintiffs' claims are based on an Article published in Dallas by a Dallas magazine about Dallas events, and the only significant connection to Florida is that Plaintiffs moved here shortly before the Article was published. Plaintiffs' recent ties to Florida (and D Magazine's minimal distribution to subscribers here) are insufficient to give Florida a significant interest in adjudicating this dispute. *Id*. (plaintiff's recent relocation to Florida did not give forum interest in adjudicating dispute); *see also Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990) (Florida had minimal interest in defamation dispute when few copies of publication were distributed in state).

As to the third factor, while litigating in Florida may be easier in some respects for Plaintiffs, all defendants and known non-party witnesses reside outside of Florida.[54]  Thus, with the exception of attending any hearings and trial, it will scarcely be more convenient for Plaintiffs to litigate in Florida than Texas, as they will likely have to travel for depositions regardless. Moreover, Plaintiffs are well-familiar with the Texas court system and rules; Vodicka is an "inactive" member of the Texas bar and has at least two ongoing matters in the Dallas Court of Appeals.[55]  Additionally, Aubrey owns property in Dallas.[56]  Thus, Plaintiffs will not be materially inconvenienced by litigating this case in Texas rather than Florida.

Regarding the fourth factor, the judicial system's interest in resolving the dispute, the dispute can be more effectively resolved in Texas than in Florida.  With the exception of Thompson, all defendants and most potential non-party witnesses reside in Texas where they are

---

[54] Dkt. 1, Complaint at ¶¶ 23-35; Ex. A, Thompson Decl. at ¶¶ 3, 5; Ex B, Earnshaw Decl. at ¶¶ 4-5, 8.
[55] Ex. C-5, *Vodicka v. Tobolowsky* Docket; Ex C-6, *Vodicka v. A.H. Belo Corporation* Docket; Ex. C-9, Vodicka's State Bar of Texas Page.
[56] Ex. C, Declaration of Edward Fik ¶ 5; Ex. C-7, 6029 Forest Lane Tax Appraisal Record; Ex. C-8 6041 Forest Lane Tax Appraisal Record.

subject to the Court's trial subpoena power.[57]  *See* FED. R. CIV. P. 45(c)(1)(B)(ii). And, because the case arises out of events that occurred in Texas, a Texas court will have a greater interest in resolving the dispute, as well as greater familiarity with applicable Texas law, than a Florida court.  *See Grupo Televisa, S.A. v. Telemundo Comm'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (Florida choice of law principles dictate that the law with the "most significant relationship" to the alleged tort should apply).

Exercising personal jurisdiction over Defendants in Florida would not comply with federal due process requirements.  Neither D Magazine, which is based in and publishes content about Dallas, nor Thompson have a substantial connection with Florida. Further, forcing Defendants to litigate in this forum would not comport with traditional notions of fair play and substantial justice. Accordingly, this case should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## B.    Venue is improper in this district and the case should be dismissed.

Although the Court can dismiss this case on jurisdictional grounds alone, the case is also subject to dismissal pursuant to Rules 12(b)(3) because venue is improper in this district.

To establish venue, "plaintiff has the burden of showing that venue in the forum is proper."  *Pinson v. Rumsfeld*, 192 Fed. App'x 811, 817 (11th Cir. 2006).  Only conduct by Defendants that directly gave rise to the claim is relevant to this inquiry.  *Presser v. Union Sec. Ins. Co.*, Case No. 17-cv-61184-Bloom/Valle, 2017 WL 4476333, *4 (S.D. Fla. Oct. 6, 2017). Plaintiffs' alleged harm in this district is insufficient to establish venue here.  *BPI Sports, LLC v. PHD Fitness LLC*, No. 14-cv-60069, 2014 WL 11706458, *4 (S.D. Fla. June 13, 2014).

