EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

STEVEN BENTON AUBREY and )
BRIAN EDWARD VODICKA, )
)
      Plaintiffs, )
) Case Action No. 18-cv-61117-BB
v. )
) Judge Beth Bloom
D MAGAZINE PARTNERS, L.P. )
d/b/a D MAGAZINE, MAGAZINE )
LIMITED PARTNERS, L.P., )
ALLISON MEDIA, INC., )
JAMIE L. THOMPSON, )
ROBERT L. ERMATINGER, JR., )
SCOTT ROBERT SAYERS, )
STEPHEN CHARLES SCHOETTMER, )
ERIC VAUGHN MOYE, )
DALLAS POLICE DEPARTMENT, )
CITY OF DALLAS, )
MELINDA CHRISTINE URBINA, )
DALLAS COUNTY SHERIFF'S DEPT., )
DALLAS COUNTY, TEXAS, and )
DOES 1-10, )
all of whose true names are unknown )
)
      Defendants. )
)

## DECLARATION OF JAMIE L. THOMPSON

1. My name is Jamie L. Thompson. I am more than 21 years old, and I have never been convicted of a felony or crime of moral turpitude. I am fully competent to make this declaration, and all of the facts set forth herein are based on my personal knowledge and are true and correct.

2. I am a free-lance writer. I have authored pieces appearing in *D Magazine*, the *Dallas Morning News*, and several other publications. I researched and wrote an article entitled

1

"A Place Where Something Evil Happened" (the "Article") about the unsolved murder of Dallas attorney Ira Tobolowsky at his Dallas home, as well as the investigation into the murder. Other than writing the Article, I did not play any role in publishing the article in print or on D Magazine's website, and I had no specific knowledge that the Article would be accessible in Florida.

3. At the time I researched and wrote the Article, I was living in Dallas, Texas. I am now a resident of Maryland. I do not maintain a residence in Florida, and do not conduct any business in Florida.

4. I researched and wrote the entire Article while in Dallas, and at no time did I set foot in Florida while researching or writing the Article.

5. In the course of researching and writing the Article, I interviewed at least 33 sources, including members of Ira Tobolowsky's family who resided in Dallas, members of Dallas law enforcement, private investigators retained by Mr. Tobolowsky's family, and a Dallas lawyer that represented Mr. Tobolowsky in a defamation suit against Mr. Aubrey. Almost all of these sources were located in Dallas or elsewhere in Texas. In fact, of all of the sources I interviewed, the only ones that lived outside of Texas were a longtime friend of Mr. Toblowsky's who lived in California, and a former client of Mr. Tobolowsky's who either lived in California or the midwestern United States, and Mr. Aubrey, who I learned had moved to Florida. Several of the sources I spoke with when researching the Article are confidential, but below is a list of non-confidential sources identified in the Article that I interviewed, by name and location:

| Source Name | Source Location |
|---|---|
| Debbie Tobolowsky | Dallas, Texas |

| Michael Tobolowsky | Dallas, Texas |
| --- | --- |
| Jonathan Tobolowsky | Dallas, Texas |
| Zach Tobolowsky | Dallas, Texas |
| Stephen Schoettmer | Dallas, Texas |
| Leigh Allen | Dallas, Texas |
| Bob Ermatinger | Dallas, Texas |
| Steven Aubrey | Dallas, Texas or Ft. Lauderdale, Florida |

6. With the exception of Mr. Aubrey and Mr. Vodicka, who I understood to have moved to Florida a few months before the Article was published but after the primary events discussed in the Article, no one connected with the Articled lived in Florida.

7. I did not communicate directly with Mr. Vodicka when writing the Article, but I did communicate with Mr. Aubrey by e-mail after he declined to be interviewed in person or over the phone. When I first reached out to Mr. Aubrey by e-mail, I did not know where he was living.

8. In the course of researching and writing the Article, I visited only locations in Dallas, including Mr. Tobolowsky's home and law office and the Dallas courthouse, where I sought to obtain documents related to the investigation into Mr. Tobolowsky's murder. I also communicated several times with the Dallas District Clerk's office to obtain such documents. Additionally, I met with sources at various locations in Dallas, including restaurants and homes.

9. I reviewed several documents, including lawsuit pleadings, subpoenas, warrants, photographs, deposition transcripts and videos, and audio recordings, all of which originated

3

from Dallas or elsewhere in Texas, and many of which were created or obtained from government entities in Dallas or elsewhere in Texas.

10. I began researching and writing the Article in December 2016 and worked on the Article from that point until the end of March, at which point I responded to inquiries from D Magazine during the editing and fact checking process over the following weeks.

11. In the course of researching and writing the Article, I kept files of interview and research notes, documents reviewed, and other source materials. These materials are in the possession of D Magazine or my attorneys in Dallas, Texas.

12. At the time I was researching and writing the Article about the murder of a Dallas attorney in his Dallas home and the subsequent investigation by Dallas authorities, I did not anticipate that I might be required to defend a lawsuit in Florida.

13. Due to my ties to and familiarity with the Dallas area after having lived and worked there for 10 years, the location of relevant documents, ongoing work projects I have involving Dallas that have necessitated travel there, and the relative ease with which I can travel between Maryland and Dallas, I would consider it more convenient to travel to Dallas to defend the above-styled lawsuit than Fort Lauderdale.

I declare under penalty of penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, Maryland on the _31_ day of August, 2018.

                                                                           _____
                                                                           Jamie Thompson