IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| STEVEN BENTON AUBREY and | ) | |
| BRIAN EDWARD VODICKA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18-cv-61117-BLOOM-VALLE |
| v. | ) | |
| | ) | |
| D MAGAZINE PARTNERS, L.P. | ) | |
| d/b/a D MAGAZINE, MAGAZINE | ) | |
| LIMITED PARTNERS, L.P., | ) | |
| ALLISON MEDIA, INC., | ) | |
| JAMIE L. THOMPSON, | ) | |
| ROBERT L. ERMATINGER, JR., | ) | |
| SCOTT ROBERT SAYERS, | ) | |
| STEPHEN CHARLES SCHOETTMER, | ) | |
| ERIC VAUGHN MOYE, | ) | |
| DALLAS POLICE DEPARTMENT, | ) | |
| CITY OF DALLAS, | ) | |
| MELINDA CHRISTINE URBINA, | ) | |
| DALLAS COUNTY SHERIFF'S DEPT., | ) | |
| DALLAS COUNTY, TEXAS, and | ) | |
| DOES 1-10, | ) | |
| all of whose true names are unknown, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS D MAGAZINE PARTNERS, L.P., ALLISON MEDIA, INC.,
AND JAMIE THOMPSON'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO DISQUALIFY HAYNES AND BOONE, LLP**

Defendants D Magazine Partners, L.P. f/k/a Magazine Limited Partners, L.P., Allison

Media, Inc. and Jamie Thompson (collectively, "Defendants") file this response in opposition to

Plaintiffs' Motion to Disqualify Haynes and Boone, LLP (Dkt. 69), and respectfully show the

Court the following:

# I.  INTRODUCTION

When Haynes and Boone briefly represented Plaintiffs in 2013, Ira Tobolowsky was still alive. More than two years after the representation ended, Mr. Tobolowsky died in a suspicious fire in his garage, and a year after that, D Magazine published an article about the death and ensuing homicide investigation. That article is the basis of this lawsuit.

Plaintiffs argue that Haynes and Boone's brief representation of them in 2013—to advise them on an amended complaint in a RICO and securities fraud lawsuit—disqualifies the firm from representing defendants in this case.  But that matter, based on a real estate Ponzi scheme, was completely unrelated to the present lawsuit, which alleges defamation and invasion of privacy claims based on a 2017 *D Magazine* article regarding a 2016 murder.  Plaintiffs thus cannot show the type of substantial relationship between the two matters necessitating disqualification and, likewise, cannot show a substantial likelihood that any confidential information disclosed to Haynes and Boone could be used against them in this matter. Accordingly, Plaintiffs have failed to meet their burden to establish that disqualification is proper under Rule 4-1.9 of the Florida Rules of Professional Conduct, and Plaintiffs' motion to disqualify should be denied.

# II.  STATEMENT OF FACTS

## A.  Haynes and Boone briefly advised Plaintiffs in 2013 in an unrelated lawsuit.

In April of 2013, Steven Aubrey and Brian Vodicka engaged Leslie Thorne of Haynes and Boone, LLP to assist them in evaluating an amended complaint they intended to file in a pending RICO action against North American Title Company and others in the United States District Court for the Western District of Texas (the "RICO Lawsuit").[1]  Ms. Thorne is based in

---

[1] *See* Dkt. 69 at Ex. A, Apr. 23, 2013 Engagement Letter.

Austin, Texas, where the action was pending, and the engagement letter was strictly limited, stating: "We [Haynes and Boone] understand that You [Aubrey and Vodicka] want to retain us only to assist You in evaluating the Amended Complaint You intend to file, so that You can decide how to proceed."[2]

According to Pacer, Plaintiffs' First Amended Consolidated Complaint was filed in the RICO Lawsuit on June 26, 2013 by Brian W. Zimmerman and Adam Pugh (lawyers not with Haynes and Boone), their attorneys of record in the RICO Lawsuit at the time.[3]  The Pacer docket for the RICO Lawsuit also reflects that the amended complaint was stricken by order dated December 17, 2013 and a Second Amended Consolidated Complaint was filed on Plaintiffs' behalf by Mr. Zimmerman on December 21, 2013.[4]   The Second Amended Consolidated Complaint alleged an assortment of claims, including RICO claims, based on an alleged real estate Ponzi scheme in which Aubrey and Vodicka had invested money.[5]  Haynes and Boone never made an appearance in the RICO Lawsuit on behalf of Aubrey and Vodicka and, according to Plaintiffs, Haynes and Boone's total billings for its services were $14,208.54.[6]  Haynes and Boone performed its last services for Aubrey and Vodicka on December 18, 2013 and issued its final invoice on January 7, 2014.[7]   Haynes and Boone has no record of ever representing Aubrey and Vodicka in any other capacity, and Plaintiffs allege no other prior

---

[2] See Dkt. 69 at Ex. A, Apr. 23, 2013 Engagement Letter at pg. 1.

