IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| STEVEN BENTON AUBREY and<br>BRIAN EDWARD VODICKA,<br><br>        Plaintiffs,<br><br>v.<br><br>D MAGAZINE PARTNERS, L.P.<br>d/b/a D MAGAZINE, MAGAZINE<br>LIMITED PARTNERS, L.P.,<br>ALLISON MEDIA, INC.,<br>JAMIE L. THOMPSON,<br>ROBERT L. ERMATINGER, JR.,<br>SCOTT ROBERT SAYERS,<br>STEPHEN CHARLES SCHOETTMER,<br>ERIC VAUGHN MOYE,<br>DALLAS POLICE DEPARTMENT,<br>CITY OF DALLAS,<br>MELINDA CHRISTINE URBINA,<br>DALLAS COUNTY SHERIFF'S DEPT.,<br>DALLAS COUNTY, TEXAS, and<br>DOES 1-10,<br>all of whose true names are unknown,<br><br>        Defendants. | Case No. 18-cv-61117-BLOOM-VALLE |

**DEFENDANTS D MAGAZINE PARTNERS, L.P. F/K/A MAGAZINE LIMITED PARTNERS,
ALLISON MEDIA, INC., AND JAMIE THOMPSON'S REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
<u>AND IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT AND AUTHORITIES.................................................................................... 2

    A. Defendants are not subject to personal jurisdiction in Florida .............................. 2

        1. Plaintiffs fail to make any jurisdictional showing as to Thompson............ 2

        2. Defendants have no substantial connection with Florida .......................... 3

            a. Plaintiffs' alleged harm cannot establish personal jurisdiction, as the proper focus is on Defendants' conduct ........... 3

            b. The Article was not targeted at Florida........................................... 4

        3. The exercise of jurisdiction over Defendants in Florida would not comport with fair play and substantial justice............... 6

    B. This case should be dismissed for improper venue ............................................... 7

    C. Alternatively, the case should be transferred to the Northern District of Texas..... 8

        1. The parties, witnesses, and sources of proof (factors 1-3 and 5) are all located in Dallas, and therefore favor transfer................................. 9

        2. The locus of operative facts (factor 4) favors transfer............................... 9

        3. The relative means of the parties (factor 6) favors transfer ....................... 9

        4. The remaining factors (7 through 9) favor transfer ................................. 10

III. CONCLUSION..................................................................................................................... 10

Defendants D Magazine Partners, L.P. d/b/a D Magazine (formerly known as Magazine Limited Partners, L.P.) and Allison Media, Inc. (collectively "D Magazine") and Jamie Thompson (collectively with D Magazine, "Defendants") file this reply in support of their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer Venue (the "Motion"), and respectfully show the Court the following.

## I.   INTRODUCTION

Plaintiffs have failed to establish that Defendants are subject to personal jurisdiction in Florida or that venue is proper in this district. Plaintiffs have produced no evidence of a substantial connection between Defendants and Florida or that a substantial part of the events or omissions giving rise to this lawsuit occurred in this district. Rather, Plaintiffs contend that Defendants should be required to defend this lawsuit because *Plaintiffs* reside and claim to have felt harm here. Plaintiffs contend that because D Magazine sent 124 print copies of the magazine containing the Article to Florida subscribers (31 in this district) and made the Article available online, Defendants are subject to suit here, but well-established law holds otherwise. As Defendants established in their motion, D Magazine does not target Florida with its publications, website content, or subscription efforts, and the Article was researched and written in Dallas about Dallas events and published by a local Dallas magazine. Neither D Magazine's de minimis Florida distribution nor Plaintiffs' residence and unsubstantiated harm in Florida is sufficient to subject Defendants to personal jurisdiction in Florida or to render venue proper in this district. Accordingly, Plaintiffs' claims should be dismissed or, alternatively, transferred to the Northern District of Texas—a proper (and more convenient) venue where Defendants are subject to jurisdiction.