Plaintiffs only allege that venue is proper in this district because a substantial part of the

---

[57] *See* Dkt. 1, Complaint at ¶¶ 23-35; Ex. A, Thompson Decl. at ¶¶ 3, 5; Ex B, Earnshaw Decl. at ¶¶ 4-5, 8.

events or omissions giving rise to their claims occurred here.[58] *See* 28 U.S.C. § 1391(b)(2).  But, contrary to Plaintiffs' blanket allegation, no substantial part of the events giving rise to Plaintiffs' claims occurred in this district.  First, the Article was researched, written, and published in Dallas primarily based on interviews conducted, sites visited, and records reviewed in Dallas.[59] In fact, all parties (including Plaintiffs) were Texas residents at the time of the murder and investigation discussed in the Article.[60]  Second, the vast majority of the print publications containing the Article were distributed in the Northern District of Texas, with only 31 copies being mailed to subscribers in this district.[61]  The Article was not posted to a website directed at this district, but rather on a site that publishes content—like the Article—targeted at the residents of Dallas.[62]  The mere fact that Plaintiffs moved to this district a few months before the Article was published is insufficient to establish venue.  *See BPI Sports,* 2014 WL 11706458 at *4 (alleged harm to plaintiff in district is insufficient to establish venue).

Because the events underlying Plaintiffs' claims against Defendants did not substantially occur in this district, venue is improper in the Southern District of Florida, and the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

## C. Alternatively, the Court should transfer the case to the Northern District of Texas for the convenience of the parties and witnesses and in the interest of justice.

Even if the Court finds that Defendants are subject to personal jurisdiction in Florida and that venue is proper in this district, the Court should transfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.  Under the prevailing test, the Court should transfer the case because (1) the

---

[58] Dkt. 1, Compl. at ¶ 16.
[59] Ex. A, Thompson Decl. at ¶¶ 3-5, 8-9; Ex. B, Earnshaw Decl. at ¶¶ 4-5, 8-9, 11-12.
[60] Dkt. 1, Compl. at ¶¶ 23-35, 58, 226, Compl. Ex. E; Ex. A, Thompson Decl. at ¶¶ 3-4; Ex. B, Earnshaw Decl. at ¶ 4; Ex. C-1, First Amended Petition at ¶¶ 3.1-3.2, 4.1.
[61] Ex. B, Earnshaw Decl. at ¶ 10.
[62] Ex. B, Earnshaw Decl. at ¶¶ 6, 11-12.

action might have been brought in the Northern District of Texas and (2) convenience and the interests of justice favor transfer.  28 U.S.C. § 1404(a); *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1222 (S.D. Fla. 2016).

### 1.   This case could have been brought in the Northern District of Texas.

With regard to the first inquiry, an action "might have been brought" in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court.  *Carucel*, 157 F. Supp. 3d at 1223.  As shown in section III.B above, a substantial part of the events giving rise to Plaintiffs' claims arose in the Northern District of Texas, rendering venue proper there.  Further, Defendants are amenable to process issued out of the Northern District of Texas.  Accordingly, this action could have been brought in the Northern District of Texas.

### 2.   The convenience to the parties and witnesses and the interests of justice weigh in favor of transfer.

As for the second prong, courts consider the following private and public interest factors when determining whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manual v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  These factors all weigh in favor of transferring the case to the Northern District of Texas.

### a.   The convenience of witnesses and parties, location of sources of proof, and the availability of process to compel witness attendance (factors 1-3 and 5) all favor transfer.

Factors 1-3 and 5 involve the location of witnesses, parties, and proof, as well as the

Court's ability to compel witnesses to attend trial. All of these factors favor transfer to the Northern District of Texas. First, with the exception of Plaintiffs and Thompson (who lives in Maryland), almost all of the parties and known witnesses are located in or near Dallas.[63] And although Thompson lives in Maryland, it would be more convenient for Thompson to defend this case in Dallas than in Fort Lauderdale.[64]  Therefore, litigating in the Northern District of Texas would be much more convenient, on balance, for the named defendants and almost all of the witnesses. Additionally, because several non-party witnesses, including most of the Article's sources, live in or around Dallas, they would be subject to the trial subpoena power of the Northern District of Texas but not the trial subpoena power of this Court.[65]  *See* FED. R. CIV. P. 45(c)(1)(B)(ii).  Further, sources of proof regarding the Article, including documents relating to Thompson's reporting, court records relating to the Plaintiffs' litigation in Dallas, subpoenas and other documents regarding the murder investigation, and documents related to D Magazine's editing, publishing, and printing of the Article, are located in Dallas.[66] Factors 1-3 and 5 therefore support a transfer of venue to the Northern District of Texas.