[3] See Ex. A, Pacer Docket for Aubrey, et al. v. Barlin, et al., No. 1:10-cv-00076-DAE (W.D. Tex.) ("Pacer Docket") at Docket Entry 326 (the First Amended Consolidated Complaint is not attached hereto due to its volume, but is publicly available through Pacer).

[4] See Ex. A, Pacer Docket at Docket Entry 467; Ex. B, Second Amended Consolidated Complaint in Aubrey, et al. v. Barlin, et al., No. 1:-10-cv-00076-DAE (W.D. Tex. Dec. 21, 2013) ("Second Amended RICO Complaint").

[5] See Ex. B, Second Amended RICO Complaint ; see also, Dkt. 1, Plaintiff's Original Complaint (in this matter) at pg. 37 n.10;

[6] See Dkt. 69, Plaintiff's Motion to Disqualify at pg. 2; Ex. A, Pacer Docket at pgs. 1-5.  By contrast, according to testimony Aubrey gave in a subsequent lawsuit, Aubrey and Vodicka incurred $2.3 million in total attorneys' fees pursuing their claims in the RICO Lawsuit. See Ex. C, Tab 2, Excerpts of Deposition of Steven B. Aubrey ("Aubrey Depo.") at pg. 77.  Further, according to Pacer, thirteen different attorneys, none of whom were or are with Haynes and Boone, represented Plaintiffs at various times in the RICO Lawsuit.  See Ex. A, Pacer Docket at pgs. 1-5.

[7] See Dkt. 69 at Ex. B, Jan. 7, 2014 Haynes and Boone Invoice.

representation.

**B.      The present lawsuit asserts defamation and invasion of privacy claims regarding a 2017 article about a 2016 murder.**

On May 13, 2016, more than two years after Haynes and Boone ceased its representation of Aubrey and Vodicka, Ira Tobolowsky died in a suspicious fire at his home, in what authorities believed to be a homicide.[8]  In April of 2017, more than three years after Haynes and Boone ceased its representation of Aubrey and Vodicka, Defendant D Magazine Partners, L.P. published an article entitled "A Place Where Something Evil Happened" (the "Article") that is the subject of Plaintiffs' claims against Defendants in this case.[9]  The Article, written by Defendant Jamie Thompson, is about Tobolowsky's unsolved murder, Dallas detectives' unsuccessful efforts to solve the murder, and suspicions by detectives and Tobolowsky's family members that Aubrey and Vodicka may have been involved.[10]

When writing the Article, Thompson conducted substantial background research regarding Aubrey and Vodicka.[11]  As part of that research, Thompson reviewed the dockets and publicly-available filings from lawsuits in which Aubrey and Vodicka had been involved, including the public pleadings and other documents from the RICO Lawsuit.[12] Thompson also reviewed pleadings and deposition transcripts from other lawsuits in which Aubrey and Vodicka had been involved, including a deposition transcript dated March 17, 2016, in which Aubrey testified that he and Vodicka had spent $2.3 million in attorneys' fees pursuing the RICO Lawsuit.[13]  Aubrey also summarized that he and Vodicka owed at least $368,400 in unpaid legal

---

[8] *See* Dkt. 1, Complaint at ¶¶ 58-59.

[9] *See* Ex. C, Tab 1, Article.

[10] *See* Ex. C, Tab 1, Article.

[11] Ex. C, Declaration of Jamie Thompson ("Thompson Decl.") at ¶ 3.

[12] Ex. C, Thompson Decl. at ¶ 3.