## II. ARGUMENT AND AUTHORITIES

**A.     Defendants are not subject to personal jurisdiction in Florida.**

Defendants have established that the exercise of jurisdiction over them in Florida would not comport with due process, and Plaintiffs have failed to counter that showing with competent evidence, as required. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (once defendant presents evidence negating jurisdiction, burden shifts to plaintiff to present evidence establishing jurisdiction). Because the overwhelming evidence shows that Defendants lack a substantial connection to Florida and that exercising jurisdiction over Defendants would not comport with fair play and substantial justice, this case should be dismissed for lack of personal jurisdiction.

**1.   Plaintiffs fail to make any jurisdictional showing as to Thompson.**

As an initial matter, Plaintiffs have failed to present any jurisdictional evidence or argument as to Thompson. Instead, Plaintiffs exclusively argue that Defendants are subject to jurisdiction in Florida because D Magazine published the article in a manner that was accessible in Florida. But the evidence conclusively shows that Thompson, a freelance writer, played no role in publishing the Article and had no specific knowledge that the Article would be accessed in Florida.[1]  Plaintiffs do not counter this evidence or otherwise identify any evidence that Thompson directed any action at Florida sufficient to subject her to personal jurisdiction.[2] Plaintiffs have therefore failed to establish personal jurisdiction over Thompson, requiring dismissal of all claims against her.

---

[1] Dtk. 56-1, Declaration of Jamie Thompson ("Thompson Decl.") at ¶ 2.
[2] While Plaintiffs offer an e-mail showing that Thompson offered to travel to Florida for an interview, that trip never occurred.  *See* Dkt. 56-1, Thompson Decl. at ¶ 4.

2

**2. Defendants have no substantial connection with Florida.**

Plaintiffs only contend that Defendants are subject to jurisdiction in Florida because they suffered harm in Florida as a result of the Article. But Plaintiffs' alleged harm is insufficient to establish personal jurisdiction, and D Magazine's de minimis print distribution in Florida and online post of the Article do not create a substantial connection with this state sufficient to establish jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 284 (2017) ("For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

**a. Plaintiffs' alleged harm cannot establish personal jurisdiction, as the proper focus is on Defendants' conduct.**

Plaintiffs claim Defendants are subject to personal jurisdiction in Florida because Plaintiffs suffered harm here, but harm alone is an insufficient basis for jurisdiction. The law is clear that a plaintiff's alleged harm in the forum state is insufficient to establish personal jurisdiction. *Honus Wagner Co. v. Luminary Group LLC,* No. 17-cv-61317-Bloom/Valle, 2017 WL 6547899, *12 (S.D. Fla. Dec. 21, 2017) (allegations that defendant's conduct harmed plaintiff in forum state "fall short of satisfying the requirements of due process") (citing *Walden* 571 U.S. 277); *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-CV-1584-T-23AEP, 2017 WL 4182405, at *3 (M.D. Fla. Sept. 21, 2017) ("the fact that the plaintiff allegedly suffered an injury in Florida as a consequence of a purportedly 'intentional' tort is insufficient to subject the Missouri bar to suit in Florida"). Instead, the emphasis is on the connection between *Defendants'* suit-related conduct and the forum state. *Aviation One of Fla., Inc. v. Airborne Ins. Consultants Pty., Ltd.,* 722 Fed. App'x 870, 879 (11th Cir. 2018).

In any event, the conclusory allegations in Plaintiffs' respective declarations fail to meet Plaintiffs' evidentiary burden. When a defendant contradicts the plaintiff's allegations of

3

personal jurisdiction "the burden shifts back to the plaintiff, this time requiring the plaintiff to prove—not merely allege—jurisdiction by affidavits, testimony, or other documents." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1238 (S.D. Fla. 2015). "A party cannot meet its evidentiary burden by submitting affidavits asserting only 'conclusory assertions of ultimate fact.' Rather, the affidavits must 'set forth specific factual declarations within the affiant's personal knowledge.'" *Id.* (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999)).