### b.      The locus of operative facts (factor 4) favors transfer.

Factor 4 looks to where the operative facts occurred.  As set forth in section III.C, all of the relevant events occurred in Dallas, where the Article, regarding the Dallas murder of a Dallas attorney and subsequent investigation by Dallas authorities, was researched, sourced, written, edited, published, and printed.[67] The only fact that connects this case to Florida is Plaintiffs' relatively recent residence here.[68]  And, the mere fact that Plaintiff voluntarily moved to Florida a few months before the Article was published is not one of the operative facts on which

---

[63] Dkt. 1, Compl. at ¶¶ 23-35; Ex. A, Thompson Decl. at ¶¶ 3, 5; Ex. B, Earnshaw Decl. at ¶¶ 4-5, 8.
[64] Ex. B, Thompson Decl. at ¶ 13.
[65] Ex. A, Thompson Decl. at ¶ 5.
[66] Ex. A, Thompson Decl. at ¶¶ 9, 11; Ex. B, Earnshaw Decl. at ¶ 13.
[67] Ex. A, Thompson Decl. at ¶¶ 3-5, 8-9; Ex. B, Earnshaw Decl. at ¶¶ 4-6, 8-12; Ex. B-1, Article.
[68] Dkt. 1, Compl. at ¶ 226.

Plaintiffs base their claims. Rather, the Article and Plaintiffs' claims are all based on events that occurred in Dallas.[69] The fourth factor thus favors transfer.

### c.      The relative means of the parties (factor 6) favors transfer.

The sixth factor, the relative means of the parties, also favors transfer to the Northern District of Texas.  All of the named defendants in this action, with the exception of Thompson (who is located in Maryland), are located in Dallas.[70]  Plaintiffs are well-capable of litigating in Texas from Florida, as evidenced by the fact that they have two ongoing civil suits in Texas.[71] Vodicka was, in fact, licensed to practice law in Texas, although his current status is "inactive."[72] And while  Plaintiffs may have to travel from Florida to Texas for hearings (if any) and trial (if the case is not dismissed), the financial burden on Plaintiffs pales in comparison to the burden of requiring the 12 named defendants to travel to Florida for a case based on Texas events. Moreover, although Defendants do not know all facts regarding Plaintiffs' financial means, this Court has found that Plaintiffs are not indigent,[73] and public records show that Aubrey owns valuable property interests in Dallas.[74]  Accordingly, this factor favors transfer.

### d.      The governing law (factor 7) favors transfer.

The seventh factor, which considers a forum's familiarity with governing law, also favors transfer to the Northern District of Texas.  Because the Article was written and published in Texas, by a Texas magazine, based on Texas events, and cited Texas sources, Texas substantive law should apply to all claims asserted against Defendants.[75]  *See Digioia v. H. Koch & Sons*, 944 F.2d 809, 812-13 (11th Cir. 1991) (explaining that Florida choice of law provisions dictate

---

[69] Dkt. 1, Compl. at ¶¶ 250-251, 263-74, 323-28, 362-406; Ex. B-1, Article.
[70] Dkt. 1, Compl. at ¶¶ 23-35; Ex. A., Thompson Decl. at ¶ 3; Ex. B, Earnshaw Decl. at ¶ 4.
[71] Ex. C-5, *Vodicka v. Tobolowsky* Docket; Ex C-6, *Vodicka v. A.H. Belo Corporation* Docket.
[72] Ex. C-9, Vodicka's State Bar of Texas Page.
[73] Dkt. 5, Order on Application to Proceed *In Forma Pauperis*.
[74] Ex. C-7, 6029 Forest Lane Tax Appraisal Record; Ex. C-8 6041 Forest Lane Tax Appraisal Record.
[75] Ex. A, Thompson Decl., at ¶¶ 3-5, 8-12; Ex. B, Earnshaw Decl. at ¶¶ 4-5, 8-9, 11-12; Ex. B-1, Article.

application of the law of the forum with the most significant relationship to the case). The Northern District of Texas will be best equipped to apply Texas law, including the Texas statute of limitations and the Texas anti-SLAPP statute. Therefore, factor 7 also favors of transfer.