[13] Ex. C, Tab 2, Aubrey Depo. at pgs. 77.

fees to various law firms that provided legal services in the lawsuit, which amount Aubrey testified is "probably much greater."[14]   Aubrey also testified that he and Vodicka sold their $1.4 million house after taking out a home equity loan and investing between $600,000 and $1.2 million in the Ponzi scheme.[15]   Aubrey did not mention Haynes and Boone in the deposition, and Haynes and Boone did not represent Aubrey or Vodicka when the deposition was taken.

As background regarding Aubrey and Vodicka, the Article briefly mentions the RICO Lawsuit, stating:

> [Aubrey and Vodicka] had been involved in another contentious lawsuit in Austin, after they'd invested hundreds of thousands of dollars in a real estate deal that turned out to be a Ponzi scheme. They had to sell their $1 million house, and they moved to an apartment in Dallas. They'd spent nearly $2.3 million fighting the case and still owed about $400,000 in legal fees.[16]

Thompson obtained these background facts from court filings in the RICO Lawsuit, Aubrey's deposition transcript in another matter, and Aubrey's motion to appoint counsel in yet another matter.[17]   Thompson did not obtain this information, or any other information regarding Aubrey or Vodicka, from anyone at Haynes and Boone.[18]   None of the Haynes and Boone attorneys working on the present case previously performed any work for Aubrey or Vodicka in connection with the RICO Lawsuit.

### III.     ARGUMENT AND AUTHORITIES

#### A.     Legal standard and burden of proof.

"[M]otions to disqualify opposing counsel are highly disfavored in the Eleventh Circuit" and should be "granted sparingly."  *Brown v. Blue Cross & Blue Shield of Fla., Inc.*, No. 11-

---

[14] Ex. C, Tab 2, Aubrey Depo. at pgs. 71-76.

[15] Ex. C, Tab 2, Aubrey Depo. at pgs. 78-79.

[16] *See* Ex. C, Tab 1, Article.

[17] *See* Ex. C, Thompson Decl. at ¶ 4; Ex. C, Tab 2, Aubrey Depo. at pgs. 71-79; Ex. C, Tab 3, Aubrey's Motion to Appoint Counsel in *Vodicka v. A.H. Belo Corporation* ("Motion to Appoint Counsel").

[18] *See* Ex. C, Thompson Decl. at ¶¶ 3, 5.

80390-CIV, 2011 WL 11532078, at *3 (S.D. Fla. Aug. 8, 2011); *In re Jet 1 Ctr., Inc.*, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004) ("motions to disqualify are viewed with disfavor and disqualification is considered to be a drastic measure which a court should not impose unless absolutely necessary.") This is because "disqualification of counsel is an extraordinary measure that acts immediately to the detriment of the client by separating the client from chosen counsel." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001). Courts must thus "'take care to preserve the delicate balance between a party's right to retain the counsel of his choice and the need to ensure adherence to the highest ethical standards of professional responsibility.'" *Id.* (internal citations omitted).

The movant initially bears the burden of proof to establish the grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003) ("The party moving to disqualify counsel bears the burden of proving the grounds for disqualification."); *Gen. Cigar*, 144 F. Supp. 2d at 1337 ("The burden of proof initially is on the moving party to establish grounds for disqualification."). A movant bears the burden of proving (i) the existence of a previous attorney/client relationship and (ii) that the matters in the pending suit are substantially related to the prior representation. *Brown*, 2011 WL 11532078, at *4.

**B.     There is no substantial relationship between Haynes and Boone's prior representation of Aubrey and Vodicka and the present matter.**

Because Aubrey and Vodicka are *former* clients of Haynes and Boone, Rule 4-1.9 of the Florida Rules of Professional Conduct is the applicable rule for the Court to consider in evaluating their disqualification motion. The rule provides:

A lawyer who has formerly represented a client in a matter must not afterwards:

(a)   represent another person in the ***same or a substantially related*** matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

6

(b)  use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information ***has become generally known***; or

(c)  reveal information relating to the representation except as these rules would permit or require with respect to a client.