Regarding Plaintiffs' alleged harm in Florida, their declarations only state "I suffered injury as a result of Defendants' publication of the Articles while residing in Florida."[3] But Plaintiffs identify no injuries suffered—pecuniary, reputational or otherwise. While Vodicka claims that he witnessed two unidentified Florida residents read the Article online, he does not state that he was harmed as a result.[4] Plaintiffs' conclusory allegations of harm are insufficient to establish personal jurisdiction over Defendants.

### b. The Article was not targeted at Florida.

Plaintiffs also incorrectly argue that the publication of the Article created a substantial connection to Florida because the Article was accessible online and 124 print copies were distributed in the state. But Plaintiffs fail to make the required showing that the Article was targeted at Florida, and D Magazine's evidence shows otherwise.

In order for the publication of an allegedly defamatory statement to give rise to personal jurisdiction, the publication must be specifically targeted at readers in the forum state. *See Calder*, 465 U.S. at 789 (jurisdiction in California proper when California was the "focal point" of publication); *FVD-USA LLC v. Fabiani*, No. 06-cv-61710, 2007 WL 9684283, *6 (S.D. Fla.

---

[3] Dkt. 74, Ex. A, Decl. of Brian Vodicka ("Vodicka Decl.") at ¶ 3; Dkt. 74, Ex. B, Decl. of Steven Aubrey ("Aubrey Decl.") at ¶ 3.
[4] Dkt. 74, Ex. A, Vodicka Decl. ¶ 9. In fact, the residents may well have been Aubrey and Vodicka.

July 26, 2007) (where there is no record evidence that defamatory content "targeted Florida or that Defendants acted to aim their conduct at a Florida audience," jurisdiction is lacking). The mere fact that a publication is available on the internet is insufficient to establish personal jurisdiction. *FFD-USA, LLC*, 2007 WL 9684283, *6; *Honus Wagner*, 2017 WL 6547899, *12.

As Defendants' evidence shows, the Article was not targeted at Florida. Unlike *Calder*, 465 U.S. at 788-89, in which a story with wide California distribution (600,000 copies) relied on California sources to discuss the California activities of a California plaintiff, the Article here had no such relationship to Florida. Rather, it was a story in a Dallas magazine, about a Dallas murder, being investigated by Dallas authorities, based on Dallas sources.[5] While Plaintiffs had moved to Florida by the time the Article was published, they lived in Dallas when the events discussed occurred.[6] Moreover, the fact that 124 copies (0.17 percent of the Article's print distribution) were sent to existing subscribers in Florida does not show that D Magazine was targeting the Article at Florida residents.[7]

Plaintiffs also make no showing that the online publication of the Article targeted Florida, and it did not. In fact, Plaintiffs contend that the online publication did not target Florida, but "target[ed] a worldwide market, including Florida,"[8] which is insufficient to establish jurisdiction. *See Honus Wagner*, 2017 WL 6547899, *12 ("Plaintiff has specifically pled itself out of this contention repeatedly stating that Defendants never specifically targeted Florida, but rather the U.S. and the world."). Plaintiffs only appear to argue that the Article was targeted at Florida because there was a "subscribe" link at the bottom of the page on which the Article

---

[5] Dkt. 56-1, Thompson Decl. at ¶¶ 2-6, 8-9; Dkt. 56-2, Earnshaw Decl. at 6-7, 9-12, Tab 1, Article.
[6] Dkt. 1, Complaint at ¶¶ 58, 226, Compl. Ex. E; Dkt. 56-2, Tab 1, Article.
[7] Dkt. 56-2 Earnshaw Decl. at ¶ 10.
[8] Dkt. 74, Response at pgs. 4 ("[T]he first digital online publication target[ed] a worldwide market, including Florida"), 9 ("A publisher's use of the World Wide Web is its intention to target anywhere and everywhere….D Magazine's websites and YouTube post target everyone everywhere…."), pg. 11 ("Defendants aimed their Articles everywhere through … publication on their websites…."), pg. 15 (stating that Defendants' websites cannot be directed to "any place other than everywhere, including Florida").