      **e.**      **Plaintiffs' choice of venue (factor 8) should be given little weight.**

The eighth factor requires an analysis of the weight to be afforded Plaintiffs' choice of venue. Plaintiffs' choice of venue is not entitled to great weight in this case, as "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff[s]." *Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1267 (S.D. Fla. 2013). Plaintiffs' choice of venue should also be given little weight, as it is motivated in part by forum shopping. *See Bartolon-Perez v. Island Granite & Stone, Inc.*, Case No. 14-cv-21010, 2014 WL 12513973 at *4 (S.D. Fla. Aug. 25, 2014). Plaintiffs have chosen not to file in Dallas, where the statute of limitations would bar their claims and where Aubrey has twice been declared a vexatious litigant.[76] *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a) (setting one-year statute of limitations for defamation claims). Further, Plaintiffs have lost the other defamation cases they brought in Dallas,[77] and have therefore sought out a different venue that they hope will be more favorable for them. For these reasons, Plaintiffs' choice of venue is entitled to little weight and is outweighed by the others which greatly favor transfer.

      **f.**      **Trial efficiency and the interest of justice (factor 9) favors transfer.**

The ninth factor, considering trial efficiency and the interest of justice, also favors transfer. First, as discussed above, it would be far less efficient to require 12 out-of-state defendants to travel to Florida for trial than it would be to require the two Plaintiffs, former

---

[76] Ex. C-2, Feb. 2, 2017 Order; Ex. C-4, Feb. 12, 2016 Order Granting Defendant's Motion to Determine Vexatious Litigant and Motion for Sanctions.
[77] *See Vodicka v. A.H. Belo Corporation*, No. 05-17-00728-CV (Tex. App.—Dallas Jul. 5, 2018, no pet. h.), *available at* http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=7d819e1d-7ea7-425c-8b1b-51461ead754a&coa=coa05&DT=Opinion&MediaID=737dec84-8b58-482a-a085-b3bb8deb3cc8

residents of Dallas with ties to the area, to travel to Texas, especially in light of the fact that the events underlying Plaintiffs' claims occurred in Dallas.[78] Moreover, given the location of several non-party witnesses in Texas, this Court could not compel those non-parties to attend trial in this district, whereas the Northern District of Texas could compel their attendance.[79] *See* FED. R. CIV. P. 45(c)(1)(B)(ii). This factor therefore favors transfer.

Because the private and public interest factors favor transfer, to the extent this Court declines to dismiss the case for lack of personal jurisdiction and improper venue, it should transfer the case to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## IV.   PRAYER

Wherefore, Defendants respectfully request that the Court:

1.      Dismiss Plaintiffs' claims against Defendants for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure;

2.      Alternatively, transfer this case to the United States District Court for the Northern District of Texas for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a); and

3.      Grant Defendant all such other and further relief to which they may be entitled.

---

[78] Dkt. 1, Compl. at ¶¶ 23-35, 58, 226, Compl. Ex. E; Ex. B-1, Article; Ex. C-7, 6029 Forest Lane Tax Appraisal Record; Ex. C-8 6041 Forest Lane Tax Appraisal Record.
[79] Ex. A, Thompson Decl. at ¶ 5.

Respectfully submitted,

*/s/ Dana J. McElroy*
Dana J. McElroy, Esq.
dmcelroy@tlolawfirm.com
Florida Bar No.: 845906
Thomas & LoCicero PL
915 Middle River Drive, Suite 309
Ft. Lauderdale, Florida 33304
Telephone: 954.703.3416
Facsimile: 954.400.5415

Thomas J. Williams (*pro hac to be filed*)
*thomas.williams@haynesboone.com*
Texas Bar No.: 21578500
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas  76102
Telephone: (817) 347-6600
Telecopier: (817) 347-6650

Jason P. Bloom (*pro hac to be filed*)
*jason.bloom@haynesboone.com*
Texas Bar No.: 24045511
Stephanie Sivinski (*pro hac to be filed*)
*stephanie.sivinski@haynesboone.com*
Texas Bar No.: 24075080
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANTS D
MAGAZINE PARTNERS, L.P. f/k/a
MAGAZINE LIMITED PARTNERS, L.P.,
ALLISON MEDIA, INC., and
JAMIE THOMPSON**

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on September 10, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF.  I also certify that the foregoing document is being served on this date to all other counsel or pro se parties listed below, either via transmission of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Steven Benton Aubrey, Pro Se
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

Brian Edward Vodicka
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

*/s/ Dana J. McElroy*
Dana J. McElroy