FLA. R. PROF'L CONDUCT 4-1.9 (2018) (emphasis added)

In order to show that disqualification is proper, a movant must first show that the prior matter is substantially related to the present matter.  *Brown*, 2011 WL 11532078, at *4 ("'In order to prevail on a motion to disqualify under Rule 4-1.9, the movant must establish…that the matters in the pending suit are substantially related to the previous matter or cause of action.'") (quoting *Bochese v. Town of Ponce Inlet*, 267 F. Supp. 2d 1240, 1244 (M.D. Fla. 2003)); *Hernandez v. Royal Caribbean Cruises Ltd.*, No. 10-21636-CIV, 2010 WL 3522210, at *7 (S.D. Fla. Sept. 7, 2010) ("'Before a client's former attorney can be disqualified from representing adverse interests, it must be shown that the matters presently involved are substantially related to the matters in which prior counsel represented the former client.'") (quoting *Waldrep v. Waldrep*, 985 So. 2d 700, 702 (Fla. 4th DCA 2008)).  The comments to Rule 4-1.9 provide: "Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client."  FLA. R. PROF'L CONDUCT 4-1.9 cmt. (2018). To show a substantial relationship, a plaintiff must establish a relationship between "the subject matters, issues, and causes of action of both the present and previous representations so that the court can determine whether a substantial relationship exists." *Hernandez*, 2010 WL 3522210, at *4.

Plaintiffs' motion to disqualify should be denied because there is no substantial relationship between the amended complaint in the RICO Lawsuit on which Haynes and Boone

7

briefly advised Aubrey and Vodicka in 2013 and the present lawsuit.  Whereas the RICO Lawsuit involved RICO and securities fraud claims based upon an alleged real estate Ponzi scheme, the present lawsuit asserts defamation and invasion of privacy claims based on an article, published more than three years after the prior representation concluded, discussing a murder that occurred more than two years after the prior representation ended.  Because the lawsuits involve very different claims and subject matter, Plaintiffs cannot meet their disqualification burden.

Here, Plaintiffs have failed to show that Haynes and Boone's brief and limited representation of them more than four years ago is substantially related to the present matter, and it is not.  Of course, during Haynes and Boone's 2013 representation of Plaintiffs, neither Haynes and Boone nor anyone else knew about or could foresee the future 2016 Tobolowsky murder or 2017 Article that is the subject of the claims alleged in the present lawsuit. Plaintiffs only argue that the two matters are substantially related because the Article mentions, in three sentences, the RICO Lawsuit. But that does not make the matters substantially related under Florida law.

To the contrary, the matters are not substantially related because they do not (i) involve the same transaction or legal dispute and (ii) Haynes and Boone's representation of Defendants in this matter would not require its lawyers to attack its work in the RICO Lawsuit.  *See* Fla. R. Prof'l Conduct 4-1.9 cmt. (2018). In the 2013 matter, Haynes and Boone  was only engaged to advise Aubrey and Vodicka regarding an amended complaint to be filed in the RICO Lawsuit, which alleged RICO, securities fraud, and related claims regarding an alleged real estate-based Ponzi scheme.[19]  Plaintiffs only appear to argue that the present matter is "substantially related" because the RICO Lawsuit is mentioned as background in three sentences of the 7,400+ word

_____
[19] *See* Dkt. 69 at Ex. A, Engagement Letter at pg. 1; Ex. B, Second Amended Complaint; Dkt. 1, Plaintiff's Original Complaint at pg. 37 n.10.

Article that is the subject of Plaintiffs' defamation and invasion of privacy claims in the present lawsuit. But that mere mention does not make the matters substantially related.

The "dispute" in the prior representation was the Ponzi scheme, whereas the "dispute" here is Plaintiffs' defamation and invasion of privacy claims based on the Article. The former representation did not involve claims of defamation or invasion of privacy, was not and could not be related, substantially or temporally, to the Tobolowsky murder or ensuing investigation (which had not yet even occurred), and did not involve D Magazine, Thompson, or the Article that is at issue in this lawsuit (which would be published more than three years later). The two matters thus do not involve the same transaction or legal dispute, but rather involve very different legal disputes. In fact, Florida courts have denied disqualification motions in cases involving far more related facts and claims. *See Brown*, 2011 WL 11532078, at *5 (law firm's prior performance of health care regulation compliance audit for pharmacy was not substantially related to later pursuit of ERISA claim against pharmacy); *Hernandez*, 2010 WL 3522210, at *4-*8 (attorney who previously defended cruise line in slip-and-fall cases could not be disqualified from representing plaintiff in slip-and-fall case against same cruise); *Morgan Stanley & Co., Inc. v. Solomon*, No. 08-81330-CV, 2009 WL 413519, at *3-*4 (S.D. Fla. Feb. 19, 2009) (attorney who previously defended securities fraud cases for Morgan Stanley could not be disqualified from representing plaintiffs suing Morgan Stanley for securities fraud); *Health Care & Retirement Corp. of Am., Inc. v. Bradley*, 961 So. 2d 1071, 1073-74 (Fla. 4th DCA 2007) (attorney who previously defended nursing home in negligence cases involving ulcers could later be adverse to same nursing home in different negligence cases involving ulcers).