5

appeared.[9] But Plaintiffs ignore that D Magazine did not push the online Article to Florida residents; rather, Florida residents would have to visit D Magazine's website on their own to view the Article and, if they scrolled down far enough, the "subscribe" link.[10] The "subscribe" link at the bottom of the Article therefore targets Florida residents no more than the "subscribe" link at the bottom of an article about the 10 best steakhouses in Dallas.[11] And, notably, Plaintiffs identify no Florida resident who read the Article (in print or online) and do not contend that any Florida resident subscribed to D Magazine as a result of reading the Article. To that end, Plaintiffs also make no showing that they were harmed as a result of the 124 print copies or online accessibility of the Article in Florida.

Because there is no evidence that Defendants targeted Florida when publishing the Article (and the evidence shows the contrary) Plaintiffs have failed to establish the type of substantial connection between Defendants and Florida required for the exercise of personal jurisdiction.

### 3. The exercise of jurisdiction over Defendants in Florida would not comport with fair play and substantial justice

Plaintiffs have also failed to counter Defendants' showing that the exercise of jurisdiction in Florida would not comply with traditional notions of fair play and substantial justice. Plaintiffs do nothing to counter Defendants' showing that (1) the burden on Defendants, (2) Florida's interest in adjudicating the dispute, (3) Plaintiffs' interest in obtaining convenient and effective relief, and (4) the judicial system's interest in resolving the dispute, all weigh against the exercise of jurisdiction in Florida. *See Louis Vuitton*, 736 F.3d at 1358.

---

[9] The link actually appears as part of a standard footer that appears on every page of D Magazine's website. *See* D Magazine Home Page, *http://www.dmagazine.com*.
[10] Contrary to Plaintiffs' suggestion, Mr. Earnshaw did not manipulate any documents to conceal the "subscribe" or "advertise" links on the article, which are plainly visible on the version submitted with his declaration.
[11] *See, e.g.,* Eve Hill-Angus, D Magazine, *The 10 Best Steakhouses in Dallas* (2018), *https://www.dmagazine.com/publications/d-magazine/2018/may/dallas-steakhouses-best/?ref=fw-widget*.

6

Instead, as to the first and second factors, Plaintiffs argue, without offering supporting evidence, that they cannot obtain a fair trial in Dallas.  Plaintiffs' unsubstantiated claim, even if it were true, has no bearing on whether *Defendants* should be haled into court in Florida.  As to the third factor, Plaintiffs argue, again without evidence, that they would be financially inconvenienced by litigating outside of Florida, but, that unproven statement does not justify exercising jurisdiction over *Defendants* in Florida.  And, as shown in Defendants' Motion, Plaintiffs currently have at least two ongoing lawsuits in Texas, demonstrating that they can litigate outside of Florida.[12]  Regarding the fourth factor, Plaintiffs claim that the only witnesses are Thompson and themselves and the only evidence is the Article.  While that may be the extent of Plaintiffs' evidence, Plaintiffs have not countered Defendants' showings that all defendants and most non-party witnesses reside in Texas,[13] and that Texas courts will have a greater interest in adjudicating a dispute regarding Texas defendants and Texas facts.

Plaintiffs have failed to show that any of the factors considered in the fair play and substantial justice analysis favor exercising jurisdiction over Defendants in Florida, and Plaintiffs' Complaint should be dismissed for this additional reason.

**B.     This case should be dismissed for improper venue.**

Plaintiffs fail to counter Defendants' showing that venue is improper in this district. Plaintiffs only argue, without evidence, that venue is proper in this district because the Article was accessible here and they suffered harm here.  Plaintiffs contend the facts that the Article was researched in Dallas, based on Dallas events (while Plaintiffs lived in Dallas), sources, and documents, and primarily distributed in Dallas by a Dallas magazine, are all irrelevant in light of

---

[12] *See* Dkt. 56-3, Declaration of Edward Fik ("Fik. Decl.") at ¶ 4, Tab 5, Docket in *Brian E. Vodicka v. Michael Tobolowsky*, No. 05-17-00727-CV, Tab 6, Docket in *Vodicka v. A.H. Belo Corporation*, No. 05-17-00728-CV. Defendants also contend Vodicka is defending a suit for the revocation of his bar license in Texas.  *See* Dkt. 74, Response at pg. 16.
[13] *See* Dkt. 1, Complaint at ¶¶ 23-35; Dkt. 56-1, Thompson Decl. at ¶¶ 3, 5; Dkt. 56-2, Earnshaw Decl. at ¶¶ 4-5, 8.