Likewise, Haynes and Boone's representation of D Magazine and Thompson in this matter would not require Haynes and Boone attorneys to attack the work done by Haynes and

Boone in the RICO Lawsuit.  In fact, Plaintiffs advance no argument on this front.  And, it is inconceivable that Haynes and Boone's defense of Plaintiffs' libel and invasion of privacy claims—related to the April 2017 Article which they contend accuses them of murdering Tobolowsky in May 2016—could require Haynes and Boone's attorneys to attack the limited work done evaluating Aubrey and Vodicka's amended complaint in the completely unrelated RICO Lawsuit in 2013. *See Brown*, 2011 WL 11532078, at *5 (no likelihood that regulatory compliance advice would come under attack in ERISA suit).  The facts giving rise to Plaintiffs' libel and invasion of privacy claims in this action had not yet occurred when Haynes and Boone advised Aubrey and Vodicka regarding the amended RICO complaint in 2013, and the issues in the cases are thus completely unrelated.  Plaintiffs have therefore failed to meet their burden of showing that the two matters are substantially related, and the Court may deny Plaintiffs' motion on this ground alone. *See id.* (denying disqualification request upon finding of no substantial relationship); *Hernandez*, 2010 WL 352210, at *8 (same); *Bradley*, 961 So. 2d at 1073-74 (same).

Plaintiffs rely on three Florida cases in support of their motion, but none of them support disqualification in this case.  In *State Farm Mutual Automobile Insurance Company v. K.A.W.*, the court found disqualification proper when an attorney initially represented, then later sued, the same party in the same lawsuit involving the same car accident.  575 So. 2d 630, 631, 634 (Fla. 1991). In *Lee v. Florida Department of Insurance and Treasurer*, an attorney represented the Department of Insurance in a matter seeking to revoke a party's license based on its conduct in another lawsuit on which the attorney had represented another party. 586 So. 2d 1185, 1187 (Fla. 1st DCA 1991).  The court found disqualification proper because a settlement agreement in the prior lawsuit specifically provided that the attorney could not represent the Department of

Insurance in future proceedings to revoke the party's license. *Id.* at 1188-91. And in *Kenn Air Corp. v. Gainesville-Alachua County Regional Airport Authority*, the court found that disqualification was proper when an attorney represented a lessor in a lease dispute with a lessee and later represented the lessee's successor in a dispute with the lessor's successor involving the same lease, property, and factual allegations. 593 So. 2d 1219, 1220, 1223 n.3 (Fla. 1st DCA 1992). While the courts found disqualification proper in the above cases cited by Plaintiffs, the cases are all very different from the present case because they involved the same legal disputes and, in one case, a settlement agreement specifically prohibited the later representation.

Haynes and Boone's representation of Defendants in this case does not involve the same legal dispute as Haynes and Boone's prior, unrelated representation of Aubrey and Vodicka and would not require Haynes and Boone to attack its prior legal work. Accordingly, disqualification is not appropriate.

**C.     Thompson obtained information in the Article regarding the RICO Lawsuit from court records, and any information relating to the RICO Lawsuit that could possibly be relevant to this lawsuit is generally known.**

In addition to the fact that Haynes and Boone's prior representation of Aubrey and Vodicka is not substantially related to the present matter, any information from the RICO Lawsuit that could possibly be relevant to this lawsuit is generally known. Therefore, Plaintiffs' vague, unsubstantiated claim that confidences divulged to Haynes and Boone may be (and have been) used against them in this matter is without merit and does not require disqualification.