7

the fact that 31 print copies were sent into this district and the Article was accessible over the worldwide web. But venue is not proper in every district where *some* part of the events giving rise to the claim occurred; rather, venue is only proper in a district where a *substantial* part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b)(2). Moreover, alleged harm to Plaintiffs in this district is insufficient to establish venue. *BPI Sports, LLC v. PHD Fitness LLC*, No. 14-cv-60069, 2014 WL 11706458, at 4 (S.D. Fla. Jun. 13, 2014).

While Plaintiffs contend that their claims would not have arisen had the Article not been accessible in Florida, they are wrong. Plaintiffs could have just as easily sued Defendants had the Article only been accessible and distributed in Texas. Conversely, the Article on which Plaintiffs are suing would not have existed had Tobolowsky not been murdered, had Thompson not researched and written the Article, and had D Magazine not printed and posted the Article— all of which occurred in Dallas.[14] Moreover, Defendants have shown that the Article was targeted at Dallas residents and that 70,587 copies of the magazine containing the Article were distributed in Texas, as opposed to 31 in this district.[15] Plaintiffs do not even contend that they are aware of anyone reading the Article in this district, but only state that two unidentified Florida residents have read the Article online.[16] Simply put, Plaintiffs have failed to show that a substantial part of the events giving rise to their claims occurred in this district, and the overwhelming evidence shows that almost all of the relevant events occurred in Dallas. Venue is therefore improper in this district, and Plaintiffs' claims should be dismissed on this ground.

**C.    Alternatively, the case should be transferred to the Northern District of Texas.**

Plaintiffs have also failed to counter Defendants' showing that, even if jurisdiction existed and venue was proper, the case should be transferred to the Northern District of Texas

---

[14] Dkt. 56-1, Thompson Decl. at ¶¶ 2-5, 8-9; Dkt. 56-2, Earnshaw Decl. at ¶¶ 4-5, 8-9, 11.
[15] Dkt. 56-2, Earnshaw Decl. at ¶ 10.
[16] Dkt. 74, Ex. A, Vodicka Decl. at ¶ 9. The way the allegation is phrased, the two individuals may very well be the Plaintiffs themselves.

8

pursuant to 28 U.S.C. § 1404(a). Plaintiffs concede that the case could have been brought in the Northern District of Texas, and Defendants have shown that the private and public interest factors favor transfer.

### 1. The parties, witnesses, and sources of proof (factors 1-3 and 5) are all located in Dallas, and therefore favor transfer.

With respect to the convenience factors, Plaintiffs again take a narrow view of the witnesses and documents necessary to try this case, arguing that only Plaintiffs, Thompson, and unnamed Florida residents who no longer communicate with Plaintiffs need to testify. But Plaintiffs do not counter Defendants' evidentiary showing that the majority of parties, witnesses, and documentary evidence is located in the Northern District of Texas rather than this district.[17] When the proper scope of parties, witnesses, and documents is examined, this factor favors transfer to the Northern District of Texas.

### 2. The locus of operative facts (factor 4) favors transfer.

Plaintiffs fail to show that the operative facts occurred in this district, instead pointing only to the fact that the Article was accessible online here and that 31 print copies were distributed here. As discussed above, Defendants have shown that the murder on which the Article is based, and Defendants' research, writing, editing, and publishing activities all occurred in the Northern District of Texas.[18] These events, rather than de minimis distribution in this district, are the operative facts forming the basis of Plaintiffs' claims. This factor favors transfer.