Rule 4-1.9 of the Florida Rules of Professional Conduct also provides that a lawyer may not:

> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

(c) reveal information relating to the representation except as these rules would permit or require with respect to a client.[20]

Unlike Rule 4-1.9(a), these subparts (b) and (c) are not written as a bar to prohibit representation, but as ethical guidelines should representation occur.  The Court in *Morgan Stanley*, however, considered Rule 4-1.9(b) as a potential bar to representation, and considered whether there was a "substantial risk" that the attorney would use confidential information against his former client. 2009 WL 413519, at *5; *see also* FLA. R. PROF'L CONDUCT 4-1.9 cmt. (discussing burden to show "substantial risk" that lawyer has confidential information to use in subsequent matter); *but see Hernandez*, 2010 WL3522210, at *7 (disregarding claim that attorney was privy to confidential information absent showing of substantial relationship between matters).  In this case, there is no legitimate or substantial risk that any confidential information learned by Haynes and Boone in connection with the RICO Lawsuit will be used or revealed in this lawsuit.

Although Plaintiffs have not identified, even in general terms, any categories of confidential information that could be used to their disadvantage, they vaguely claim that they could be prejudiced due to the Article's brief, three-sentence background discussion of the RICO Lawsuit.  However, to the extent any information about the RICO Lawsuit could be relevant to the present dispute, such information is generally known.

The comments to Rule 4-1.9 provide: "Information that has been widely disseminated by the media to the public, or that typically would be obtained by any reasonably prudent lawyer who had never represented the former client, should be considered generally known, and ordinarily will not be disqualifying."  FLA. R. PROF'L CONDUCT 4-1.9 cmt. (2018).  In *Morgan Stanley*, this Court found that information a lawyer could derive from public records or discovery processes is "generally known" for purposes of the Rule.

---

[20] Although Plaintiffs cite an older version of the rule in their motion that does not contain this exact language, Defendants assume that their arguments are meant to apply to the current rule.

Here, the Article only discusses summary points about the RICO Lawsuit as follows:

> [Aubrey and Vodicka] had been involved in another contentious lawsuit in Austin, after they'd invested hundreds of thousands of dollars in a real estate deal that turned out to be a Ponzi scheme. They had to sell their $1 million house, and they moved to an apartment in Dallas. They'd spent nearly $2.3 million fighting the case and still owed about $400,000 in legal fees.[21]

Thompson, the Article's author, obtained all of this summary information on her own from court documents.[22]  Thompson obtained no information in the Article regarding the RICO Lawsuit, Aubrey, or Vodicka from Haynes and Boone.[23]  Additionally, the pleadings in the RICO Lawsuit are publicly available on Pacer.[24]  Moreover, Plaintiffs' RICO Lawsuit was widely publicized in the media before the Article was published.[25]  Therefore, any information related to the RICO Lawsuit that Defendants could possibly use in this lawsuit could be derived from public case filings, Thompson's research files, news articles, and discovery processes, and is thus "generally known."

The only statement regarding the RICO Lawsuit that Plaintiffs even mention in their Complaint in this lawsuit is the statement that "They'd spent nearly $2.3 million fighting the case."[26]  Thompson derived that information directly from Aubrey's deposition testimony—not

---

[21] *See* Ex. C, Tab 1, Article.

[22] Ex. C, Thompson Decl. at ¶ 4; Ex. C, Tab 2, Aubrey Depo. at pgs. 71-79; Ex. C, Tab 3, Motion to Appoint Counsel.

[23] Ex. C, Thompson Decl. at ¶¶ 3, 5.

[24] *See* Ex. A, Pacer Docket, Ex. B, Second Amended RICO Complaint.

[25] *See*, *e.g.*, Dan McCue, *Title Company Missed Mob Ties, Investors Say*, Courthouse News Service, Feb. 8, 2011, https://www.courthousenews.com/title-company-missed-mob-ties-investors-say/; Tony Plohetski, *A decade later, city still waiting at site where it spent $6 million for infrastructure*, Statesman, Jun. 11, 2012, https://www.statesman.com/news/special-reports/decade-later-city-still-waiting-for-development-site-where-spent-million-for-infrastructure/SeIgJv3PEV3mrCF7ddEZgO/; Will Anderson, *Austin developer cleared in 6-year-old fraud lawsuit*, Austin Business Journal, Feb. 29, 2016, https://www.bizjournals.com/austin/news/2016/02/29/austin-developer-cleared-in-6-year-old-fraud.html; *Judge Precludes Expert Testimony on Transactions in Fraudulent Loan Dispute*, Lexis Legal News, Oct. 19, 2015, https://www.lexislegalnews.com/articles/3289/judge-precludes-expert-testimony-on-transactions-in-fraudulent-loan-dispute.