### 3. The relative means of the parties (factor 6) favors transfer.

Plaintiffs argue that they lack the means to litigate in Texas, but fail to present evidence demonstrating this. Plaintiffs' contention is discredited by the fact that they have other pending

---

[17] Dkt. 1, Complaint at ¶¶23-35; Dkt. 56-1, Thompson Decl. at ¶¶ 3, 5, 9, 11; Dkt. 56-2, Earnshaw Decl. at ¶¶ 4-5, 8, 13.
[18] Dkt. 56-1, Thompson Decl. at ¶¶ 3-5, 8-9; Dkt. 56-2, Earnshaw Decl. at ¶¶ 4-6, 8-12, Tab 1, Article.

9

litigation matters in Texas.[19] Accordingly, given the disproportionate financial burden on twelve Dallas-based defendants and several witnesses travelling to Florida, this factor favors transfer.

### 4. The remaining factors (7 through 9) favor transfer.

As set out in Defendants' Motion, factors relating to the governing law, the weight given to Plaintiffs' choice of venue, and trial efficiency and interests of justice all favor transfer as well.[20] Plaintiffs do not specifically contest these factors, and apparently concede that they weigh in favor of transfer.

Because the relevant factors are either undisputed or weigh in favor of transfer, to the extent venue is proper in this district, the case should nevertheless be transferred to the Northern District of Texas for convenience pursuant to § 1404(a).

### III. CONCLUSION

This case does not belong in Florida or this district. Defendants are not subject to personal jurisdiction here and venue is improper. The case should therefore be dismissed or, alternatively, transferred to the Northern District of Texas.

---

[19] *See* Dkt. 56-3, Fik Decl. at ¶ 4, Tab 5, Docket in *Brian E. Vodicka v. Michael Tobolowsky*, No. 05-17-00727-CV, Tab 6, Docket in *Vodicka v. A.H. Belo Corporation*, No. 05-17-00728-CV. Plaintiffs also claim Vodicka is involved in separate litigation in Texas to revoke his law license. *See* Dkt. 74, Response at pg. 16.
[20] Plaintiffs do argue that they cannot litigate the case in Dallas because the jury pool is "poisoned," but Plaintiffs offer no credible evidence whatsoever on this point. Regardless, Plaintiffs are free to raise this argument with a judge in Dallas and seek a change of venue from the Dallas Division to another division within the Northern District of Texas. *See* 28 U.S.C. § 1404(b).

Respectfully submitted,

*/s/ Dana J. McElroy*
Dana J. McElroy, Esq.
dmcelroy@tlolawfirm.com
Florida Bar No.: 845906
Thomas & LoCicero PL
915 Middle River Drive, Suite 309
Ft. Lauderdale, Florida 33304
Telephone: 954.703.3416
Facsimile: 954.400.5415

Thomas J. Williams (admitted pro hac vice)
*thomas.williams@haynesboone.com*
Texas Bar No.: 21578500
HAYNES AND BOONE, LLP
301 Commerce Street, Suite 2600
Fort Worth, Texas 76102
Telephone: (817) 347-6600
Telecopier: (817) 347-6650

Jason P. Bloom (admitted pro hac vice)
*jason.bloom@haynesboone.com*
Texas Bar No.: 24045511
Stephanie Sivinski (admitted pro hac vice)
*stephanie.sivinski@haynesboone.com*
Texas Bar No.: 24075080
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Telecopier: (214) 651-5940

**ATTORNEYS FOR DEFENDANTS D MAGAZINE PARTNERS, L.P. f/k/a MAGAZINE LIMITED PARTNERS, L.P., ALLISON MEDIA, INC., and JAMIE THOMPSON**

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel, hereby certify that on October 8, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served on this date to all other counsel or pro se parties listed below, either via transmission of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Steven Benton Aubrey, Pro Se
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

Brian Edward Vodicka
2601 NW 3rd Avenue
Wilton Manors, FL  33311
(512) 666-8004 (Telephone)
defamationperse@gmail.com

*/s/ Dana J. McElroy*
Dana J. McElroy