[26] Dkt. 1, Complaint at ¶ 250(g).

from Haynes and Boone.[27]   Plaintiffs have therefore failed to identify any risk that information disclosed to Haynes and Boone could be used against them in this lawsuit, and any relevant information related to the RICO Lawsuit is "generally known" for purposes of Rule 4-1.9(b). Disqualification is therefore not proper on this ground.

There is also no risk that any confidential information relating to the prior representation could be "revealed" in violation for Rule 4-1.9(c), as Plaintiffs seem to contend.  First, Plaintiffs, who bear the burden, do not even identify any general category of information disclosed to Haynes and Boone in connection with the RICO Lawsuit that might be used or revealed in this defamation case regarding the Article (published three years after Haynes and Boone's representation concluded) about the Tobolowsky murder (which occurred two years after Haynes and Boone's representation concluded). *See Brown*, 2011 WL 11532078, at *4 (conclusory and speculative statements did not warrant disqualification). While Plaintiff's make an unsubstantiated assertion at the end of their motion that confidences "have been" divulged to Defendants, the assertion is baseless and untrue. Moreover, as demonstrated above, any information regarding the RICO Lawsuit referenced in the Article was derived by Thompson from public records and court documents rather than Haynes and Boone.[28]   And, as further demonstrated above, the RICO Lawsuit is completely unrelated to the present defamation lawsuit and is only mentioned as background in the Article—the crux of which is the Tobolowsky murder and subsequent investigation.  Plaintiffs therefore cannot show that any specific facts Haynes and Boone learned evaluating the amended complaint in the RICO Lawsuit would be relevant to this case.  *See* Fla. R. Prof'l Conduct 4-1.9 cmt. ("knowledge of ***specific facts***

---

[27] Ex. C, Thompson Decl. at ¶¶ 3-5; Ex. C, Tab 2, Aubrey Depo. at pg. 77.

[28] Ex. C, Thompson Decl. at ¶¶ 3-5; Ex. C, Tab 2, Aubrey Depo. at pg. 71-77; Ex. C, Tab 3, Motion to Appoint Counsel.

gained in the prior representation that are *relevant* to the matter in question ordinarily will preclude representation") (emphasis added). Finally, the Haynes and Boone attorneys working on the present lawsuit had no involvement with the prior representation regarding the RICO Lawsuit. There is therefore no substantial risk that any confidential information disclosed to Haynes and Boone as part of the prior representation will be used against Plaintiffs or revealed in this lawsuit.

Because Plaintiffs have failed to establish a valid ground for disqualifying Haynes and Boone from representing Defendants in this lawsuit, their motion to disqualify lacks merit and should be denied.

## IV.    PRAYER

Wherefore, Defendants respectfully request that the Court:

1.      Deny Plaintiffs' Motion to Disqualify Haynes and Boone, LLP; and

2.      Grant Defendants such other and further relief to which they may be entitled at law or in equity.

Respectfully submitted,

*/s/ Dana J. McElroy*
Dana J. McElroy, Esq.
dmcelroy@tlolawfirm.com
Florida Bar No.: 845906
Thomas & LoCicero PL
915 Middle River Drive, Suite 309
Ft. Lauderdale, Florida 33304
Telephone: 954.703.3416
Facsimile: 954.400.5415

Thomas J. Williams (*admitted pro hac vice*)
*thomas.williams@haynesboone.com*
Texas Bar No.: 21578500
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas  76102
Telephone: (817) 347-6600

Telecopier: (817) 347-6650

Jason P. Bloom (*admitted pro hac vice*)
*jason.bloom@haynesboone.com*
Texas Bar No.: 24045511
Stephanie Sivinski (*admitted pro hac vice*)
*stephanie.sivinski@haynesboone.com*
Texas Bar No.: 24075080
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANTS D**
**MAGAZINE PARTNERS, L.P. f/k/a**
**MAGAZINE LIMITED PARTNERS, L.P.,**
**ALLISON MEDIA, INC., and**
**JAMIE THOMPSON**

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on October 1, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF.  I also certify that the foregoing document is being served on this date to all other counsel or pro se parties listed below, either via transmission of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Steven Benton Aubrey, Pro Se
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

Brian Edward Vodicka
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

*/s/ Dana J. McElroy*
Dana J. McElroy